William "Will" A. Graven, In Pro Se
2700 S. Woodlands Village Blvd. Suite 300-251
Flagstaff, Arizona 86001
Email: will@willgraven.com; Telephone: 928-890-8825

FILED _____ LODGED _____
_____ RECEIVED _____ COPY
JUN 2 8 2019
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

### IN UNITED STATES DISTRICT COURT, DISTRICT OF ARIZONA, PHOENIX DIVISION

| | |
|---|---|
| In Re: Will Graven, <br>                Plaintiff, <br> v. <br> State of Arizona, <br>                Defendants. | ) CASE NO.: **CV-19-04586-PHX-SMB** <br> ) Case Filed: June 28, 2019 <br> ) ASSIGNED TO THE HONORABLE JUDGE: <br> ) _____ <br> ) _____ <br> ) **COMPLAINT FOR CIVIL LIABILITIES** <br> ) **FROM THE BELOW CAUSES OF ACTION** <br> ) **1. ACTS OF PUBLIC CORRUPTION** <br> ) **2.) VIOLATIONS OF FEDERAL AND** <br> ) **ARIZONA STATE CRIMINAL STATUTES** <br> ) **3.) VIOLATIONS OF THE 5TH AND 14TH** <br> ) **AMENDMENTS FOR DUE PROCESS** <br> ) **4.) VIOLATION OF THE 14TH** <br> ) **AMENDMENT FOR EQUAL PROTECTION** <br> ) **5.) PROSECUTORIAL MISCONDUCT** <br> ) **6.) CONSPIRACY TO COMMIT** <br> ) **PROSECUTORIAL MISCONDUCT** |

**TRIAL BY JURY REQUESTED**

## I.  THIS COMPLAINT: INTRODUCTION

1. It has been an arduous journey since I first filed a Complaint here on 4/27/16 (CV2016-01249) for what I then thought were the correct allegations and causes of actions (mistaken efforts by my "inability" to access critical evidence, and "other"). This Complaint, by my having obtained that critical evidence, makes clear, the truth.

2. I pray this respected Court will consider my journey, and my now fully documented allegations; causes of action; and see the injuries I suffered *by Defendants' **criminal acts**, to be proven by **their own** internal records*.

3. My journey has been made complicated/drawn-out by Defendants withholding records, and other acts.

4. My journey was further complicated by my late understanding (largely caused by withheld records) of the criminality of Defendants' acts (**Ex's 6/7** alone, Para's 14-41, will expose several felonies); *and by a State Court's corrupt rulings, **accepting** Defendants' defense they are above the law, thereby excusing their criminal acts.*

5. The State Court acted to bury criminal acts by the AzAGO; and to protect the State from a large judgment.

6. I pray this Court will distinguish between what Defendants will likely call a repeat of my past efforts, *and see that their criminal acts **and** public corruption are the **documented origin/basis** of this Complaint.*

1

## IIA.  THIS COMPLAINT: BACKGROUND

7. Will Graven, as Plaintiff, In Pro Se, for his Complaint against Defendants, alleges the following;

8. On 11/3/11, I met at the Arizona Attorney General's Office ("AzAGO") with an investigator from the Special Investigations Section ("SIS" or "SIS Section") of the AzAGO, and made a number of criminal accusation against several former employees of mine. I was to later learn that the investigator I met with then, Special Agent Dan Woods ("SA Woods"), was a former Special Agent with the FBI and Covert Operations Officer for the CIA.

9. The Arizona Attorney General at that time was Tom Horne ("AG Horne").

10. By April of 2014, eight of my former employees had been Charged with numerous felonies, and the beginnings of what became the Snell & Wilmer Criminal Investigation had been discovered, and begun.

11. By late 2014, six criminal suspects from the results of Snell Criminal Investigation were approved for Charging. The 6 suspects included: 2 former employees of mine; 3 Snell attorneys; and Snell itself as a law firm.

12. Mark Brnovich became Attorney General on January 5, 2015.

13. Snell & Wilmer was Mark Brnovich's political sponsor, and his largest donor; and is Gov. Ducey's personal and gubernatorial law firm (more about Snell's various relationships with Defendants to be seen below).

## IIB.  THIS COMPLAINT: ITS ORIGIN/BASIS (Criminal acts by Defendants)

14. During the first three months of 2015, the SIS Special Agents who worked on the Snell Investigation, and the prosecutor assigned to the case, completed a detailed Written Report (57 pages, with 157 Ex's [**Ex 1**]); and a 3 hour PowerPoint Report (**Ex 2**). The PowerPoint was created for presenting the Case to the Grand Jury.

15. By mid-April 2015, 1 of the 6 Snell Case suspects had pled guilty, and signed a Plea Agreement with a Factual Basis Addendum, detailing the Snell Case crimes, and the Snell Parties' lead role in the crimes (**Ex 3**).

16. In late April and early May of 2015, the Chief of the Criminal Division ("CD"), Don Conrad, approved a new case number to separate the Snell Case from the Graven Master Case for the Fraud Special Prosecution Section ("FSP Section") to prosecute by (**Ex 4**); and a separate case number for post-Charging investigating (**Ex 5**).

17. The Chief Prosecutor of the FSP Section (of the Criminal Division), Paul Ahler, then gave notice that he was conflicted with the Snell Case (**Ex 6**, page 2 at Reference 1). Ahler's son is an attorney with Snell & Wilmer.

18. Arizona Revised Statutes Title 38 deals with Conflicts. Giving notice of a conflict is required by ARS 38-503B. The Agency Handbook for State employees, Chap. 8 Conflicts, Sec. 8.2, also requires notice be given.

19. Violating 38-503B, which applied to Paul Ahler, is Criminal Conflict of Interest (per ARS 38-510).

20.  State employees have no discretion to ignore State Conflicts laws (per the Agency Handbook):
"**8.6 Strict Compliance.** ...Even though public officers or employees may believe that they can be objective in making a decision and that the public interest would not be harmed by their participation, <u>they do not have discretion to ignore the statutory mandate</u>." (Underline by Plaintiff.)

21. Following Ahler's notice, CD Chief Conrad issued a Screening Memo, informing a number of people of the Snell prosecution; Ahler's conflict; and his being Screened from *all* Graven Cases (**Ex 6** pg 2 at Ref 's 2 and 3).

22. Ahler's Screening was very strict (**Ex 6** pg 3 at Ref's 4, 5, and 6), as required by statute and case law (e.g., *State v Latigue*. 502 P.2d 1340 [Ariz. 1972]), including that Conrad be given notice of any breach (Ref 7).

23. Arizona statute; case law; and the Agency Handbook, are all clear on post-notice requirements:

"**Chapter 8: 8.7 Disclosure of the Interest.** Having disclosed the conflict of interest and withdrawn from participation in the matter, the employee or officer must not communicate about the matter with anyone involved in the decision-making process in order to avoid a violation of A.R.S. § 38-503(A) or (B) and the appearance of impropriety." (**Plaintiff Comment 1:** And if you don't avoid violating such...it's a criminal, per 38-510.)"

24. However, shortly after being Screened, *Ahler participated in completing/signing the Case Charging Form* that sent the Snell Case crimes (and others) *including suspects' names* to the Grand Jury (**Ex 7** pg 5 at Ref 1).

25. When Ahler completed this Form, the names of the 4 Snell Parties (as listed in **Ex's 4** and **6**) who had been approved for Charging, were removed. Only one remaining suspect, Esposito, a former employee, was named.

26. Ahler being Screened, but completing this Form is **Criminal Conflict of Interest (ARS 38-510).**

27. *Ahler signing this Form, exonerating the Snell Parties, is when Defendants' liability to me began.*

**Note 1:** The AGO is tasked with enforcing and prosecuting Criminal Conflict of Interest for the State (e.g., **Ex 8**).

**Comment 2:** *Ahler did not complete this Form, thereby committing criminal acts (more acts to be seen below) to be a part of Charging Esposito...Ahler completed it to lead the effort to "exonerate" the Snell Parties.*

**Comment 3:** *Ahler did not overrule Conrad by himself and commit crimes merely because his son is an attorney at Snell. Ahler was given orders to exonerate the Snell Parties by someone above Conrad.*

28. One week later, CD Chief Conrad signed the same Case Charging Form (**Ex 7** pg 5 at Ref 2), *directly under where Ahler's signature appeared*...so, Conrad would have then seen Ahler's signature (other records to be seen will make it clear they/others were working together behind Ahler's allegedly being Screened).

29. Conrad enabling Ahler to participate in completing this Form is **Criminal Facilitation (ARS 13-1004).**

**Comment 4:** *Conrad did not commit criminal acts to allow Ahler to complete this Form, and then commit additional criminal acts with others, to be seen below, just so he (Ahler) could be a part of Charging Esposito. Conrad did this because he had been ordered by someone to allow Ahler to lead the effort to "exonerate" the Snell Parties.*

30. Conrad and Ahler would have had to discuss the matter of Ahler's being Screened, but participating in completing this Form, either before this Form's completion, or when Conrad saw Ahler's signature at the time Conrad signed it.  It is most likely this matter was discussed in advance, prompted by and ordered by someone over Conrad's head. (**Note 3:** There were only two parties above Conrad: AG Brnovich and Asst AG Bailey.)

31. Conrad and Ahler discussing Ahler's completing this Form, so he could commit Criminal Conflict of Interest, makes their cooperation, and Conrad's Facilitating Ahler, **Criminal Conspiracy (ARS 13-1003).**

3

32. Esposito was Charged for conspiring to commit Fraudulent Schemes and Artifices with Snell & Wilmer (**Ex 9** pgs 2/3 at Ref 1/2), which reflects the results of the investigation, ***but the Snell Parties were not Charged***.

33. I now ask the Court to read/note the approved for Charging description of the Snell Case crimes and the suspects named in both **Ex's 4** and **5** at Ref's 1 (this description is the result of/came from **Ex's 1, 2,** and **3**):

"Between 12/14/2005 and 3/28/2006, Snell & Wilmer attorneys Jim Sienicki, Mark Ohre, and Bill Kastin conspired with 9.9% owner of Arizona Building Systems, Inc. (ABS), Deborah Dubree; and ABS General Counsel Daniel Esposito, to modify the ABS shareholders' agreement to give Deborah Dubree and Daniel Esposito control over ABS. Jim Sienicki, Mark Ohre, Bill Kastin, Deborah Dubree, and Daniel Esposito, concealed the modifications from Snell & Wilmer client and 90.9% owner of ABS, Will Graven.

Between 6/13/2011 and 2/21/2013, Snell & Wilmer attorneys continued to conceal the above-described activity by misleading Will Graven and the Court during a civil lawsuit and failing to preserve several emails, and documents."

**Note 4:** The Court will note the differences in the dates of the crimes described in the first versus the second paragraphs. The difference is that the second set of crimes were committed against me by Snell while defending a civil Complaint I filed against them on 6/13/11. These are separate acts from those committed with my employees.

34. It only takes a moment to see that Conrad and Ahler (likely with AAG Joe Waters assisting) altered the description of the results of the Snell Case investigation, including changing the names approved for Charging, as ***all references to the three Snell attorneys and their involvement have been removed*** (**Ex 7** pg 2 at Ref 3):

"Snell and Wilmer: In December of 2005, Daniel Esposito, the legal counsel for ABS, was working with outside counsel for ABS, Snell & Wilmer, on a variety of projects related to ABS and to Will Graven. From December 2005 to March of 2006, Daniel Esposito conspired with the minority owner of ABS, Deborah Dubree, to have Snell & Wilmer re-write the corporate documents of ABS in an attempt to limit the power of Will Graven as the owner of ABS and force Will Graven out as owner of ABS. Emails sent by Daniel Esposito to Deborah Confirm their intention as well as Deborah Dubree's testimony as obtained through a testimonial agreement.

35. Conrad and Ahler forged the description of the Snell crimes, and removed 4 of the 5 suspects' names who approved to be Charged (see Forgery below), as detailed in the Snell Written Report (**Ex 1**); the 3 Hour PowerPoint Report (**Ex 2**); the Dubree Plea Agreement (**Ex 3**); and the FSP and SIS Forms (**Ex's 4** and **5**).

**Comment 5:** If removing the Snell Parties was legitimate, *Conrad and Ahler **would not have needed criminal acts***.

36. Conrad and Ahler forging the results/contents of the just above named records (Para. 33), to remove the Snell Parties' names and their participation in the Snell Case crimes, is **Criminal Forgery (ARS 13-2002).**

37. Conrad and Ahler discussing their forging the description of the Snell Case crimes and suspects names makes their cooperation in this matter **Criminal Conspiracy (ARS 13-1003).**

38. Ahler giving legally required notice of being conflicted, so Conrad could then issue a Screen of Ahler, so they could then commit criminal acts behind that Screen, is a **Fraudulent Scheme and Artifice (ARS 13-2310).**

39. Conrad and Ahler exonerating the Snell suspects through the above series of criminal acts is Obstruction of Justice, known under Arizona law as **Obstructing a Criminal Investigation or Prosecution (ARS 13-2409).**

40. At least two of the above criminal acts qualify as "predicate acts," thusly, Conrad and Ahler (and others, to be seen) operated as a criminal enterprise, and are thereby guilty of **Racketeering Activity (18 USC Sec. 1961).**

41. *Why did Defendants commit multiple criminal acts? For sport? Of course not. They committed those acts to quietly (behind the Screen) exonerate the Snell Parties __who had been approved for charging under AG Horne__.*

## IIC.  THIS COMPLAINT: OTHER EVIDENCE

42. Other evidence, now having also been slowly obtained, shows a complete disregard for Ahler's having allegedly been Screened; Due Process as contained in the US and Arizona Constitutions; US and Arizona statutes (criminal and other) and case law, and most importantly/obviously, our American rule of law:

**Ex 10**: SA Woods wrote AAG Joe Waters about Graven Case(s) matters. Waters then forwarded the Woods email to Screened Ahler and Conrad. Conrad forwarded Woods' email to Asst AG Bailey, who saw the email chain. Conrad had sent Bailey a copy of the Ahler Screening Memo (**Ex 6**). Bailey has more involvement to be seen below.

**Ex 11**: Ahler's Legal Administrator (who distributed the Ahler Memo), Lisa Rodriguez (the longtime Legal Administrator to whomever was the Chief of the Criminal Division), emailed Ahler asking if he would be out of town the following week. Ahler responded that he would be out...without reminder or discussion, Rodriguez said:

**"I'll reset Graven."** (I certainly had no planned meeting with Screened Ahler...and never did meet with him.)

**Ex 12**: SA Agent Lauren Buhrow wrote AAG Waters about various Graven Case(s) matters, CCing Robert Eckert and Mark Perkovich, the Chief Investigator...Perkovich forward Buhrow's email to Ahler and Conrad saying:

**"Additional issues related to the Graven matter..."**

**Ex 13**: Chief Perkovich wrote Ahler and Conrad regarding a voicemail from me, in part, saying:

**"...I was hoping we could meet to discuss the future of the Graven investigation."**

**Ex 14**: Chief Perkovich emailed Lisa Rodriguez...Rodriguez replied...and then forwarded her exchange with Perkovich to Ahler and Conrad.

**Ex 15**: This is another Case Charging Form, again, with Ahler and Conrad's signatures. This Form is for defendant Scott Hesse...who was to have testified in the Snell Case. **Clearly, *Ahler took control of the Graven Cases*.**

**Ex 16**: These are pages from an Affidavit filed by SA Woods with the Arizona Supreme Court. Para's 151/152 describe Ahler's involvement in an "interrogation" of Woods, in Asst AG Bailey's office, and Ahler's level of knowledge being such that Woods was taken back by it (as a former Covert Operations Officer for the CIA, Woods knows an interrogation), fits right-in with what was actually/obviously going on behind the "Due Process" Screen.

43. *These "smoking gun" emails and other records show how "fundamentally [un]fair" Defendants handled these matters. Clearly, they repeatedly violated the Constitution, criminal statues, case law, and more.*

44. ***These criminal acts are the origin of my losing Justice and restitution from the exonerated Snell Parties and other cases Defendants dismissed/closed, while hiding their acts and the Snell Parties' crimes.***

45. I will not repeat the above statutes that apply here for Conrad and Ahler committing the acts they did with the additional parties just seen, nor add new ones, but, further clarity for a criminal enterprise is obvious.

**Note 5:** The corrupt Arizona State Court did not even find the above criminal acts "fundamentally unfair," thereby violating Due Process, which see more about below.

## IID. PUBLIC CORUPTION PERSONAFIED

46. The series of criminal acts described above, starting with Ahler and Conrad, and then Waters; Rodriguez; Perkovich and Bailey; and the State Court's corrupt acceptance of the State's defense they are above the law, and so excused their criminal acts, clearly meets the Black's Law Dictionary definition of "Corruption:"

"Illegality; a vicious and fraudulent intention to evade the prohibitions of the law. The act of an official or fiduciary person who unlawfully and wrongfully uses his station or character to procure some benefit for himself or for another person, contrary to duty and the rights of others. U. S. v. Johnson (C. C.) 20 Fed. 082; State v. Ragsdale. 59 Mo. App. 003; Wight v. Rindskopf, 43 Wis. 351; Worsham v. Murchison, 00 Ga. 719; U. S. v. Edwards (C. C.) 43 Fed. 07."

**Comment 6:** Is it just a coincidence that Ahler replaced Conrad as Chief of the Criminal Division after these events?

47. Snell & Wilmer was Mark Brnovich's political sponsor.

48. Snell & Wilmer is Gov. Ducey's personal law firm (which explains why he refused to intervene, and why he has named more than 10 former Snell attorneys to senior Arizona Government positions).

49. Snell & Wilmer is Gov. Ducey's gubernatorial law firm.

50. Gov. Ducey's on-staff General Counsel is from Snell & Wilmer.

51. Snell was working *for both* the AzAGO and Gov. Ducey, and likely Doug Ducey, at relevant times.

52. Paul Ahler's son is an attorney at Snell.

53. Etc, etc (who/what Snell & Wilmer is no secret)...

## IIE. EVIDENCE: RELEVANCE; RELIABILITY; CHAIN OF CUSTODY; SELF-AUTHENTICATING

54. The reliability of the evidence I have used thus far is absolute: **15 of my 16** Exhibits are AGO records, the 16th Exhibit, is a Sworn Affidavit filed with the Arizona Supreme Court, by Dan Woods, who is by a former Special Agent for FBI and Covert Operations Manager for the CIA (Woods Affidavit is merely one more bit of evidence to several others regarding Ahler's criminal participation in my Cases, post his allegedly being Screened).

55. **Ex's 1, 2, 3** and **9** are from cd's provided to me (in late 2015) by the AGO (**Ex 17**). I later obtained **Ex's 4–7** and **10–15** via "alternate sources," from responses to Public Records Requests (PRR") they had filed with the AGO (required, as the AGO would not respond to me). Each PRR response came with an authenticating letter.

**Note 6:** I found **Ex's 4–7** and **10–15**, one record at a time, in the midst of hundreds of pages in multiple responses to the PRR's of Para 55. These records had been withheld from me, as the Defendants "covered their tracks" for the criminal acts they committed to exonerate the Snell Parties who had previously been approved for charging.

## IIF. A PREPONDRANCE OF EVIDENCE

56. I would like to briefly state that as this Complaint is a civil one, I am not asking this Court to criminally convict. So, what I need to achieve to prevail is a preponderance of evidence...by AGO records, I have done that.

**IIG. DEFENDANTS COMMITTED "SUPPORTING ACTS" (which I have also called "other" and "other acts" in this Complaint) IN ADDITION TO THEIR CRIMINAL ACTS**

57. In my State Court Complaint (**Ex 18**, Ref 1, third line from bottom of the page), I spoke of

"supporting acts" ("supporting" the blatant criminal acts by Defendants). In this Complaint, I have called

them "other" and "other acts," I would like to review a few of those "supporting acts" (these acts support Tolling):

- In December of 2015, when word spread at the AzAGO that criminal defendant Esposito was coming in to testify, including against Snell & Wilmer, *all hell broke lose* within the AGO.

- On Friday 12/18/2015, SA Dan Woods and AAG Joe Waters had their ninth suspect, criminal defendant Scott Hesse, agree in Court, to a pre-indictment Plea Agreement (which had a Factual Basis Addendum with admissions that were extremely important to all Graven Cases and crimes).

- That afternoon, 12/18/15, Woods was called in to a meeting with Defendant employees Michael Bailey, and Don Conrad, and Woods' new supervisor, Mark Perkovich (who had replaced retiring Chief Rubalcava), *and although Defendant employee Paul Ahler was Screened from all Graven Cases matters, he ran that meeting*. Woods describes this meeting as an "interrogation" (per **Ex 16**).

- That Friday evening, 12/18/15, Woods was called at home by Conrad, at which time Conrad put Woods on Administrative Leave (Conrad was not even Woods' supervisor [there were two levels between them]).

- The following Tuesday 12/22/15 (3 days before Christmas), Woods was fired (Woods had just been approved for the largest raise permissible).

- On 1/5/16, the AzAGO sought to remove me as the victim of my cases, and name one of my 40 companies as the victim, making my receiving restitution far more complicated, if not unlikely.

- On Friday, 1/8/16, Conrad's last day at the AGO, he closed my last three cases.

- Two of those three closed cases were to be the source of my largest financial recovery/restitution: Snell & Wilmer, and Victorville. As both Snell and Victorville were anticipated to be tough defendants, these two cases had been held back from the Grand Jury until as many cooperating defendants (e.g., Dubree; and Esposito) and as much evidence as possible could be gathered. The Victorville Case was also ready to be taken to the Grand Jury (As was the smaller "Rubble Case").

- On Monday 1/11/2016, Conrad was replaced by Ahler as Chief of the Criminal Division.

- The AzAGO then began refusing all Public Records Requests regarding my cases.

- The AGO denied my right to a Meet and Confer under ARS 13-4406(B) for their dismissing my cases.

- The AGO then removed my longtime Prosecutor from my cases (Waters).

- The AGO then suspended Plea Agreement negotiations with Graven Cases suspect Marc Stricker.

- The AGO then suspended Plea Agreement negotiations with Defendant Esposito, and cancelled his coming in to "rollover" against Snell & Wilmer.

- SA Lauren Buhrow, the lead agent for the third of my cases that was closed, Case No.: P-2013-1134, known as the Emery Rubble Case, was also fired (she was also second most active agent on all my cases).

- The other/second Assistant Chief of Special Investigations, Dr. Charles Loftus (and the third agent who worked on my cases), was demoted, and told it would be best if he moved on.

- SA Mike Edwards, the fourth agent who worked on my cases, was demoted and transferred out of the Special Investigations Section.

- The fired, demoted and transferred Agents were threatened with being put on the Brady List if they were to talk about my cases publicly.

- The AzAGO, without even telling the Chief of Financial Remedies, released all liens on all remaining assets of all criminal defendants in all of my cases.

- The AGO then told me there were no more assets to realize any additional restitution from, and that what I had received thus far, was it (approximately $500,000 of the $638 million I had lost).

- Then came the Dismissal of admitted criminal Dubree and indicted criminal Esposito's cases.

- There is much more to tell, but I believe it is clear: the Defendants were getting rid of anyone and anything, threatening potential witnesses, that could add to the Snell & Wilmer Case being completed.

## IIH. MY FIRST COMPLAINT IN THIS COURT V THIS COMPLAINT

58. Defendants will likely try to tell this Court that my first Complaint and this one are the same. They will also likely try to claim that my State Court Complaint and this one are the same, which see below in II-I. My Recent Complaint in State Court. Defendants will likely file a motion to dismiss, in part, based on *res jusicata*.

59. However, quite simply, by their withholding evidence, I did not know, nor could I therefore allege in my first Complaint, what this Complaint alleges: criminal acts by the Defendants to exonerate the Snell Party suspects.

60. I would like to ask the Court here to note that **Ex's 1, 2, 3** and **9** were the only Exhibits available when I filed my first Complaint (CV2016-01249) here (again, as obtained from the AGO, **Ex 17**). **Ex's 4** through **7** and **10** though **16** were obtained from various alternate sources, as per above (as the AzAGO would not respond to me, as seen above in "Supporting Acts" [and "other" and "other acts]"), in the years following my first Complaint.

61. In my first Complaint, as what I had was the Written Report (**Ex 1**); PowerPoint Report (**Ex 2**); Dubree Plea Agreement (**Ex 3**), all 3 detailing the Snell Case crimes and suspects; and the Esposito Snell Case crimes Charging Papers (**Ex 9**), Charging him for Conspiring to commit Fraudulent Schemes and Artifices with Snell, *I alleged the Snell suspects should have also been Charged*. So, that is what my first Complaint was based on.

62. In this Complaint, as I now have 11 more critical pieces of evidence (AGO records), which also make the first 4 Exhibits clear, I am able to prove by a preponderance of evidence that this Complaint is about suspects approved for Charging being exonerated through a series of criminal and supporting acts by AzAGO employees; Gov. Ducey refusing to intervene; and a corrupt State Court accepting Defendants' claim that they are above the law, and so excused from committing criminal acts against me, which caused me to lose Justice and restitution.

## II-I. MY RECENT COMPLAINT IN ARIZONA STATE COURT

63. I filed a Complaint in Arizona State Court for Maricopa County for these matters on 5/30/18. The gravaman of that Complaint was clearly stated on page 1 (again, **Ex 18**, at Ref 2):

"A year-long AGO criminal investigation of 6 suspects resulted in written Approval to charge those Suspects. Defendant Ahler had a conflict with 4 of the 6 Suspects, so he was screened as required by law and case law.
But AGO documents show that while Screened, along with other (conflicted) Defendants who knew Ahler was Screened, they were working together behind the Screen to "exonerate" those 4 (well-connected) Suspects.
When the AGO absolved these 4 Suspects, the Defendants continued with a series of other supporting acts, therefore, I did not receive the justice or the restitution I was due. The Defendants assumed these liabilities to me.
The Defendants' efforts to exonerate those 4 Suspects, including supporting acts, validate this Complaint."

64. The Defendants used deception and fraud to transform my State Court Complaint to being about my "feeling" or my "believing" the Snell Parties should have been charged, but that the State simply, never, failed, refused, or declined to charge them. The State Defendants used my Complaint in this Court from 2016 as if it was exactly the same Complaint as I had filed in State Court 2 years later, although they are night and day different.

65. I explained the differences to the State Court between my earlier Federal Complaint and my then State Complaint, many times, including in a Hearing on 2/22/19 (**Ex 19** [youtube.com/watch?v=MUqIZbc4WCM]).

66. In that Hearing, I also detailed the criminal acts described above...those acts shocked my State Judge.

67. *That State Complaint then became about* **suspects approved for Charging being exonerated through a series of criminal and supporting acts by AzAGO employees, and Gov. Ducey refusing to intervene.**

68. These acts caused me to lose the Justice and restitution I had been receiving, and was yet to receive.

69. *These criminal acts are now the documented origin/basis of this Complaint, standing, and injuries.*

## IIJ. IN STATE COURT, DEFENDANTS CLAIMED BY PROSECUTORIAL DISCRETION, THEY ARE ABOVE THE LAW

70. The larger part of defendants' defense was their claiming prosecutorial discretion allowed them to do whatever they wanted, regardless of their motives, even if criminal (*I realize that does not sound believable*).

71. As recent examples of Defendants' repeated claims of being above the law, and the State Court 's accepting such argument (**Ex 20**, Defendants' Response to my Motion for Relief Due to Court Error for not Granting my Motion for Summary Judgment, page 4, lines 22-24 [5/20/19]):

"In addition, Plaintiff lacks standing to bring his claims because he has not pled and cannot prove that the alleged actions of the AGO – **even if they were criminal** – (Bold underline by Plaintiff.)

72. Another example is Defendants' Reply to Plntff's Rspnse to Defs' Mtn to Dsmss, filed 1/14/19 (**Ex 21**):

"First, as discussed in our Motion to Dismiss, the case law makes clear that prosecutors have absolute immunity for decisions as to whether or not to initiate a prosecution, **bad motives or not**,.." (Bold underline by Plaintiff.)

73. And in their Response to my Motion for Reconsideration (**Ex 22**, pg 5, lns 21/22 [5/7/19]):

"**C. It is well-settled that prosecutors have absolute immunity in deciding whether or not to initiate a prosecution, *regardless of their motives*.**" (Italics by Plaintiff.)

Defendants apparently do believe they are above the law, and so committed criminal acts against me.

74. But none of Defendants' citations show their being above the law, nor excusing criminal acts. *Defendants using this unsupportable defense makes it clear they had been caught "red-handed."*

75. The State Court accepting such an unsupportable defense is a clear sign of corruption.

76. *Prosecutorial discretion approved charging the Snell Parties during the Tom Horne Administration; criminal acts were used by Defendants to exonerate the Snell Parties shortly after Mark Brnovich took office.*

77. Our Arizona Supreme Court disagrees with their ludicrous "defense" to justify committing criminal conflict of interest; facilitation; et al (**Ex's 6** and **7**). From *State v. Murphy* 113 Ariz. 416 (1976) 555 P.2d 1110:

"Generally, the courts have no power to interfere with the discretion of the prosecutor **unless he is acting illegally** or **in excess of his powers**." (Bold underline by Plaintiff.)

78. As does our US Supreme Court disagree, such as in *Marshall v. Jerrico*, 446 U.S. 238, 248-50 (1980):

"The "**traditions of prosecutorial discretion do not immunize from judicial scrutiny cases** in which enforcement decisions of an administrator **were motivated by improper factors or were otherwise contrary to law**." Id. at 249." (Bold underline by Plaintiff.)

79. And from Arizona Gov. Doug Ducey, in an Executive Order signed on 7/20/18:

"Politicians are NOT above the law. Everyone should know that, and the Arizona Constitution is clear-"

80. Following Gov/ Ducey signing his Executive Order, he took to Twitter and stated:

"This morning I signed an Executive Order making it clear: No one has immunity from breaking our laws-"

81. *Criminal acts do not, and cannot, create/constitute/be aggregated to be called, a legal decision, such as prosecutorial discretion. Prosecutorial discretion cannot be used to justify criminal acts.*

## IIK. THE STATE COURT ACCEPTED DEFENDANTS' CLAIM THAT DEFENDANTS ARE ABOVE THE LAW, AND THERBY EXCUSED THEIR CRIMINAL BEHAVIOR

82. I repeatedly explained Defendants' criminal acts to my State Court; in a Hearing in that Court (again, **Ex 19**); and in multiple pleadings, even asking the State Court (e.g., **Ex 23**, Ref's 1, 2 and 3):

*"Does this Court approve of, or not, the Defendants' argument/defense that they are above the law?"*

And: "But, for the Court's consideration: If the Defendants legitimately used "prosecutorial discretion" to not charge the Snell Party suspects (as they claim), why did they use surreptitious (from behind the fraud scheme of a legally required Screen) criminal acts to "*un-approve*" charging the Snell Party suspects?

*Asked somewhat differently: Why weren't Defendants' acts to un-approve charging the Snell Suspects above-board, and legal, and not based on a series of criminal acts, led by (Screened) Paul Ahler?"*

**Note 7:** I have copies of all of my State Court case pleadings, and would be pleased to provide copies to this Court; or, they are, of course, available through the Arizona Superior Court under case CV2018-007856.

83. *This was not "prosecutorial discretion." Once Brnovich et al learned that Conrad "errored" by issuing the new Snell Case numbers, the others moved-in to cover up Conrad's error, and it became criminal.*

84. Defendants have claimed they are above the law, and are thereby excused for committing criminal acts against me. Acts which caused me to lose the justice and restitution I had been receiving, and was yet to receive.

85. The State Court could not have missed, or misunderstood, the issue of Defendants' criminal acts.

86. But the State Court remained silent in the matter of  Defendants' criminal acts in its initial dismissal of my Complaint (**Ex 24**); and in its denying my Motion for Reconsideration (**Ex 25**). *That Court's silence is clearly by corruption...no one is above law, nor allowed to commit criminal acts...but the State Court accepted such.*

87. Repeating Black's definition of corruption (without its citations):

"Illegality; a vicious and fraudulent intention to evade the prohibitions of the law. The act of an official or fiduciary person who unlawfully and wrongfully uses his station or character to procure some benefit for himself or for another person, contrary to duty and the rights of others."

## IIL. VIOLATIONS OF DUE PROCESS: ACTS THAT ARE FUNDAMENTALLY UNFAIR

88. In *Oshrin v Coulter*, the Arizona Supreme made understanding Due Process very straightforward:

"The touchstone of due process under both the Arizona and federal constitutions is <u>fundamental fairness</u>. *Oshrin v. Coulter,* 142 Ariz. 109, 111, 688 P.2d 1001, 1003 (1984). (Underline by Plaintiff.)

89. In *Zinermon v Burch*, our US Supreme Court made it clear that Due Process prevents our governments in the United States from engaging in "arbitrary, wrongful actions:"

"Substantive due process prevents the government from engaging in arbitrary, wrongful actions "regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

90. I do not believe it is necessary for me to argue that Defendants' criminal acts against me are fundamentally unfair, arbitrary and wrongful violations of Due Process (and other), as this is all grossly obvious.

## IIM. FAILURE TO PROVIDE EQUAL PROTECTION

91. The Fourteenth Amendment to the United States Constitution (directed at State and local governments), provides "nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws".

92. In *Bolling v. Sharpe* (1954), the US Supreme Court ruled that the Due Process Clause of the Fifth Amendment imposes various equal protection requirements on the federal government via reverse incorporation.

93. Defendants, in exonerating the Snell Parties, violated my Right to Equal Protection, as did the State Court when it corruptly accepted that Defendants are above the law, and so excused from committing criminal acts.

## IIN. THE STATE COURT IGNORES SPOLIATION OF EVIDENCE AND WHAT THAT SUGGESTS

94. I filed a Motion for Sanctions in State Court when the State claimed they had no records showing Ahler being involved in the Graven Cases (that was clearly fraudulent, as I have shown this Court several such records).

95. The State Court found no reason to be alarmed by such a fraudulent claim, and denied my Motion for Sanctions, ignoring this obvious red-flag of Defendants' behavior.

## IIO. THE STATE COURT DENIED THE APPOINTMENT OF A SPECIAL PROSECUTOR

96. In spite of a lengthy list of criminal acts by overwhelming evidence, the State Court looked the other way, and denied my Motion for a Special Prosecutor. (Gov. Ducey could have also sought such an appointment.)

## IIP. THE STATE COURT RULED BY CORRUPTION

97. When the State Court dismissed my State Complaint, not a word was said about Defendants' criminal acts, thereby ignoring the origin/basis of my Complaint there.

98. When the State Court denied my Motion for Reconsideration, not a word was said about Defendants' criminal acts, thereby ignoring the origin/basis of my Complaint there.

99. The State Court found nothing "fundamentally unfair" about criminal acts, and so no violations of Due Process by their criminal acts, thereby ignoring an important Cause of Action to my Complaint there.

100. The State Court found no violations of Equal Protection by Defendants' criminal acts, thereby ignoring another important Cause of Action to my Complaint there.

101. The State Court found no violations of Due Process by Defendants' supporting acts.

102. The State Court found no violations of Equal Protection by Defendants' supporting acts.

103. The State Court found nothing wrong with Defendants withholding evidence.

104. The State Court found nothing wrong with Defendants' counsel's repeated frauds on the Court, although I reported (by Notices, and other) and detailed such.

105. The State Court simply dismissed my State Complaint by ruling (per above in Sec **IIH**, Para 64):

" The gravamen of plaintiff's claim is that the State harmed plaintiff by failing or refusing to indict a law firm and four of its lawyers based upon familial and political motivations,..."

106. This is language the State Court copied, almost word for word, from the State's pleadings.

107. *But as discussed above in II-I, that is not what my State Complaint was about...that is what Defendants underline claimed my State Complaint was about.*

108. The State Court's handling of my Complaint is clearly another example of Arizona State corruption.

109. *It is not possible the State Court denied Judgment for Defendants' acts, except by corruption.*

110. When a State Court Judge accepts and endorses the Arizona Attorney General's Office committing criminal acts, even when it is caught "red-handed" by their own internal records, making it clear they committed criminal acts to exonerate the omnipotent Snell & Wilmer, that Court clearly acted corruptly.

111. State and local Courts are known for giving a government defendant the "benefit of the doubt," even favoring the government...*in this instance, this State Court sought to protect: the AzAGO from its criminality; Michael Bailey, who has been nominated to be US Attorney for Arizona; and the State from a large judgment.*

## III.  STATUTES OF LIMITATION

112.  The Attorney General's Office, the Governor's Office, the State Court, and thereby the State of Arizona, committed the acts described herein between July 16, 2015, and up to and including today.

113.  This Complaint is therefore within the applicable Statutes of Limitation.

114. Defendants will likely include in their defense, that I am untimely/past a statute of limitation.

115.  I respectfully remind the Court that Defendants withheld records (e.g., see Par 55 and Note 6), requiring me to seek alternate, and time-consuming efforts to obtain records that should have readily been provided to me.

116.  Citing *Holmberg et al. v. Armbrecht et al*, 327 U.S. 392 (66 S.Ct. 582, 90 L.Ed. 743):

"If want of due diligence by the plaintiff may make it unfair to pursue the defendant, fraudulent conduct on the part of the defendant may have prevented the plaintiff from being diligent and may make it unfair to bar appeal to equity because of mere lapse of time.
Equity will not lend itself to such fraud and historically has relieved from it. It bars a defendant from setting up such a fraudulent defense, as it interposes against other forms of fraud. And so this Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' Bailey v. Glover, 21 Wall. 342, 348, 22 L.Ed. 636; and see Exploration Co. v. United States, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200; Sherwood v. Sutton, Fed.Cas.No.12,782, 5 Mason 143."

117. If the Defendants move for dismissal by a statute of limitation, I will ask for tolling to be declared.

## IV.  JURISDICTION

118.  Matters in this Complaint are based upon the United States Constitution (including the State Court's not upholding the US Constitution); Federal Statutes; State corruption, which requires a superior Court; and other matters requiring Federal oversight, thusly, this U.S. District Court has jurisdiction.

## V. VENUE

119.  The events described in this Complaint occurred in Phoenix, Arizona.

120.  Plaintiff was single man residing in Arizona, Coconino County, at the time of the alleged events.

121.  The State of Arizona has its offices in Phoenix, Arizona.

122.  Upon information and belief, Defendant Governor Doug Ducey was a full-time resident of Arizona, County of Maricopa, at the time of the events described herein.

123.  Upon information and belief, Defendant AG Mark Brnovich was a full-time resident of Arizona, County of Maricopa, at the time of the events described herein.

124. This US District Court for Arizona, Phoenix Division, is therefore the appropriate Venue.

## VI.  FILLING A COMPLAINT AGAINST THE STATE OF ARIZONA

125.  Filing a complaint against the State of Arizona begins with its Notice of Claim Statute A.R.S. 12-821.01. Authorization of claim against public entity, public school or public employee.

126.  Further understanding litigating against the State of Arizona is covered in Chapter 13 Litigation Against State Entities or Employee.

127.  I followed the procedures for a Notice of Claim and served such on various Arizona State entities and employees on January 19, 2016 (Please see **Ex 26**).

128. Certificates of Delivery for the State of Arizona (the AzAGO accepts Service for the State) and the Arizona Attorney General's Office; are attached  (Please see **Ex 27**).

129.  The Arizona Department of Administration acknowledged receiving my "correspondence" (avoiding calling it a Notice of Claim) (Please see **Ex 28**).

130.  The State denied my claim (Please see **Ex 29**).

131.  This Complaint and request for trial by jury continue.

## VII.  DAMAGES, INCLUDING TREBLE DAMAGES

132. Liability for damages for this Complaint began with Ahler committing Criminal Conflict of Interest, exonerating the Snell Parties, and multiplied as Ahler, Conrad, and others, committed additional crimes against me.

133.  Damages from acts of racketeering are subject to treble damages (several of Defendants' predicate acts are described above).

134.  Damages in the State of Arizona caused by an "evil mind" require the awarding of treble damages. Criminal acts are inherently from an evil mind.

135.  Therefore, I have asked for treble damages below.

136. My using a figure for damages of $638 million is simply based on my Personal Financial Statement from relevant times (**Ex 30**), and is what AG Horne and his Team had been working at recovering for me.

## VIII.  ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

137.  Plaintiff incorporates and realleges paragraphs 1 through 136, inclusive, Notes, and Comments, in above the allegations as being common to all Causes of Action.

138.  For the above stated reasons, and more that will be forthcoming, Plaintiff prays the Court will award the damages against Defendants as sought by the Plaintiff.

### *CAUSES OF ACTION, AND DAMAGES REQUESTED*

### FIRST CAUSE OF ACTION
### ACTS OF PUBLIC CORRUPTION BY DEFENDANTS

139.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 138, inclusive, including Notes and Comments, as though fully set forth herein.

140.  Defendants have caused the Plaintiff material damages by virtue of their Acts of Pubic Corruption.

14

Defendants, while having no legitimate reason to do so, repeatedly committed these acts, and in concert with one another.

141.  As a direct and proximate result of the acts hereinabove alleged, Defendants and their Co-Defendants have, and each of them, are jointly and severally liable to the Plaintiff, for each of the wrongful acts hereinabove alleged.

142.  By virtue of the foregoing, and the acts herein alleged, Plaintiff prays that this Court award the Plaintiff actual damages; punitive damages; damages to his person; compensatory damages, all of which have not yet been fully ascertained but are believed to be well in excess of $638,000,000.00, plus the highest rate of interest under United States Law, Pre and Post Judgment (Pre-Judgment from 4/22/15). The Plaintiff will request leave of the Court to amend this Complaint to allege the full amount of damages incurred by Defendants when the same has been fully ascertained. As the acts which created this liability were done with an evil mind (inherent in a criminal act), and by racketeering, Plaintiff asks for treble damages.

143.  Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct hereinabove alleged, Defendants, and each of them, have been guilty of oppression, fraud and malice, and have acted in conscious disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of damages as described above, sufficient to punish and make an example of Defendants and their fellow conspirators and co-defendants, and each of them.  Plaintiff is further informed and believes and thereon alleges that as to each defendant which is a government, corporation, partnership, trust or other entity, such actions were authorized or ratified by one or more officers, directors or managing agents of such defendant.

## SECOND CAUSE OF ACTION
### VIOLATIONS OF FEDERAL AND ARIZONA STATE CRIMINAL STATUTES

144.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 143, inclusive, including Notes, and Comments, as though fully set forth herein.

145.  Defendants have caused the Plaintiff material damages by virtue of their repeated Criminal Acts violating Federal and Arizona State criminal statutes. Defendants, while having no legitimate reason to do so, repeatedly committed these acts, individually, and in concert with one another.

146.  As a direct and proximate result of the acts hereinabove alleged, Defendants and their Co-Defendants have, and each of them, are jointly and severally liable to the Plaintiff, for each of the wrongful acts hereinabove alleged.

147.  By virtue of the foregoing, and the acts herein alleged, Plaintiff prays that this Court award the

Plaintiff actual damages; punitive damages; damages to his person; compensatory damages, all of which have Not yet been fully ascertained but are believed to be well in excess of $638,000,000.00, plus the highest rate of interest under United States Law, Pre and Post Judgment (Pre-Judgment from 4/22/15). Plaintiff will request leave of the Court to amend this Complaint to allege the full amount of damages incurred by Defendants when the same has been fully ascertained. As the acts which created this liability were done with an evil mind (inherent in a criminal act), and by racketeering, Plaintiff asks for treble damages.

148. Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct hereinabove alleged, Defendants, and each of them, have been guilty of oppression, fraud and malice, and have acted in conscious disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of damages as described above, sufficient to punish and make an example of Defendants and their fellow conspirators and co-defendants, and each of them. Plaintiff is further informed and believes and thereon alleges that as to each defendant which is a government, corporation, partnership, trust or other entity, such actions were authorized or ratified by one or more officers, directors or managing agents of such defendant.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE 5TH AND 14TH AMENDMENTS FOR DUE PROCESS

149. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 146, inclusive, ncluding Notes, and Comments, as though fully set forth herein.

150. Defendants have caused the Plaintiff material damages by virtue of their repeated Acts of Public Corruption and their Criminal Acts thereby violating my 5th and 14th Amendment Rights. Defendants, while having no legitimate reason to do so, repeatedly committed these acts, individually, and in concert with one another.

151. As a direct and proximate result of the acts hereinabove alleged, Defendants and their Co- Defendants have, and each of them, are jointly and severally liable to the Plaintiff, for each of the wrongful acts herein above alleged.

152. By virtue of the foregoing, and the acts herein alleged, the Plaintiff prays that this Court award the Plaintiff actual damages; punitive damages; damages to his person; compensatory damages, all of which have not yet been fully ascertained but are believed to be well in excess of $638,000,000.00, plus the highest rate of interest under United States Law, Pre and Post Judgment  (Pre-Judgment from 4/22/15). Plaintiff will request leave of the Court to amend this Complaint to allege the full amount of damages incurred by Defendants when the same has been fully ascertained. As the acts which created this liability were done with an evil mind (inherent in a criminal act), and by racketeering, Plaintiff asks for treble damages.

153. Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct hereinabove alleged, Defendants, and each of them, have been guilty of oppression, fraud and malice, and have acted in conscious disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of damages as described above, sufficient to punish and make an example of Defendants and their fellow conspirators and co-defendants, and each of them. Plaintiff is further informed and believes and thereon alleges that as to each defendant which is a government, corporation, partnership, trust or other entity, such actions were authorized or ratified by one or more officers, directors or managing agents of such defendant.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE 14TH AMENDMENT FOR EQUAL PROTECTION

154. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 153, inclusive, including Notes, and Comments, as though fully set forth herein.

155. Defendants have caused the Plaintiff material damages by virtue of their repeated Acts of Public Corruption and their Criminal Acts thereby violating my 14th Amendment Rights to Equal Protection. Defendants, while having no legitimate reason to do so, repeatedly committed these acts, individually, and in concert with one another.

156. As a direct and proximate result of the acts hereinabove alleged, Defendants and their Co- Defendants have, and each of them, are jointly and severally liable to the Plaintiff, for each of the wrongful acts hereinabove alleged.

157. By virtue of the foregoing, and the acts herein alleged, the Plaintiff prays that this Court award the Plaintiff actual damages; punitive damages; damages to his person; compensatory damages, all of which have not yet been fully ascertained but are believed to be well in excess of $638,000,000.00, plus the highest rate of interest under United States Law, pre and post Judgment (Pre-Judgment from 4/22/15). Plaintiff will request leave of the Court to amend this Complaint to allege the full amount of damages incurred by Defendants when the same has been fully ascertained. As the acts which created this liability were done with an evil mind (inherent in a criminal act), and by racketeering, Plaintiff asks for treble damages.

158. Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct hereinabove alleged, Defendants, and each of them, have been guilty of oppression, fraud and malice, and have acted in conscious disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of damages as described above, sufficient to punish and make an example of Defendants and their fellow conspirators and co-defendants, and each of them. Plaintiff is further informed and believes and thereon alleges that as to each

defendant which is a government, corporation, partnership, trust or other entity, such actions were authorized or ratified by one or more officers, directors or managing agents of such defendant.

## FIFTH CAUSE OF ACTION
## PROSECUTORIAL MISCONDUCT

159. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 158, inclusive, including Notes, and Comments, as though fully set forth herein.

160. Defendants have caused Plaintiff material damages by virtue of their repeated Acts of Public Corruption and their Criminal Acts, committed Prosecutorial Misconduct. Defendants, while having no legitimate reason to do so, repeatedly committed these acts, individually, and in concert with one another.

161. As a direct and proximate result of the acts hereinabove alleged, Defendants and their Co- Defendants have, and each of them, are jointly and severally liable to the Plaintiff, for each of the wrongful acts hereinabove alleged.

162. By virtue of the foregoing, and the acts herein alleged, the Plaintiff prays that this Court award the Plaintiff actual damages; punitive damages; damages to his person; compensatory damages, all of which have not yet been fully ascertained but are believed to be well in excess of $638,000,000.00, plus the highest rate of interest under United States Law, Pre and Post Judgment (Pre-Judgment from 4/22/15). Plaintiff will request leave of the Court to amend this Complaint to allege the full amount of damages incurred by Defendants when the same has been fully ascertained. As the acts which created this liability were done with an evil mind (inherent in a criminal act), and by racketeering, Plaintiff asks for treble damages.

163. Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct hereinabove alleged, Defendants, and each of them, have been guilty of oppression, fraud and malice, and have acted in conscious disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of damages as described above, sufficient to punish and make an example of Defendants and their fellow conspirators and co-defendants, and each of them. Plaintiff is further informed and believes and thereon alleges that as to each defendant which is a government, corporation, partnership, trust or other entity, such actions were authorized or ratified by one or more officers, directors or managing agents of such defendant.

## SIXTH CAUSE OF ACTION
## CONSPIRACY TO COMMIT PROSECUTORIAL MISCONDUCT

164. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 163, inclusive, including Notes, and Comments, as though fully set forth herein.

165. Defendants have caused the Plaintiff material damages by virtue of their Acts of Public Corruption.

18

and their Criminal Acts, Conspiring to Commit Prosecutorial Misconduct. Defendants, while having no legitimate reason to do so, repeatedly committed these acts, and in concert with one another.

166.  As a direct and proximate result of the Conspiracy hereinabove alleged, Defendants and their Co-Defendants have, and each of them, are jointly and severally liable to the Plaintiff, for each of the wrongful acts hereinabove alleged.

167.  By virtue of the foregoing, and the Conspiracy herein alleged, the Plaintiff prays that this Court award the Plaintiff actual damages; punitive damages; damages to his person; compensatory damages, all of which have not yet been fully ascertained but are believed to be well in excess of $638,000,000.00, plus the highest rate of interest under United States Law, Pre and Post Judgment (Pre-Judgment from 4/22/15). The Plaintiff will request leave of the Court to amend this Complaint to allege the full amount of damages incurred by Defendants when the same has been fully ascertained. As the acts which created this liability were done with an evil mind (inherent in a criminal act), and by racketeering, Plaintiff asks for treble damages.

168. Plaintiff is informed and believes and thereon alleges that in engaging in the wrongful conduct hereinabove alleged, Defendants, and each of them, have been guilty of oppression, fraud and malice, and have acted in conscious disregard of the rights of the Plaintiff, entitling the Plaintiff to an award of damages as described above, sufficient to punish and make an example of Defendants and their fellow conspirators and co-defendants, and each of them.  Plaintiff is further informed and believes and thereon alleges that as to each defendant which is a government, corporation, partnership, trust or other entity, such actions were authorized or ratified by one or more officers, directors or managing agents of such defendant.

And for such other and further relief as the court may deem just and proper.

## IX.  CONCLUSION

169. I am almost 67 years old, I have traveled to 51 countries in my life, I have done business in 19 different countries, speaking several different languages...I have seen corruption in "third world countries," but I have never seen as much corruption abroad as I have here in Arizona.

170. I pray this Court will reverse the injustices I have suffered as a direct result of Defendants errant acts.

171. I thank the Court in advance for its time and efforts in adjudicating the matters herein.

Respectfully submitted this 28th day of June, 2019, by: _____, In Pro Se.
                                                                                    Plaintiff Will Graven

- Original of this Complaint filed the Clerk of District Court this 28th day of June, 2019.
- Defendants to be Served as required by the Federal Rules of Civil Procedure.
- CERTIFICATE OF SERVICE to be filed with the Court upon effecting Service of Defendants.
- VERIFICATION of the above allegations is on the following page.

**VERIFICATION**

STATE OF ARIZONA      )
                               )ss:
County of Coconino      )

William A. Graven, being first duly sworn upon his oath avows that he has written and therefore read this Complaint and that the allegations contained therein are true and correct, based upon his personal knowledge, except as to allegations made upon information and belief, and as to such allegations and information, he believes them to be true.

As well, William A. Graven, being first duly sworn upon his oath avows that he has reviewed all Exhibits, and swears that each is a true and correct copy of the original, based upon my personal knowledge.

Should I be called upon to testify under oath for either this Complaint and its contents, or the Exhibits attached thereto, I would be able to do so.

DATED this 27th of June, 2019.

William A. "Will" Graven

Subscribed and sworn to before me, the undersigned Notary Public, this 27th day of June, 2019, by Will Graven.

Notary Public

My Commission Expires:
3/31/2022

DENISE STABE
Notary Public - Arizona
Coconino County
My Comm. Expires Mar 31, 2022

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 1

Plaintiff Will Graven's Complaint
Case No.: CV2019-_____
Filed June 28, 2019
Assigned for all practical purposes to the Honorable

_____

*Will Graven,*
Plaintiff,

*v.*

*State of Arizona,*
Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 1

**Note:** This Exhibit has been minimized for limited purposes. Only the 1st and 2nd pages, and the last 12 pages are included here. The entire Report represented here is available upon request. This Report was found on the 9 cd's I was given by the AzAGO (see **Ex 17**). AzAGO Bates Numbers can be seen on the lower right-hand corner of each page. The 157 Exhibits that are a part of this Report are also available upon request.

STATE OF ARIZONA
OFFICE OF THE ATTORNEY GENERAL
SPECIAL INVESTIGATIONS SECTION
REPORT

**DATE WRITTEN BY AGENT:** 9/20/2015

**LF NUMBER:** P-2015-0615
Document #4217474

**CASE NAME:**   Snell & Wilmer

**REPORT TYPE:** Snell & Wilmer Summary

**AGENT:** Assistant Chief Special Agent Dan Woods

**PAGE 1 OF 50 PAGES**

This report contains a summary of Will Graven's allegations related to his engagement with Snell & Wilmer, LLP. Refer to report titled, *"20150920 Background and Timeline of Will Graven's Allegations.pdf"* for additional background and context.

*Executive Overview*

Between 7/2005 and 12/2005, 27 different Snell & Wilmer attorneys and paraprofessionals including Snell & Wilmer Attorneys Jim Sienicki, Mark Ohre, and Bill Kastin, provided Will Graven and several of his Phoenix-based companies, including but not limited to, Arizona Building Systems, Inc. (ABS); California Building Systems, Inc. (CBS); and CBS Aviation Development, LLC (CBS Aviation); with over $100,000 in personal and corporate legal advice and services without a signed engagement or representation letter. As a result of this engagement, Snell & Wilmer, LLP, and Snell & Wilmer Attorneys Jim Sienicki, Mark Ohre, and Bill Kastin, developed a fiduciary duty to Will Graven and his companies.

Between 12/2005 and 4/2006, Snell & Wilmer Attorneys Jim Sienicki, Mark Ohre, and Bill Kastin, shirked their fiduciary duty to Will Graven and his companies by writing new engagement letters that falsely re-wrote history and concealed the true history, nature, and scope of Snell & Wilmer's engagement with Will Graven, and then conspired with ABS General Counsel Daniel Esposito and former owner of ABS, Deborah Dubree, to make changes to the ABS shareholders' agreement, without Will Graven's knowledge, to assist Daniel Esposito and Deborah Dubree in their effort to take control of ABS.

Separately, in 4/2006, Daniel Esposito sent an email to Snell & Wilmer Attorney Mark Ohre in which he accused Will Graven of misappropriating money. (Will Graven will later describe the related email exchange as a "red-flag" emails). Rather than notify Will Graven immediately of Daniel Esposito's allegations, Snell & Wilmer relied on the new engagement letters, which falsely re-wrote history and concealed the true history, nature, and scope of Snell & Wilmer's engagement with Will Graven, and took no action.

AG010868

In 2/2011, Will Graven discovered the red-flag emails, and in 6/2011, Will Graven filed a civil lawsuit against Snell & Wilmer (the civil lawsuit was limited to the red-flag emails because Will Graven had not yet discovered the scheme to alter the ABS shareholders' agreement). During the civil action, Snell & Wilmer misled the court, withheld discovery, and continued to conceal the true history, nature, and scope of its relationship with Will Graven. Consequently, the case was later dismissed with prejudice.

Daniel Esposito went on to conspire with several other ABS executives who committed multiple acts of forgery, theft, computer tampering, and fraudulent schemes and artifices against Will Graven and his companies, which led to the rapid failure of all of Will Graven's companies, and the loss of other assets, which according to Will Graven were valued at more than $200 million.

### Abridged Timeline

The following is a high-level timeline that summarizes the allegations related to Snell & Wilmer, LLP:

1.  On 2/18/2005, Will Graven and Deborah Dubree signed a consulting and option agreement that gave Will Graven the option to purchase from Deborah Dubree 100% of struggling steel building construction company, Arizona Building Systems, Inc. (ABS). Will Graven became the de facto chief executive officer and began several months of due diligence on the company.

2.  In 5/2005, Will Graven formed California Building Systems, Inc. (CBS), which was a separate legal entity from ABS, to pursue construction opportunities in California.

3.  In 7/2005, Will Graven formed CBS Aviation Development, LLC, (CBS Aviation), which was also a separate legal entity from ABS and CBS, to pursue an airport development project in California. Even though CBS and CBS Aviation performed work in California, both companies were based in Phoenix and leveraged ABS personnel and resources.

4.  Between 7/2005 and 12/2005, 27 different Snell & Wilmer attorneys and paraprofessionals provided Will Graven and several of his companies, including ABS, CBS, and CBS Aviation, with $129,839 in legal advice and services across 14 separate matters. Snell & Wilmer invoiced "Arizona Building Systems" to the attention of "Will Graven, President" for *all of their legal services,* including those provided to Will Graven, as an individual, and those provided to his companies, including ABS, CBS, and CBS Aviation. Snell & Wilmer did not produce nor require any engagement letters to codify the full breadth and scope of their legal representation.

AG010869

Report to Snell & Wilmer File
AGI P-2015-0615
Snell & Wilmer Summary
9/20/2015
Page 46 of 50

200.  On 12/15/2014, SCOTUS denied review. *(Exhibit 150).*

***Conclusion***

The above-described emails and documents support the below allegations against the following people:

*Daniel Esposito – ABS General Counsel*

1.    Between 12/14/2005 and 3/27/2006, Daniel Esposito conspired with Deborah Dubree to use ABS funds to pay Snell & Wilmer Attorneys Jim Sienicki, Mark Ohre, and Bill Kastin, to make changes to the ABS shareholders' agreement, without Will Graven's knowledge or consent, in an effort to take control of ABS. On 8/3/2015, Daniel Esposito was indicted for this alleged criminal conduct.

*Deborah Dubree – Former owner of ABS*

1.    Between 12/14/2005 and 3/27/2006, Deborah Dubree conspired with Daniel Esposito to use ABS funds to pay Snell & Wilmer Attorneys Jim Sienicki, Mark Ohre, and Bill Kastin, to make changes to the ABS shareholders' agreement, without Will Graven's knowledge or consent, in an effort to take control of ABS. On 8/3/2015, Daniel Esposito was indicted for this alleged criminal conduct.

*Jim Sienicki – Snell & Wilmer Attorney*

1.    Between 12/14/2005 and 3/27/2006, Jim Sienicki, while serving a leadership role, conspired with Mark Ohre and Bill Kastin to defraud Will Graven by shirking his fiduciary duty to Will Graven; writing and executing new engagement letters that falsely re-wrote history; working exclusively through Daniel Esposito to get the new engagement letters signed; causing Snell & Wilmer to make changes to the ABS shareholders' agreement that were against Will Graven's interests; concealing his activities from Will Graven by failing to disclose his actions during subsequent communications; and charging Will Graven, as 90.1% owner of ABS, for the changes to the ABS shareholders' agreement. **(Not yet charged).**

2.    Between 3/27/2006 and 2/21/2013, Jim Sienicki misled the Maricopa County Superior Court by concealing the true nature and scope of Snell & Wilmer's engagement with Will Graven. **(Not yet charged).**

AG010913

Report to Snell & Wilmer File
AGI P-2015-0615
Snell & Wilmer Summary
9/20/2015
Page 47 of 50

_____

### _Mark Ohre – Snell & Wilmer Attorney_

1.  Between 12/14/2005 and 3/27/2006, Mark Ohre conspired with Jim Sienicki and Bill
    Kastin to defraud Will Graven by shirking his fiduciary duty to Will Graven; writing and
    executing new engagement letters that falsely re-wrote history; working exclusively
    through Daniel Esposito to get the new engagement letters signed; causing Snell & Wilmer
    to make changes to the ABS shareholders' agreement that were against Will Graven's
    interests; concealing his activities from Will Graven by failing to disclose his actions during
    subsequent communications; and charging Will Graven, as 90.1% owner of ABS, for the
    changes to the ABS shareholders' agreement. **(Not yet charged).**

### _Bill Kastin – Snell & Wilmer Attorney_

1.  Between 12/14/2005 and 3/27/2006, Bill Kastin conspired with Jim Sienicki and Mark
    Ohre to defraud Will Graven by shirking his fiduciary duty to Will Graven; writing and
    executing new engagement letters that falsely re-wrote history; working exclusively
    through Daniel Esposito to get the new engagement letters signed; causing Snell & Wilmer
    to make changes to the ABS shareholders' agreement that were against Will Graven's
    interests; concealing his activities from Will Graven by failing to disclose his actions during
    subsequent communications; and charging Will Graven, as 90.1% owner of ABS, for the
    changes to the ABS shareholders' agreement. **(Not yet charged).**

### **_Sources for Exhibits_**

The information contained in this report is derived from the following sources:

1.  Pursuant to a court order, Snell & Wilmer provided the Attorney General's Office with a
    CD that contained 15,324 pages of documents from its client files related to Will Graven
    and his companies. These exhibits are Bates stamped SW000001 through SW015324 in
    the lower right hand corner of each page. _(for example, Exhibit 077)_. Approximately 36.6%
    of the documents found in the exhibits are from the Snell & Wilmer CD.

2.  It should be noted that the Attorney General's Office included a letter with the subpoena,
    signed by Will Graven, in which he waived his attorney-client privilege with Snell &
    Wilmer. When Snell & Wilmer received the letter and subpoena, Snell & Wilmer Attorneys
    Lisa Coulter and Craig Logsdon claimed that Will Graven could not waive privilege because
    he was not the client. Snell & Wilmer provided the documents only after receiving a court
    order.

3.  Investigators collected over 300,000 emails from computers previously used by ABS
    employees. Each of these exhibits have a cover page that contains the meta-data for the

AG010914

email and a unique item number. The evidentiary item on which the email was found is provided in the "Source" field. *(for example, Exhibit 093)*. Approximately 39.6% of the documents found in the exhibits are from ABS computers.

4.  Investigators obtained court documents from the Maricopa County Superior Court Electronic Court Record (ECR) website located at ecr.clerkofcourt.maricopa.gov *(for example, Exhibit 142)*. Approximately 10.1% of the documents found in the exhibits are from the ECR website.

5.  Investigators obtained Exhibits 145 and 150 from the SCOTUS website.

6.  Investigators obtained Exhibits 011 and 104 during the execution of a search warrant at the residence of former ABS Chief Financial Officer Douglas Epley.

7.  Investigators obtained Exhibits 001 and 002 during the execution of a search warrant at the residence of Deborah Dubree.

8.  Investigators obtained Exhibits 18, 30, 45, 75, and 103 from the Arizona Corporation Commission (ACC).

9.  Exhibits that do not fall into one of the above-described categories were obtained from Will Graven. *(for example, Exhibit 010)*.

10. Any information not supported by third-party interviews or exhibits is from Will Graven and has not been independently verified.

***Missing Documents***

The investigation uncovered several documents that have not been located on the CD that Snell & Wilmer provided pursuant to the court order.

1.  The email that Daniel Esposito sent to Snell & Wilmer Attorney Bill Kastin (on 12/14/2005 at 0854 hours) in which he asked Bill Kastin for help drafting the new ABS shareholder agreement was present on the CD, but the attachments were not found (compare Exhibit 035, which was found among emails collected from ABS computers, with Exhibit 036, which was found on the CD from Snell & Wilmer). It should be noted that investigators looked on the CD to determine if email attachments were missing from other emails, and for each of the first ten emails investigators found that contained attachments, the attachments were also included on the CD. *(Exhibit 151)*.

AG010915

2.   Bill Kastin's reply to the above email (on 12/27/2005 at 1434 hours) in which he asked
Daniel Esposito if the requested changes were related to Deborah Dubree's concerns was
not found on the CD. *(Exhibit 051).*

3.   Daniel Esposito's reply to the above email (on 12/27/2005 at 1435 hours) in which Daniel
Esposito wrote that all the requested changes were related to Deborah Dubree's concerns
was not found on the CD. *(Exhibit 052).*

4.   The email that Jim Sienicki's secretary, Dawn Detjens, sent to Daniel Esposito (on
4/4/2006 at 1038 hours) that contained the three billing statements, including the draft
billing statement that was subsequently altered to remove revealing language about
Daniel Esposito's "concerns/second thoughts," was present on the CD, but the draft billing
statement and other attachments were not found. (Compare the documents presented in
Exhibit 095, which contains the 4/4/2006 email as found on ABS computers, with the
same email as found on the CD from Snell & Wilmer). It should be noted that investigators
looked on the CD to determine if email attachments were missing from other emails, and
for each of the first ten emails investigators found that contained attachments, the
attachments were also included on the CD. *(Exhibit 151).*

5.   The email that Daniel Esposito sent to Mark Ohre (on 4/25/2006 at 1629 hours) in which
he asked for an opinion regarding his personal liability if ABS et al went bankrupt was not
located on the CD. *(Exhibit 100).*

6.   The email that Daniel Esposito sent to Mark Ohre (on 5/1/2006 at 1201 hours) in which he
reminded Mark Ohre of the "possible dilemma" he was facing, and that Daniel Esposito
signed "Sweating like Nixon," was not located on the CD. *(Exhibit 100).*

7.   It should be noted that the email Attorney Michael Donahey sent to Daniel Esposito on
5/17/2006 at 1359 hours in which he described Daniel Esposito's above emails as "very
concerning" was present on the CD; however, the emails that Michael Donahey described
as very concerning (paragraphs 5 and 6, just above) were not found on the CD. These
emails were at the center of Will Graven's law suit against Snell & Wilmer, but apparently,
Snell & Wilmer did not preserve them.

8.   The engagement letter for Snell & Wilmer's work related to Will Graven's estate and pre-
marital planning was on the CD, but it was never signed by Will Graven. Will Graven
believes that since Daniel Esposito tricked him into signing Jim Sienicki's new engagement
letters by saying they were related to estate and pre-marital planning, Daniel Esposito did
not have a valid reason to ask Will Graven to sign them "again." *(Exhibit 152).*

Report to Snell & Wilmer File
AGI P-2015-0615
Snell & Wilmer Summary
9/20/2015
Page 50 of 50

*Attempted Interviews*

Investigators attempted to interview Snell & Wilmer Attorneys Jim Sienicki, Mark Ohre, Bill Kastin, and Brian Burt, to determine what criteria they used when deciding which emails to preserve and which to discard.

On 12/3/2014, investigators received a letter from Snell & Wilmer Attorney Lisa Coulter that explained the criteria each used when deciding whether or not to archive an email. *(Exhibit 153).*

In 12/2014, investigators exchanged emails with Snell & Wilmer Attorney Lisa Coulter and repeated his request to interview Jim Sienicki, Mark Ohre, Bill Kastin, and Brian Burt. Snell & Wilmer declined the interviews. *(Exhibit 154).*

On 1/12/2014, criminal defense Attorney Michael Piccarreta told investigators that he represents Snell & Wilmer and all of its employees. *(Exhibit 155).*

End of report.

AG010917

# Appendix A

AG010918

| | 1. CD from Snell & Wilmer | 2. Emails from ABS computers (Intella) | 3. Maricopa County Superior Court ECR website | 4. SCOTUS website | 5. Search of Douglas Epley's residence | 6. Search of Deborah Dubree's residence | 7. Arizona Corporation Commission | 8. Other interviews | 9. Will Graven |
|---|---|---|---|---|---|---|---|---|---|
| Exhibit 001 | | | | | | | 1 | | |
| Exhibit 002 | | | | | | | 1 | | |
| Exhibit 003 | 1 | | | | | | | | |
| Exhibit 004 | 1 | | | | | | | | |
| Exhibit 005 | 1 | | | | | | | | |
| Exhibit 006 | 1 | | | | | | | | |
| Exhibit 007 | 1 | | | | | | | | |
| Exhibit 008 | 1 | | | | | | | | |
| Exhibit 009 | 1 | | | | | | | | |
| Exhibit 010 | | | | | | | | | 1 |
| Exhibit 011 | | | | | 1 | | | | |
| Exhibit 012 | 1 | 1 | | | | | | | |
| Exhibit 013 | | 1 | | | | | | | |
| Exhibit 014 | 1 | | | | | | | | |
| Exhibit 015 | 1 | | | | | | | | |
| Exhibit 016 | 1 | | | | | | | | |
| Exhibit 017 | 1 | | | | | | | | |
| Exhibit 018 | | | | | | | | 1 | |
| Exhibit 019 | 1 | | | | | | | | |
| Exhibit 020 | 1 | | | | | | | | |
| Exhibit 021 | 1 | | | | | | | | |
| Exhibit 022 | 1 | | | | | | | | |
| Exhibit 023 | | 1 | | | | | | | |
| Exhibit 024 | | 1 | | | | | | | |
| Exhibit 025 | 1 | | | | | | | | |
| Exhibit 026 | | 1 | | | | | | | |
| Exhibit 027 | 1 | 1 | | | | | | | |
| Exhibit 028 | | 1 | | | | | | | |
| Exhibit 029 | 1 | 4 | | | | | | | |
| Exhibit 030 | | 1 | | | | | | 1 | |
| Exhibit 031 | | 2 | | | | | | | |

AG010919

| | 1. CD from Snell & Wilmer | 2. Emails from ABS computers (Intella) | 3. Maricopa County Superior Court ECR website | 4. SCOTUS website | 5. Search of Douglas Epley's residence | 6. Search of Deborah Dubree's residence | 7. Arizona Corporation Commission | 8. Other interviews | 9. Will Graven |
|---|---|---|---|---|---|---|---|---|---|
| Exhibit 032 | 20 | | | | | | | | |
| Exhibit 033 | 1 | | | | | | | | |
| Exhibit 034 | | 4 | | | | | | | |
| Exhibit 035 | | 1 | | | | | | | |
| Exhibit 036 | 1 | 1 | | | | | | | |
| Exhibit 037 | | 1 | | | | | | | |
| Exhibit 038 | | 1 | | | | | | | |
| Exhibit 039 | | 1 | | | | | | | |
| Exhibit 040 | 1 | | | | | | | | |
| Exhibit 041 | | 1 | | | | | | | |
| Exhibit 042 | 1 | | | | | | | | |
| Exhibit 043 | | 1 | | | | | | | |
| Exhibit 044 | 1 | | | | | | | | |
| Exhibit 045 | | | | | | | | 1 | |
| Exhibit 046 | 1 | | | | | | | | |
| Exhibit 047 | | 1 | | | | | | | |
| Exhibit 048 | | 2 | | | | | | | |
| Exhibit 049 | 1 | | | | | | | | |
| Exhibit 050 | | 1 | | | | | | | |
| Exhibit 051 | | 1 | | | | | | | |
| Exhibit 052 | | 1 | | | | | | | |
| Exhibit 053 | | 1 | | | | | | | |
| Exhibit 054 | 1 | | | | | | | | |
| Exhibit 055 | 1 | | | | | | | | |
| Exhibit 056 | 1 | | | | | | | | |
| Exhibit 057 | 1 | | | | | | | | |
| Exhibit 058 | | 1 | | | | | | | |
| Exhibit 059 | | 1 | | | | | | | |
| Exhibit 060 | 1 | 1 | | | | | | | |
| Exhibit 061 | | 2 | | | | | | | |
| Exhibit 062 | | 2 | | | | | | | |

AG010920

| | 1. CD from Snell & Wilmer | 2. Emails from ABS computers (Intelia) | 3. Maricopa County Superior Court ECR website | 4. SCOTUS website | 5. Search of Douglas Epley's residence | 6. Search of Deborah Dubree's residence | 7. Arizona Corporation Commission | 8. Other interviews | 9. Will Graven |
|---|---|---|---|---|---|---|---|---|---|
| Exhibit 063 | | 1 | | | | | | | |
| Exhibit 064 | | 1 | | | | | | | |
| Exhibit 065 | | 1 | | | | | | | |
| Exhibit 066 | | 1 | | | | | | | |
| Exhibit 067 | 6 | | | | | | | | |
| Exhibit 068 | 1 | | | | | | | | |
| Exhibit 069 | | 1 | | | | | | | |
| Exhibit 070 | | 1 | | | | | | | |
| Exhibit 071 | | 1 | | | | | | | |
| Exhibit 072 | | 1 | | | | | | | |
| Exhibit 073 | | 1 | | | | | | | |
| Exhibit 074 | | 1 | | | | | | | |
| Exhibit 075 | | | | | | | 1 | | |
| Exhibit 076 | | 1 | | | | | | | |
| Exhibit 077 | 1 | | | | | | | | |
| Exhibit 078 | 1 | | | | | | | | |
| Exhibit 079 | | 1 | | | | | | | |
| Exhibit 080 | | 1 | | | | | | | |
| Exhibit 081 | 1 | | | | | | | | |
| Exhibit 082 | 1 | | | | | | | | |
| Exhibit 083 | 1 | | | | | | | | |
| Exhibit 084 | 1 | | | | | | | | |
| Exhibit 085 | 1 | | | | | | | | |
| Exhibit 086 | 1 | | | | | | | | |
| Exhibit 087 | 1 | | | | | | | | |
| Exhibit 088 | | 1 | | | | | | | |
| Exhibit 089 | | 1 | | | | | | | |
| Exhibit 090 | | 1 | | | | | | | |
| Exhibit 091 | | 1 | | | | | | | |
| Exhibit 092 | | 1 | | | | | | | |
| Exhibit 093 | | 1 | | | | | | | |

AG010921

| | 1. CD from Snell & Wilmer | 2. Emails from ABS computers (Intella) | 3. Maricopa County Superior Court ECR website | 4. SCOTUS website | 5. Search of Douglas Epley's residence | 6. Search of Deborah Dubree's residence | 7. Arizona Corporation Commission | 8. Other interviews | 9. Will Graven |
|---|---|---|---|---|---|---|---|---|---|
| Exhibit 094 | 1 | | | | | | | | 1 |
| Exhibit 095 | | 1 | | | | | | | |
| Exhibit 096 | 1 | | | | | | | | |
| Exhibit 097 | | 1 | | | | | | | |
| Exhibit 098 | | 1 | | | | | | | |
| Exhibit 099 | 1 | | | | | | | | |
| Exhibit 100 | | 1 | | | | | | | |
| Exhibit 101 | 1 | | | | | | | | |
| Exhibit 102 | 1 | 1 | | | | | | | |
| Exhibit 103 | | | | | | | 1 | | |
| Exhibit 104 | | | | | 1 | | | | |
| Exhibit 105 | | 1 | | | | | | | |
| Exhibit 106 | | 1 | | | | | | | |
| Exhibit 107 | | 19 | | | | | | | |
| Exhibit 108 | | 1 | | | | | | | |
| Exhibit 109 | | 1 | | | | | | | |
| Exhibit 110 | | 1 | | | | | | | |
| Exhibit 111 | | | | | | | | 1 | |
| Exhibit 112 | | | | | | | | 1 | |
| Exhibit 113 | | 1 | | | | | | | |
| Exhibit 114 | | | | | | | | | 1 |
| Exhibit 115 | | | 1 | | | | | | |
| Exhibit 116 | | | 1 | | | | | | |
| Exhibit 117 | | | | | | | | | 1 |
| Exhibit 118 | | | 1 | | | | | | |
| Exhibit 119 | | | 1 | | | | | | |
| Exhibit 120 | | | 1 | | | | | | |
| Exhibit 121 | | | | | | | | | 1 |
| Exhibit 122 | | | | | | | | | 1 |
| Exhibit 123 | | | 2 | | | | | | |
| Exhibit 124 | | | 1 | | | | | | |

AG010922

| | 1. CD from Snell & Wilmer | 2. Emails from ABS computers (Intella) | 3. Maricopa County Superior Court ECR website | 4. SCOTUS website | 5. Search of Douglas Epley's residence | 6. Search of Deborah Dubree's residence | 7. Arizona Corporation Commission | 8. Other interviews | 9. Will Graven |
|---|---|---|---|---|---|---|---|---|---|
| Exhibit 125 | | | 1 | | | | | | |
| Exhibit 126 | | | 1 | | | | | | |
| Exhibit 127 | | | 1 | | | | | | |
| Exhibit 128 | | | 1 | | | | | | |
| Exhibit 129 | | | 1 | | | | | | |
| Exhibit 130 | | | 1 | | | | | | |
| Exhibit 131 | | | 1 | | | | | | |
| Exhibit 132 | | | 1 | | | | | | |
| Exhibit 133 | | | 1 | | | | | | |
| Exhibit 134 | | | 1 | | | | | | |
| Exhibit 135 | | | 1 | | | | | | |
| Exhibit 136 | | | | | | | | | 1 |
| Exhibit 137 | | | | | | | | | 1 |
| Exhibit 138 | | | | | | | | | 1 |
| Exhibit 139 | | | | | | | | | 1 |
| Exhibit 140 | | | | | | | | | 1 |
| Exhibit 141 | | | | | | | | | 1 |
| Exhibit 142 | | | 1 | | | | | | |
| Exhibit 143 | | | 1 | | | | | | |
| Exhibit 144 | | | | | | | | | 1 |
| Exhibit 145 | | | | 1 | | | | | |
| Exhibit 146 | | | 1 | | | | | | |
| Exhibit 147 | | | | | | | | | 1 |
| Exhibit 148 | | | 1 | | | | | | |
| Exhibit 149 | | | | | | | | | 1 |
| Exhibit 150 | | | | 1 | | | | | |
| Exhibit 151 | 10 | | | | | | | | |
| Exhibit 152 | 1 | | | | | | | | |
| Exhibit 153 | | | | | | | | 1 | |
| Exhibit 154 | | | | | | | | 1 | |
| Exhibit 155 | | | | | | | | 1 | |

AG010923

| | 1. CD from Snell & Wilmer | 2. Emails from ABS computers (Intella) | 3. Maricopa County Superior Court ECR website | 4. SCOTUS website | 5. Search of Douglas Epley's residence | 6. Search of Deborah Dubree's residence | 7. Arizona Corporation Commission | 8. Other interviews | 9. Will Graven |
|---|---|---|---|---|---|---|---|---|---|
| Exhibit 156 | | 1 | | | | | | | |
| Exhibit 157 | | 1 | | | | | | | |
| *totals* | 83 | 90 | 23 | 2 | 2 | 2 | 5 | 5 | 15 |
| | 36.6% | 39.6% | 10.1% | 0.9% | 0.9% | 0.9% | 2.2% | 2.2% | 6.6% |

AG010924

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 2

Plaintiff Will Graven's Complaint
Case No.:  CV2019-_____
Filed June 28, 2019
Assigned for all practical purposes to the Honorable

_____

*Will Graven,*
Plaintiff,

*v.*

*State of Arizona,*
Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 2

**Note:** This Exhibit of the Snell Case PowerPoint Report has been minimized for limited purposes. Only the first few slides and the last few are included here. The original of this PowerPoint  is 505MB. It is over 1,000 slides. This entire Report is available upon request, or can be seen on YouTube at youtube.com/watch?v=FRJB2HcIBhM.  This Report was found on the 9th of the 9 cd's I was given by the AzAGO (see page 1). This Report was created to present the Snell Case to the Arizona State Grand Jury.



# Graven - Snell & Wilmer

## Case # P-2015-0615

Assistant Chief Dan Woods

May 2015

# Graven - Snell & Wilmer

## Case # P-2015-0615

V1: Will Graven – CEO/Owner, Arizona Building Systems, Inc. (ABS)

SP1: Daniel Esposito – General Counsel, Arizona Building Systems, Inc.

SP2: Deborah Dubree – 9.9% Owner, Arizona Building Systems, Inc.

SP3: Jim Sienicki – Attorney, Snell & Wilmer, LLP

SP4: Mark Ohre – Attorney, Snell & Wilmer, LLP

SP5: Bill Kastin – Attorney, Snell & Wilmer, LLP

Assistant Chief Dan Woods
May 2015













# Recommended Charges

On and between January 3, 2006 and April 25, 2006, Jim Sienicki, Mark Ohre and Bill Kastin, engaged in a scheme to work *through Daniel Esposito* to shirk their fiduciary duty, falsely rewrite history, and significantly redefine their engagement with Will Graven, **without Will Graven's knowledge.**



On January 3, 2006, all three met and agreed to the scheme (and billed Will Graven at ABS for the meeting).

On January 4, 2006, Jim Sienicki sent a representation letter to Daniel Esposito, which contained materially false statements and misrepresentations.

On January 12, 2006, Bill Kastin sent an email to Daniel Esposito, which contained materially false statements and misrepresentations.

On January 23, 2006, Jim Sienicki gave Daniel Esposito a representation letter for Will Graven to sign, which contained materially false statements and misrepresentations.

All three concealed the activity from Will Graven (failed to copy Will Graven on select emails, failed to mention it during face-to-face meetings, altered a draft billing statement, and then sent only the altered billing statement to Daniel Esposito).

**Benefit:** Continued and increased billing for legal services, and keeping ABS as a prospective long term client under the ownership and control of Deborah Dubree (Jim Sienicki's longtime colleague) and Daniel Esposito (Mark Ohre's close personal friend).

# Recommended Charges

On and between January 3, 2006 and April 25, 2006, Jim Sienicki, Mark Ohre and Bill Kastin, engaged in a scheme to work *through Daniel Esposito* to shirk their fiduciary duty, falsely rewrite history, and significantly redefine their engagement with Will Graven, **without Will Graven's knowledge.**

### A.R.S 13-1003 Conspiracy:

"A person commits conspiracy if, with the intent to promote or aid the commission of an offense, such person agrees with one or more persons that at least one of them or another person will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the offense…"

### A.R.S 13-2310 Fraudulent Schemes and Artifices:

"Any person who, pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions is guilty of a class 2 felony."

### A.R.S 13-2301 Racketeering:

"Racketeering" means any act, including any preparatory or completed offense, that is chargeable or indictable under the laws of the state or country in which the act occurred… and that would be punishable by imprisonment for more than one year… regardless of whether the act is charged or indicted, and the act involves… a scheme or artifice to defraud.

### A.R.S 13-2312 Illegal Control of an Enterprise:

"A person commits illegally conducting an enterprise if such person is employed by or associated with any enterprise and conducts such enterprise's affairs through racketeering or participates directly or indirectly in the conduct of any enterprise that the person knows is being conducted through racketeering."



Scheme to shirk fiduciary duty

James Sienicki

Mark Ohre

Bill Kastin

# Recommended Charges

Between December 1, 2005 and March 27, 2006, Daniel Esposito and Deborah Dubree engaged in a scheme to work with Snell & Wilmer to rewrite the ABS shareholders' agreement, *without Will Graven's knowledge*, in an effort to take control of ABS.

In December 2005, they met and agreed to the scheme to take over ABS.

On December 14, 2005, at Deborah Dubree's request, Daniel Esposito directed Snell & Wilmer to make the changes.

They used ABS funds without authorization to pay Snell & Wilmer.

On March 27, 2006, Daniel Esposito had concerns and second thoughts and decided to direct Snell & Wilmer to reverse many of the changes to the shareholders' agreement.

They concealed everything they did from Will Graven.

**Benefit:** Prospective ownership and control of Arizona Building Systems.



204

# Recommended Charges

Between December 1, 2005 and March 27, 2006, Daniel Esposito and Deborah Dubree engaged in a scheme to work with Snell & Wilmer to rewrite the ABS shareholders' agreement, *without Will Graven's knowledge,* in an effort to take control of ABS.



Scheme to take over ABS

Daniel Esposito

Deborah Dubree

### A.R.S 13-1003 Conspiracy:

"A person commits conspiracy if, with the intent to promote or aid the commission of an offense, such person agrees with one or more persons that at least one of them or another person will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the offense..."

### A.R.S 13-2310 Fraudulent Schemes and Artifices:

"Any person who, pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions is guilty of a class 2 felony."

### A.R.S 13-2301 Racketeering:

"Racketeering" means any act, including any preparatory or completed offense, that is chargeable or indictable under the laws of the state or country in which the act occurred... and that would be punishable by imprisonment for more than one year... regardless of whether the act is charged or indicted, and the act involves... a scheme or artifice to defraud.

### A.R.S 13-2312 Illegal Control of an Enterprise:

"A person commits illegally conducting an enterprise if such person is employed by or associated with any enterprise and conducts such enterprise's affairs through racketeering or participates directly or indirectly in the conduct of any enterprise that the person knows is being conducted through racketeering."

# Recommended Charges



Jim Sienicki, Mark Ohre, and Bill Kastin, facilitated Daniel Esposito's and Deborah Dubree's scheme to take over ABS by causing another Snell & Wilmer attorney, Brian Burt, to make the requested changes to the ABS shareholders' agreement (and caused Brian Burt to also work exclusively through Daniel Esposito).

**A.R.S 13-1004 Facilitation:**

"A person commits facilitation if, acting with knowledge that another person is committing or intends to commit an offense, the person knowingly provides the other person with means or opportunity for the commission of the offense."

# Recommended Charges



Daniel Esposito facilitated Snell & Wilmer's scheme to shirk its fiduciary duty by tricking Will Graven into signing the engagement letter with the jointly owned entities exception.

**A.R.S 13-1004 Facilitation:**

"A person commits facilitation if, acting with knowledge that another person is committing or intends to commit an offense, the person knowingly provides the other person with means or opportunity for the commission of the offense."

# Recommended Charges



## Snell & Wilmer
L.L.P.
LAW OFFICES
Character comes through.®

### A.R.S 13-305 Criminal liability of enterprises:

A. Notwithstanding any other provisions of law, an enterprise commits an offense if:

1. The conduct constituting the offense consists of a failure to discharge a specific duty imposed by law; or

2. The conduct undertaken in behalf of the enterprise and constituting the offense is engaged in, authorized, solicited, commanded or recklessly tolerated by the directors of the enterprise in any manner or by a high managerial agent acting within the scope of employment; or

### A.R.S 13-1004 Facilitation:

"A person commits facilitation if, acting with knowledge that another person is committing or intends to commit an offense, the person knowingly provides the other person with means or opportunity for the commission of the offense."

### A.R.S 13-1003 Conspiracy:

"A person commits conspiracy if, with the intent to promote or aid the commission of an offense, such person agrees with one or more persons that at least one of them or another person will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the offense…"

### A.R.S 13-2310 Fraudulent Schemes and Artifices:

"Any person who, pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions is guilty of a class 2 felony."

### A.R.S 13-2312 Illegal Control of an Enterprise:

"A person commits illegally conducting an enterprise if such person is employed by or associated with any enterprise and conducts such enterprise's affairs through racketeering or participates directly or indirectly in the conduct of any enterprise that the person knows is being conducted through racketeering."

298

# Recommended Charges

If subsequent investigation shows that Snell & Wilmer Attorney Lisa Coulter knew the true history and scope of Snell & Wilmer's engagement with Will Graven...

## A.R.S 13-2409 Obstructing Criminal Investigations or Prosecutions:

"A person who knowingly attempts by means of... misrepresentation... to obstruct, delay or prevent the communication of information or testimony relating to a violation of any criminal statute to a peace officer, magistrate, prosecutor or grand jury... is guilty of a class 5 felony..."



Lisa Coulter

# *Snell & Wilmer never provided Will Graven with copies of his client files*