# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 10

From:       Conrad, Donald
To:         Bailey, Michael
Subject:    FW: Deborah
Date:       Monday, December 21, 2015 1:11:30 PM

FYI

**From:** Waters, Joseph
**Sent:** Monday, December 21, 2015 11:55 AM
**To:** Conrad, Donald; Ahler, Paul
**Subject:** FW: Deborah

Please see below.

**From:** Dan Woods [mailto:dan@danwoods.net]
**Sent:** Monday, December 21, 2015 10:02 AM
**To:** Waters, Joseph
**Subject:** Deborah

Joe,

As you may already know, Don placed me on admin leave on Fri. I'm writing from my personal email because I have been locked out of my work email. I'm using your work email because I am not trying to hide anything from anyone.

Will you please call Milo and let him know we need to cancel the meeting that was scheduled with Deborah this Wed? Also, you may want to let Mason and Eckstein know i am out and to contact you instead. They usually do include you but just in case... I'd hate for both Stricker and Esposito to decide to cooperate only to have the opportunity squandered because Don and Paul are pissed off at the victim.

Thanks. Sorry you were dragged into this mess.

Dan

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 11

Diaz, Bethany

| | |
|---|---|
| From: | Rodriguez, Lisa |
| Sent: | Wednesday, December 02, 2015 8:42 AM |
| To: | Ahler, Paul |
| Cc: | Martinez, Gilda |
| Subject: | RE: Are you going out of state next week? |

Please give Gilda your itinerary so that she can prepare the 509 asap. The 509 is required even if someone else is footing the bill. It protects you if the plane goes down that you are on official state business. Make sense?

**From:** Ahler, Paul
**Sent:** Wednesday, December 02, 2015 8:41 AM
**To:** Rodriguez, Lisa
**Subject:** RE: Are you going out of state next week?

Yes, I will be at a NAGTRI conference in Miami.

Paul W Ahler
Section Chief, Fraud and Public Corruption
Attorney General's Office
1275 West Washington
Phoenix, AZ 85007
602 542-8507

**From:** Rodriguez, Lisa
**Sent:** Wednesday, December 02, 2015 8:39 AM
**To:** Ahler, Paul
**Subject:** RE: Are you going out of state next week?

Is it for AGO business? If so, we need a 509. I'll reset Graven.

**From:** Ahler, Paul
**Sent:** Wednesday, December 02, 2015 8:37 AM
**To:** Rodriguez, Lisa
**Subject:** RE: Are you going out of state next week?

Yes, I will back on Thursday.

Paul W Ahler
Section Chief, Fraud and Public Corruption
Attorney General's Office
1275 West Washington
Phoenix, AZ 85007
602 542-8507

**From:** Rodriguez, Lisa
**Sent:** Tuesday, December 01, 2015 4:47 PM
**To:** Ahler, Paul
**Subject:** Are you going out of state next week?

1

Lisa Rodriguez
Legal Administrator
Arizona Attorney General's Office
Criminal Division
(602) 542-8488
lisa.rodriguez@azag.gov

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 12

From: Perkovich, Mark
To: Conrad, Donald; Ahler, Paul
Subject: FW: Graven - Dubree meeting, follow-up
Date: Tuesday, December 29, 2015 10:59:47 AM

Additional issues related to the Graven matter...

From: Buhrow, Lauren
Sent: Tuesday, December 29, 2015 10:54 AM
To: Waters, Joseph
Cc: Eckert, Robert; Perkovich, Mark
Subject: Graven - Dubree meeting, follow-up

Hi Joe,

Deborah Dubree just called asking 3 things in follow-up to my encounter with her. I informed Rob, because I am not the primary case agent and have been instructed to take no action on these cases, and he suggested I send this email to inform you.

She was under the impression that the meeting she scheduled with Dan, for which I interacted with her in Dan's absence, was a meeting with Dan, Dubree and Will. She wanted to accomplish, and is still asking about, the following:

1. They were going to go over a notebook Dubree provided to Dan. She wants to confirm we still have her notebook now that Dan is gone.
2. She wanted the opportunity to ask Graven not to proceed with the story with in the media, and is asking me to contact him to convey this (which I have not and will not do without direction).
3. She wants to reschedule the meeting.

Sincerely,

Lauren

**Lauren Buhrow**
**Special Agent**

Office of the Attorney General – SIS
1275 W. Washington, Phoenix, AZ 85007
Desk: 602.542-8054 I Cell: 602-568-7572 I Fax: 602.542.4882
Lauren.Buhrow@azag.gov
http://www.azag.gov

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

---

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 13



**From:** Perkovich, Mark
**To:** Conrad, Donald; Ahler, Paul
**Subject:** Contact by Mr. Graven
**Date:** Tuesday, December 29, 2015 8:44:15 AM

On Sunday morning, I received a voicemail from Mr. Graven requesting a meeting with me for yesterday (12/28) while he was here in Phoenix. Yesterday around noon, I received an email message from Mr. Graven titled "Picking up the pieces", where he requested a return phone call. While I have yet to respond to either contact, I was hoping we could meet to discuss the future of the Graven investigation. I am here the rest of this week if this timeframe works for you both.

Thanks in advance-
Mark

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 14

**Diaz, Bethany**

| | |
|---|---|
| **From:** | Rodriguez, Lisa |
| **Sent:** | Thursday, December 31, 2015 5:32 PM |
| **To:** | Conrad, Donald; Ahler, Paul |
| **Subject:** | FW: Graven cases, laptops |
| **Attachments:** | Untitled.PDF - Adobe Acrobat Pro.pdf |

Fyi.

**From:** Rodriguez, Lisa
**Sent:** Thursday, December 31, 2015 5:30 PM
**To:** Perkovich, Mark
**Subject:** RE: Graven cases, laptops

Hi Mark.

Sorry for the delay in getting back to you.  According to my records and my conversation with Gilda, whom loaned the FSP laptop to Dan, our AG Asset Tag number is 9454.  Per the Property Agreement attached to your email, it lists serial number CNU02613SF.  I have done further research have confirmed that that serial number matches the Asset Tag number for 9454.  Gilda remembers loaning the laptop to Dan for the purpose of someone coming into the AGO to review documents.  Never did we know that the laptop was sent out of the office.

As for the other laptop, Toshiba 5A067587H that too belongs to FSP with an Asset Tag number 9568.  I checked that out to SA Connell/SA Griffitts on 7/22/14 with a note that they were to return it by 8/2/14.  On 8/21/14, Dan reported that SIS was still using laptop 9568. Please see the attached log relating to 9568.

As for why the asset tag numbers are not on Dan's agreements, I have no idea.

These were older laptops that were going to be used as a last option, if needed for distribution to FSP AAGS, as we had received approximately three new laptops to check-out.

Hope this helps.  Let me know if you have any additional questions.

Lisa

**From:** Perkovich, Mark
**Sent:** Thursday, December 31, 2015 9:49 AM
**To:** Rodriguez, Lisa
**Subject:** Graven cases, laptops

Good morning, Lisa.  At my 1:1 with Don yesterday, he provided me a handwritten paper titled "Check Out".  It appears this may be a check out sheet for a laptop and other office peripherals.  In my research of the AGO issuing laptops on behalf of the Graven case (Dan Woods), I was able to locate the attached documents.  On the handwritten sheet, the number "9454" appears next to Dan's name but nowhere on the attached docs does the same numbers appear.  While it looks like the check-out date was 8/21/14, the issuance date of the laptops on the attached receipts is September 2014.  Any additional thoughts moving forward?

Thanks-
Mark

1

5/5/14    Joe    (laptop #944?) Speakers &

9454 Not working

In Focus 4872 (projector)  DRG borrowed

5/12/14  black cart, orange cable

5/14/14   Todd  laptop #6 9454

7/15  #78  Carol K.  Projector + Speakers  EXT CORD

7/22/14   SA Connell   # 9568 —  Return by
          SA Griffiths   Still w/ S78  8/2/14
                         per Woods on 8/02/14

8/7/14   T. Lawson   # 9454

8/21/14  Don Woods   #9454  Speaker port not working

Returned Bev  ?  # 6748  Laptop
8/2/14
BOI

8/7/15  Haley  # 9716  Lawss

Screen

1/26/15  laptop  Michelle  9569

# Check out

(Gilda started new
log on yellow pad)

| | | | |
|---|---|---|---|
| 8/21/14 | Dan Woods | 9454 | |
| 8/26/14 | ~~Todd Lawson~~ | ~~9443~~ | |
| 9/4/14 | Carol Segoviano | 6745 | projector |
| 9/4/14 | ~~Carrie Matlen~~ | ~~10637~~ | (NEW laptop) |
| 9/4/14 | Beverly Kudrick | Video camera | 8/33 |
| | | tripod | |

| | | | |
|---|---|---|---|
| ~~9-11-14~~ | ~~10620~~ ~~10626~~ | ~~LAPTOPS~~ | ~~TANIKA~~ |
| ~~9/12/14~~ | ~~Screen~~ | ~~Gina/Math~~ | |
| ~~9/26/14~~ | ~~Ted~~ | ~~Projector~~ | ~~ovan~~ |
| | | ~~org cord~~ | ~~party~~ |
| ~~9/30/14~~ | ~~Ted~~ | ~~Laptop  9/30/14~~ | ~~Ted Laptop~~ |
| ~~9/30/14~~ | ~~Ted~~ | ~~Projector~~ | ~~10637  10/2/14~~ |
| ~~10/1/14~~ | ~~Conrell Waters~~ | ~~projector  5421~~ | |
| ~~10/7/14~~ | ~~Waters~~ | ~~laptop  10634~~ | |
| ~~11/27/14~~ | ~~Mann~~ | ~~10625~~ | |
| ~~11/1 - 11/2~~ | | ~~Projector  Kepper~~ | |

OFFICE OF THE ATTORNEY GENERAL
PHYSICAL FIXED ASSET INVENTORY
FY 2014

| Asset Tag | Purchase Cost | Purch Date | Serial Number | Asset Description | Current Location | At Current Location? Circle One | If No, Provide New Location | Other Comments and Updates |
|---|---|---|---|---|---|---|---|---|
| 7D3PGX1 | $967.29 | 6/5/13 | 7D3PGX1 | PERSONAL COMPUTER OptiPlex 7010 | 2030 | Yes or No | | Varu |
| 8338 | $209.00 | 5/30/07 | CNN7132WFX | MONITOR HP 19" MONITOR | 2032 | Yes or No | | PDC. rm |
| 9734 | $179.45 | 1/9/12 | RPX114841307 | MONITOR ViewSonic 24" Black Monitor | 2032 | Yes or No | | PDC. rm |
| 9729 | $179.45 | 1/9/12 | RPX114841318 | MONITOR ViewSonic 24" Black Monitor | 2034 | Yes or No | | Waters |
| 8292 | $209.00 | 5/30/07 | CNN7132WGH | MONITOR HP 19" MONITOR | 2034 | Yes or No | | Waters |
| 9490 | $1,044.00 | 10/20/10 | 1122526924 | CAMERAS MOVIE AND ACCESSORIES Canon Rebel T2i Kit | 2037 2036 | Yes or No | | Equipment room |
| 8273 | $209.00 | 5/30/07 | CNN7132W91 | MONITOR HP 19" MONITOR | 2035 | Yes or No | | ISS removed |
| 8296 | $209.00 | 5/30/07 | CNN7132WGN | MONITOR HP 19" MONITOR | 2036 | Yes or No | | Royle |
| 9720 | $179.45 | 1/9/12 | RPX114841310 | MONITOR ViewSonic 24" Black Monitor | 2036 | Yes or No | | Royle |
| 7D1PGX1 | $967.29 | 6/5/13 | 7D1PGX1 | PERSONAL COMPUTER OptiPlex 7010 | 2036 | Yes or No | | Royle |
| 9568 | $0.00 | | 5A067557H | LAPTOP COMPUTER TOSHIBA LAPTOP | 2037 | Yes or No | | Loaned to SIS |
| 9569 | $0.00 | | FVZLBM1 | LAPTOP COMPUTER DELL LAPTOP | 2037 | Yes or No | | |
| 9443 | $20,427.66 | 6/14/10 | CNU02613QZ | LAPTOP COMPUTER HP Compaq 6730b NoteBook PC | 2037 | Yes or No | | Equipment Room Loaned to SIS |
| 9454 | $20,427.66 | 6/14/10 | CNU02618SF | LAPTOP COMPUTER HP Compaq 6730b NoteBook PC | 2037 | Yes or No | | Equipment Room |
| 6748 | $2,193.14 | 6/11/04 | ZUA429P1FN | LAPTOP COMPUTER HPNX9110 P4, 3GHZ, 1GB DDR, 40GB DVDRW, BLUTOOTH WINXPP | 2037 | Yes or No | | Equipment Room |
| 6750 | $2,193.15 | 6/11/04 | ZUA429P1FQ | LAPTOP COMPUTER HPNX9110 P4, 3GHZ, 1GB DDR, 40GB DVDRW, BLUTOOTH WINXPP | 2037 | Yes or No | | Equipment room |
| 6751 | $2,193.15 | 6/11/04 | ZUA429P1FM | LAPTOP COMPUTER HPNX9110 P4, 3GHZ, 1GB DDR, 40GB DVDRW, BLUTOOTH WINXPP | 2037 | Yes or No | | |
| 6549 | $1,622.28 | 6/2/04 | CNF4210T96 | LAPTOP COMPUTER NX9010 P4 2.8GHZ 40GB 512MB NOTEBOOK | 2037 | Yes or No | | Equipment Room |

5/28/2014   1) Inventory Taken By, Name and Intials: _Gilda Martinez GM_   2) Inventory Taken By, Name and Intials: _Stacey Canez SC_ /13

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 15

#398

## CASE CHARGING APPROVAL

Complaint: XX          Indictment:     Estimated Length of Trial: N/A

Grand Jury Presentment / Direct Complaint:      Date and Time: December 18, 2015

Name of Defendant: SCOTT HESSE

CHARGES:

COUNT 1: COMPOUNDING, Class 6 Felony, in violation of A.R.S. § 13-2405

If drug related: N/A                    Weight: N/A

Name(s) of Victim(s):  Arizona Building Systems

County:  Maricopa        Date of Offense: May 15, 2006 and August 22, 2006

Statute of Limitations:  November 2018

Summary of Case and Evidence Available:

The parties have a pre-indictment plea set for December 18, 2015.  Below are the facts as they relate to Scott Hesse.

Arizona Building Systems (ABS) was owned by Will Graven.  ABS was a steel fabrication and construction business.  From 2005 to 2007, Will Graven's business was systematically dismantled by his executive team (Michael Martin and Daniel Esposito[1]) with the intent of forming a competing business.  One scheme that Michael Martin and Daniel Esposito[1] engaged in was the creation of a competing business called DSM.  DSM was created to perform steel fabrication and construction.  The purpose of DSM was to steal business from ABS.  On February 7, 2006, Will Graven approved the hiring of Scott Hesse as the director of development services for ABS.  Scott Hesse was recommended by Michael Martin.

The investigation by S.A. Woods was completed by obtaining partial emails saved on the Exchange server of ABS[2], search warrants of previous ABS employees who kept email personal storage table (PST) files related to their ABS employment, and witness interviews.  Subpoenas were also obtained for bank documentation and for any other material referenced below.  Finally, search warrants at Michael Martin and Michael Groh's residence located ABS records that ABS could not provide to the investigation due to the records being destroyed.[3]  Based upon this information, S.A. Woods investigated three projects that DSM stole intellectual property of ABS.

---

[1] Michael Martin and Daniel Esposito are indicted for their involvement with DSM.

[2] Complete records of email could not be obtained due an unknown party hacking into ABS and deleting files associated with email.

[3] Witnesses have identified Daniel Esposito, Michael Martin, and Michael Groh as shredding numerous ABS documents.  In addition, prior to Daniel Esposito resigning from ABS, he brought home numerous ABS legal documents claiming to have worked on them.  When he resigned, he never returned the documents.

The intellectual property was subsequently used at DSM.  Will Graven was never aware that DSM existed and never gave permission for ABS intellectual property to be used by DSM.

## DSM PROJECTS

### RCR Project

In June of 2006, consultants brought a construction project relating to building a solid waste disposal facility to Michael Martin.  The consultants brought this project to Michael Martin in his capacity as the owner of DSM.  The value of this project was $350,000.  Scott Hesse actively worked the project for DSM while employed at ABS.  Scott Hesse worked on the project during ABS business hours and while purporting to be loyal employees to ABS and receiving compensation from ABS.  In addition, the Scott Hesse was using the resources of ABS to pursue this project.

### Data Center Project

In March of 2006, Michael Martin obtained project information regarding a data center worth approximately $70 million dollars.  In May of 2006, Michael Martin approached Will Graven about a promising opportunity to build a data center and that ABS would make a ten percent profit on the project.  ABS began to pay expenses and dedicated employee resources to this project.  At the same time, DSM listed the Data Center as a project in their 2006 operating budget.  The executive team emailed ABS intellectual property to their DSM emails in order to use DSM in an attempt to win the project.  Scott Hesse actively worked the project for DSM while employed at ABS.

### Victorville Project

In June of 2005, representatives from the City of Victorville in California spoke with Will Graven about ABS building airport hangers for the city, potentially worth millions for ABS. Construction of the hangers began and substantial progress was being made.  Eventually the city and ABS had a falling out over the building of the hangers as the city was not able to afford the construction and began to blame ABS for the lack of progress.  The city and ABS were working on a mutual release and settlement agreement for the two parties to terminate the agreement to build the hangers.  In April of 2006, the executive team was attempting to take the hanger project to their business, DSM.  Michael Martin, Michael Groh, and Daniel Esposito were working together to secure ABS intellectual property and to use it at DSM to win the remainder of the hanger project.  The executive team and Scott Hesse were working on obtaining this project while getting paid by ABS.  In addition, the executive team was pressuring Will Graven to enter into the release agreement in order to further their plans.  Will Graven never gave authorization for anyone other than ABS to use ABS intellectual property.

DSM was not successful in obtaining any of the three projects.

Amount of Loss:  **$50,000.00**

Forfeiture/Seizure:  **None**                    Plea Offers to Date: **Attached**

Case Agent:  **Dan Woods**                       Agency:  **AGO SIS**

If Warrant: __X__ NCIC _____ AZ Only

Submitted by Assistant Attorney General: **Joseph Waters**    Date: **11/24/15**

APPROVALS

Section Chief Counsel                    Date

Chief Counsel, Criminal Division      Date
#4782233

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 16

# Plaintiff Will Graven's Complaint
## Case No.:  CV2019-_____
### Filed June 28, 2019
Assigned for all practical purposes to the Honorable

_____

*Will Graven,*
Plaintiff,

*v.*

*State of Arizona,*
Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 16

**<u>Note:</u>** This Exhibit of a Sworn Affidavit by former SA Dan Woods has been minimized for limited purposes. Only the first 3 pages and 6 pages from mid-document are included here. The limited purpose of this Exhibit is to show the Paul Ahler, although he was Screened from all Graven Case(s) matters, was fully engaged from behind that Screen. Woods filed his Affidavit with the Arizona Supreme Court (so, a complete copy is available from the Supreme Court, or I also have complete copies).

May 13, 2016

Chief Justice Scott Bales
Arizona Supreme Court
1501 West Washington
Phoenix, Arizona 85007

Dear Chief Justice Bales,

I am a former assistant chief special agent for the Special Investigations Section (SIS) of the Criminal Division of the Arizona Attorney General's Office (AGO). Between November 2011 and December 2015, I was the primary case agent on all AGO cases related to victim Will Graven, and consequently, I am fluent in all the facts and evidence related to the four-year investigation.

On February 26, 2016, in an effort to compel the AGO to present several of his cases to a Grand Jury, victim Will Graven filed a petition for a *writ of mandamus* with the Arizona Supreme Court (CV-16-0047-SA). On March 16, 2016, Arizona Solicitor General John Lopez filed the AGO's response to Will Graven's petition.

I carefully reviewed Will Graven's petition as well as the AGO's response, and I found several material omissions and factual misstatements. In an effort to provide the Arizona Supreme Court with complete and accurate information, I prepared the attached affidavit. I tried to retain counsel to file the affidavit as an *amicus curiae*, but the attorneys with whom I spoke were either too busy or too expensive (one provided me with an estimate of $25,000). Consequently, I decided to simply send the affidavit directly to you and other interested parties.

In the interest of justice, I will make myself available to the Court or any investigator to provide additional information and testimony as needed.

Sincerely yours,

Dan Woods
Former Assistant Chief Special Agent
Arizona Attorney General's Office

Dan Woods

*cc*:   Will Graven, Petitioner
        John Lopez, Arizona Solicitor General, Respondent
        Thomas McCauley, Arizona State Bar
        The Honorable Bob Thorpe, Arizona House of Representatives
        William Wallace, Pinal County Attorney's Office

Dan Woods

# AFFIDAVIT OF DANIEL WOODS

I, Daniel Woods, swear or affirm:

1. My name is Daniel Woods. I am 50 years old and I currently reside at ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Chandler, Arizona, 85226.

2. I have information relevant to Will Graven's February 26, 2016, petition for a writ of mandamus, which I believe is a matter before the Arizona Supreme Court.

3. I prepared this Affidavit entirely on my own and at my own initiative to correct several material omissions and factual misstatements made by Petitioner Will Graven and by Respondent's counsel, Arizona Solicitor General John Lopez.

## MY BACKGROUND

4. For approximately five years between January 3, 2011, and December 22, 2015, I worked as a special agent for the Special Investigations Section (SIS) in the Criminal Division of the Arizona Attorney General's Office (AGO). One of my duties was to investigate major fraud (refer to Appendix A for an organizational chart of the people and components of the AGO referenced in this Affidavit).

5. Prior to working for the AGO, I had worked for the Phoenix Police Department as a sworn reserve police officer; the Federal Bureau of Investigation as a special agent; the Central Intelligence Agency as a technical operations officer; and as a deputy sheriff for the Maricopa County Sheriff's Office. I have worked in various law enforcement and national security positions for the last 23 years. I also hold a Bachelor of Science degree in Computer Systems Engineering from Arizona State University, magna cum laude.

6. Prior to working for Attorney General Mark Brnovich, I had never been fired, asked to resign, or disciplined by any employer.

## WILL GRAVEN'S ORIGINAL ALLEGATIONS

7. On November 3, 2011, Will Graven walked into the AGO to file a complaint. I was the "duty agent" that day so I met with Will Graven in the lobby of the AGO.[1] I did not know nor had I ever met Will Graven prior to this day.

8. During our first meeting, Will Graven told me he was the former owner and chief executive officer of several companies including but not limited to Arizona Building

---

[1] The duty agent role rotated each day to a different special agent. The duty agent's responsibility was to receive, evaluate, and document all incoming complaints, which came to SIS via email, phone, mail, and walk-ins.

146. In early to mid-December 2015, AAG Waters and I finalized our negotiation with Scott Hesse's defense attorney, Cynthia Kelley. We had agreed upon a factual basis addendum to Scott Hesse's plea agreement, in which Scott Hesse admitted that his defense attorney at the time, Paul Steen, withheld evidence of criminal conduct during discovery. That is, Scott Hesse admitted to sending his defense attorney, Paul Steen, evidence of criminal conduct, and Paul Steen failed to provide the evidence to Will Graven.

147. Just days after reaching a verbal agreement with Cynthia Kelley, Attorney Chris Rapp, a named partner at Ryan, Rapp, & Underwood PLC, where Cynthia Kelley worked, asked for a teleconference with AAG Waters. I silently participated in the teleconference. Before he even introduced himself, Chris Rapp started the call by asking, "What the fuck is going on?" AAG Waters and I were both shocked by Chris Rapp's vulgar language (for someone with whom we had no history). He went on to aggressively object to the contents of Scott Hesse's factual basis addendum (this is the same factual basis addendum to which Scott Hesse and his defense attorney, Cynthia Hesse, had already agreed).

148. It was obvious to both me and AAG Waters that most of Chris Rapp's objections were arbitrary and only intended to give him leverage in the one objection that mattered — that Attorney Paul Steen, who had previously worked for the same firm at which Chris Rapp was a named partner, had withheld from Will Graven evidence that Scott Hesse had engaged in criminal conduct. Predictably, Chris Rapp acquiesced on all of his arbitrary objections as soon as AAG Waters agreed to remove the one reference that mattered.

149. On the call, Chris Rapp directly stated he was concerned about the civil liability to which his firm would be exposed if this language was left in Scott Hesse's factual basis addendum. I recall thinking that Chris Rapp was ignoring an obvious conflict — he was clearly representing the best interests of his firm, and not his firm's client, Scott Hesse. In the end, AAG Waters agreed to remove the language to which Chris Rapp objected (the unnumbered paragraph near the bottom of page 7 of 9 of Scott Hesse's factual basis addendum, which starts, "In 3/2008…" was changed to remove the language that indicated Attorney Paul Steen had received evidence of criminal conduct).

150. On Friday, December 18, 2015, Scott Hesse pleaded guilty to one class six felony. The factual basis addendum to his plea agreement is consistent with the documentary evidence and corroborates many of Will Graven's allegations (minus the language that Attorney Chris Rapp insisted that AAG Waters remove). **This is the fifth of five factual basis addenda to plea agreements that are both consistent with the documentary evidence and corroborate Will Graven's allegations** (and a sixth factual basis addendum from Marc Stricker was only days away from being finalized).

# MY INTERROGATION

151. On Friday December 18, 2015, the same day Scott Hesse had entered into his plea agreement, I was called into a meeting with Mark Perkovich, Mike Bailey, Paul Ahler, and Don Conrad. The meeting was in Mike Bailey's office. 

152. I thought the meeting was going to be a constructive conversation about how to handle Will Graven and the Snell & Wilmer case going forward, but instead, it was an ambush.

    a.    Don Conrad and Paul Ahler asked me 20-30 questions in a loud and accusatory tone. I got the impression that everyone at the meeting except Mark Perkovich believed I created the PowerPoint/video to "embarrass" and "get even" with Don Conrad because he refused to prosecute Snell & Wilmer; and because I was not the selected candidate for the chief agent position. When I objected and stated that I had a long history of creating PowerPoints for my cases, Don Conrad replied, "No, you don't!" Don Conrad was simply wrong and the contents of my AGO network drive will prove this (see paragraph 70).

    b.    Don Conrad said I was "reckless and irresponsible" for providing Will Graven with a copy of the Snell & Wilmer PowerPoint/video (at this point, I don't think Don Conrad had any idea that I had given Will Graven a copy of all investigative reports). I objected and said something like, "You mean it was OK for me to give a copy to ABC15 but not to Will Graven?" Don Conrad, yelled, "Yes!" I had no idea how to respond to such an unreasonable answer.

    c.    We talked openly about Will Graven and the allegations and evidence against Snell & Wilmer despite the fact that Paul Ahler had been walled off.

    d.    At one point, Paul Ahler asked me in a very sarcastic and loud tone, "Did you ever think to do a background on Will Graven!?" He added that Will Graven was a vexatious litigant in California, and that according to "an audit," $13 million in bond monies were missing. As he made the allegation, Paul Ahler motioned his hands toward a hard copy of an audit that Don Conrad had brought with him to the meeting (per paragraph 45c, this is the same audit I found a few years earlier, which was prepared for the San Bernardino Grand Jury).

    e.    I remained confused by Paul Ahler's active and aggressive presence in the meeting given that he had been walled off from all cases related to Will Graven. The fact that Paul Ahler knew that Will Graven had been declared a vexatious litigant, knew about the audit prepared for the San Bernardino County Grand Jury, and knew that $13 million was purportedly missing, is a violation of the screening memo.

Page 25 of 43

f.    I told Paul Ahler that not only was I aware of the audit and Will Graven being declared a vexatious litigant, but rather than drawing a conclusion based on this limited information, I had conducted a four year investigation — I said I had actually read the 19 lawsuits that led to Will Graven being declared a vexatious litigant; I had read the audit; I had spoken with the person who wrote it; I had interviewed more than a hundred people; I had read thousands of emails and other documents; and that my four year investigation supported an entirely different conclusion.

g.    I told Don Conrad and Paul Ahler that they sounded like defense attorneys, not objective prosecutors, as they yelled at me and made ignorant accusations and claims. Don Conrad and Paul Ahler were not interested in hearing facts – they appeared only to be looking for information that would support their erroneous conclusions about Will Graven.

h.    Because I am fluent in the allegations and evidence, I now believe the only place they could have reasonably learned about and obtained a copy of the audit is from Snell & Wilmer's criminal defense attorney, Michael Piccarreta, (or some other defense attorney). Neither AAG Waters nor I were consulted about their communicating with anyone on our case. I was concerned that in their haste to discredit Will Graven, that they had already compromised the Will Graven-related investigations, which were only days away from significant success, so I asked from where they obtained the audit. After a few seconds of awkward silence, Don Conrad said I was there to answer questions, not ask them.

i.    Throughout the meeting Don Conrad took copious handwritten notes. These notes should be pubic record, but based upon what I know now, I am not sure if his notes reflect what actually transpired during the meeting, or if they reflect what he wanted to transpire during the meeting. It is now clear to me that, at the time, all he and Paul Ahler cared about was locking me into precise details and then trying later to discredit me. They were not interested in facts or advancing justice.

j.    At one point, Mike Bailey rhetorically said, "I'm not even sure the PowerPoint is discoverable since both you and Joe worked on it." I quickly corrected Mike Bailey and said, "Joe didn't work on the PowerPoint. I did it all myself like every other report I prepared." I got the distinct impression that Don Conrad, Paul Ahler, and Mike Bailey, were trying to get me to say something, anything, that would allow them to categorize the PowerPoint/video as "confidential" and therefore not publicly releasable, and then they grew increasingly frustrated when nothing they tried worked.

k.    Paul Ahler also yelled that I should have been managing the section (the special investigations section over which I had been acting chief prior to Mark Perkovich being hired) like he "directed me to do" rather than "spinning my

Page 26 of 43

wheels" on Will Graven's cases (I never actually worked for Paul Ahler so he had no authority to direct me to do anything). I objected and reminded everyone that we had obtained more than 50 felony indictments on nine people.

l.  Don Conrad sarcastically asked, "Anything more serious than a class six?" His question again demonstrated his ignorance — almost all of the charges were class two and class three felonies. He had no idea that AAG Waters and I were following a four-year strategy, that to date, had been very effective, and that we were only days away from our final goal of finding insiders on the $8.5 million Victorville-related offenses. Don Conrad and Paul Ahler were not interested in hearing about the successes – all they cared about was attacking me and discrediting Will Graven.

m.  Paul Ahler also asked, "Why would you meet Andrew Pacheco at Starbucks?" It's not clear to me under what authority Paul Ahler believed he was entitled to ask such a question, but in the spirit of cooperation, I provided the answer (see paragraphs 131-134). Nobody in the meeting responded. They just continued attacking Will Graven and aggressively challenging me with questions – why did you create the PowerPoint? Why did you give a copy to Will Graven? Did you ever communicate with Will Graven using your personal email address? Why did you give a copy of the PowerPoint to Will Graven? Did you ever think to do a background check on Will Graven? You know he's a vexatious litigant in California?

n.  At the end of the meeting, I told everyone I was sorry for the trouble I had caused and that it was not my intention. Everyone at the meeting was hired after AG Brnovich took office. None of them knew my true character, nor did they appear to care.

## ADMINISTRATIVE LEAVE

153. At approximately 8:00 p.m. on the same day of my interrogation, Don Conrad called me and placed me on administrative leave. This was the same day that AAG Waters and I had obtained a fifth confession relative to Will Graven's allegations (and a sixth from Marc Stricker was a few days away).

154. I stayed up all night on the 18th replaying my interrogation wondering what I could have said or done differently to make them better understand. I thought about their questions and my answers. I now believe Don Conrad and Paul Ahler were only trying to lock me into precise details so they could later find minor inconsistencies, accuse me of lying, and terminate me.

155. After thinking about it, I now understand why Don Conrad was so focused on the PowerPoint/video — it exposes his poor judgment and uninformed decision not to prosecute the Snell & Wilmer attorneys. The PowerPoint (for anyone patient

enough to watch the three-hour presentation) very publicly proves Don Conrad wrong, and Don Conrad's ego caused him to make vengeful decisions that are contrary to justice.

156. One of the many questions I was asked during my interrogation was if I ever communicated with Will Graven using my personal email address. I have no idea why I was asked such a question, but I said no. The next morning, as I continued to replay the interrogation in my mind, I searched my personal email accounts to be sure. I found approximately 50 emails from Will Graven to one of my personal email accounts. Over the previous four years, Will Graven had sent me almost 2,000 emails, and only approximately 50 of the emails (less than 2.5%) were sent to my personal email address. This was not something to which I ever paid attention.

157. The fact that Will Graven had sent *any* emails to my personal email address confused me, so I asked Will Graven how he got my personal email address (because I did not recall providing it). He told me that when we first met on November 3, 2011, I asked him for his email address. When he told me ▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ apparently commented that I too had a personal email address ▉▉▉▉▉▉▉ Will Graven said he remembered it (refer to paragraph 13).

158. I sent an email to Don Conrad, Mike Bailey, and Mark Perkovich and explained the honest mistake. Only Mark Perkovich replied, "Thanks." (All these emails are public record).

159. I later asked Will Graven why he sent so many emails to my personal email address (this was not something I ever noticed). He told me he recalled me making fun of the AGO work cell phones because they were old "flip-phones" not capable of a data connection, and he knew they could not receive emails, so he sometimes used my personal email address so the email would be forwarded to my cell. He said other times it was probably just auto-complete oversight.

160. I have since reviewed all emails from Will Graven to my personal email address and none of them are consistent with secret communication.

## TERMINATION

161. On December 21, 2015, Don Conrad called me and told me to report to the AGO on December 22 at 9:00 am. When I arrived, Don Conrad, AGO Director of Operations Leslie Welch, and Mark Perkovich, met me in the lobby and led me into the lobby conference room.

162. Don Conrad told me my services were no longer needed by the AGO and presented me with two letters – a resignation letter I could sign or a termination

letter he would sign. I said I had no interest in resigning, so Don Conrad signed the termination letter and gave it to me.

163. Don Conrad also provided me with a document that threatened me with a class six felony if I disclosed "confidential information." I have seen several termination letters during my time at the AGO and none of them included this language.

164. I surrendered my badge and AGO identification, and then a co-worker drove me home. The next day, two days before Christmas, AGO human resources called and asked me to return to the AGO to pick up all my personal belongings. This was a low point in my career. I had never been treated so poorly by any employer.

## THE FUTURE OF WILL GRAVEN'S CASES

165. Because of the abrupt way I was forced to leave the AGO, I never had the opportunity to transition any of Will Graven's cases to another case agent, nor did I have any time to capture the latest set of case facts in the case file.

166. I left incomplete documents on my AGO network drive and partially examined evidence secured in my office. For example, Deborah Dubree had given me a three-ring binder of original documents that she described as being critically important to her defense. I started my review of these documents but Don Conrad terminated me before I could finish. I read enough of the documents to conclude they warranted a complete and thorough examination; however, I am skeptical that such a review ever took place. No one at the AGO had the context required to even understand the documents.

167. I also had the draft factual basis addendum for Marc Stricker's plea agreement on my AGO network drive. This is the document that had evolved over several months of discussions proxied by Marc Striker's defense attorney, Timothy Eckstein. In the latest version of Marc Stricker's draft factual basis addendum, Marc Stricker admitted to knowing about the $8.5 million Victorville-related offenses.

168. On December 27, 2015, I sent an email to Mark Perkovich and provided him with as much information as I could to help him transition Will Graven's cases to another investigator:

   a.   I explained that the only person at the AGO who could possibly take over the Will Graven-related cases, with my assistance, was Mike Edwards (because I had consulted him regularly over the previous four years).

   b.   I offered to meet with anyone at the AGO as needed to explain the previous four years of investigative activity.

   c.   I described the evidence that was in my office and why it was important.

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

**Plaintiff,**

*v.*

*State of Arizona,*

**Defendants,**

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 17

Arizona Attorney General's Office
State v. Martin, et. al
CR2015-002436
INITIAL DISCOVERY
AG000001-AG003321
Arizona Attorney General's Office
State v. Martin, et. al
CR2015-002436
INITIAL DISCOVERY
AG010868-AG014291
Arizona Attorney General's Office
State v. Epley (ABS 2)
CR2013-005043
INITIAL DISCOVERY
AG000001-AG000348
INITIAL DISCOVERY
AG000001-AG000652
Arizona Attorney General's Office
State v. Martin, et. al (ABS 3)
CR2014-001649
INITIAL DISCOVERY
INITIAL DISCOVERY
AG037419

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 18

William "Will" A. Graven, In Pro Per
2700 S. Woodlands Village Blvd; Suite 300-251
Flagstaff, Arizona 86001
Email: will@willgraven.com; Telephone: 928-890-8825

COPY

MAY 23 2018

IN SUPERIOR COURT FOR THE STATE OF ARIZONA; COUNTY OF MARICOPA

| | |
|---|---|
| In Re: Will Graven,<br>　　　　　Plaintiff,<br>v.<br><br>State of Arizona; Governor Doug<br>Ducey; Department of Attorney<br>General for the State of Arizona;<br>Attorney General Mark Brnovich;<br>Assistant Attorney General Michael<br>Bailey; (Former) Chief of the<br>Criminal Section Donald Conrad;<br>(Current) Chief of the Criminal<br>Section Paul Ahler; Assistant<br>Attorney General Joe Waters,<br>　　　　　Defendants. | CASE NO.:　CV 2018-001786<br><br>Case Filed: May 30, 2018<br>ASSIGNED FOR ALL PRACTICAL<br>PURPOSES TO THE HONORABLE JUDGE:<br><br>_____<br>**COMPLAINT FOR CIVIL LIABILITIES<br>FROM THE BELOW CAUSES OF ACTION;<br>1.) VIOLATIONS OF THE 5TH AND 14TH<br>AMENDMENTS FOR DUE PROCESS<br>2.) VIOLATIONS OF THE ARIZONA<br>CONSTITUTION, ARTICLE II, SECTION 4,<br>DUE PROCESS OF LAW<br>3.) VIOLATIONS OF THE AGENCY<br>HANDBOOK, CHAPTER 8, CONFLICT OF<br>INTEREST<br>4. VIOLATIONS OF A.R.S. 38-501<br>THROUGH 38-511, CONFLICT  OF<br>INTEREST<br>5.) PROSECUTORIAL MISCONDUCT**<br><br>**TRIAL BY JURY REQUESTED** |

## I.  INTRODUCTION

This Complaint is already proven, obviously proven, by internal documents from the Arizona Attorney General's

Office, which are in-hand (certain of which are attached as Exhibits), and other evidence also in-hand.

A year-long AGO criminal investigation of 6 suspects resulted in written Approval to charge those Suspects.

Defendant Ahler had a conflict with 4 of the 6 Suspects, so he was screened as required by law and case law.

But AGO documents show that while Screened, along with other (conflicted) Defendants who knew Ahler was

Screened, they were working together behind the Screen to "exonerate" those 4 (well-connected) Suspects.

When the AGO absolved these 4 Suspects, the Defendants continued with a series of other supporting acts,

therefore, I did not receive the justice or the restitution I was due. The Defendants assumed these liabilities to me.

The Defendants' efforts to exonerate those 4 Suspects, including supporting acts, validate this Complaint.

Ref. 1

1

# Plaintiff Will Graven's Complaint

## Case No.: CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 19

# Plaintiff Will Graven's Complaint
## Case No.:  CV2019-_____
## Filed June 28, 2019
## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*
Plaintiff,

*v.*

*State of Arizona,*
Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 19

**<u>Note</u>:** This Exhibit is in reference to a Hearing held in my Arizona State Court case on 2/22/19. The one page of this Exhibit is merely a screenshot of the very beginning of that Hearing. I have a DVD provided by the State Court Clerk of Court, which is available upon request, or, the video can be seen on YouTube at youtube.com/watch?v=MUqIZbc4WCM.



# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 20

1   Kevin E. O'Malley (Bar No. 006420)
    Mark C. Dangerfield (Bar No. 010832)
2   GALLAGHER & KENNEDY, P.A.
    2575 East Camelback Road
3   Phoenix, Arizona 85016-9225
    Telephone:    (602) 530-8000
4   Facsimile:    (602) 530-8500
    kevin.omalley@gknet.com
5   mark.dangerfield@gknet.com
    *Attorneys for Defendant State of Arizona and*
6   *Attorney General Mark Brnovich*

7                    **SUPERIOR COURT OF THE STATE OF ARIZONA**

8                              **COUNTY OF MARICOPA**

9
    IN RE WILL GRAVEN,                    No. CV2018-007856
10
                      Plaintiff,          **DEFENDANTS' RESPONSE TO**
11                                        **PLAINTIFF'S RULE 60 MOTION**
    v.                                    **FOR RELIEF DUE TO COURT**
12                                        **ERROR IN DENYING PLAINTIFF'S**
    STATE OF ARIZONA; ATTORNEY            **MOTION FOR SUMMARY**
13  GENERAL MARK BRNOVICH,                **JUDGMENT AND HIS MOTION**
                                          **FOR A COMBINED RULE 55(D)**
14                    Defendants.         **JUDGMENT AGAINST THE STATE**
                                          **AND A "FULL AMOUNT OF**
15                                        **DAMAGES" HEARING**

16                                        (Assigned to the Hon. Connie Contes)

17
            On May 1, 2019, Plaintiff Will Graven filed a second motion seeking relief under
18
    Ariz. R. Civ. P. 60. His second motion reiterates the same themes argued in both his April
19
    26, 2019 Rule 60 Motion for Relief Due to Court Error and in his April 23, 2019 Motion
20
    for Reconsideration. The State therefore incorporates in this Response its response to the
21
    other two motions just mentioned.
22
            Plaintiff's repetition of the same arguments, however, has not improved them.
23
            As he has done before, Plaintiff argues that the State "confused" the Court by
24
    "repeated frauds on the Court," including "lying" as to the nature of his complaint. But
25
    Plaintiff doesn't even understand the nature of his own claim. Let's assume for argument's
26
    sake that Plaintiff could prove that:
27
            (1) a law firm and three of its attorneys had been "approved for charging" by the
28

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

1    *caused Plaintiff compensable damage*, so that he was entitled to restitution.

2         But Plaintiff's Complaint doesn't plead any of the above, nor does his motion for

3    summary judgment offer any proof of such – or even mention such. Furthermore, if Plaintiff

4    is relying on this "restitution" theory, then the gravamen of his claim here remains just what

5    it was in his federal court complaint: that the State harmed Plaintiff by not indicting the

6    Snell parties, which thus deprived him of the restitution to which he (thinks) he was entitled.

7         But there is no such cause of action.

8         Furthermore, the record facts contradict such a claim, because – as Plaintiff's own

9    documents allege – the AGO was investigating the Snell parties for allegedly having helped

10   prepare some documents to improperly modify the Arizona Building Services ("ABS")

11   shareholder agreement, *but that plan was abandoned and the documents that the Snell*

12   *parties allegedly helped prepare were never even used. See* Ex. 1 to Plaintiff's Complaint

13   (Deborah Dubree Plea Agreement, Factual Basis Addendum at 4). These drafted-but-never-

14   used documents could not have harmed Plaintiff or ABS, and certainly couldn't have caused

15   Plaintiff the loss of his claimed net worth of $638 million. *See* Compl. ¶ 100 at p. 14.

16        In any event, Plaintiff would have to plead and prove how the drafted-but-never-

17   used documents harmed him, and neither his Complaint nor his motion for summary

18   judgment even mentions the issue.

19                                **CONCLUSION**

20        The Court correctly dismissed Plaintiff's Complaint because it failed to state a valid

21   cause of action, and because it was barred by the statute of limitations, so Plaintiff's motion

22   for summary judgment never comes into play.  In addition, Plaintiff lacks standing to bring

23   his claims because he has not pled and cannot prove that the alleged actions of the AGO –

24   even if they were criminal – directly inflicted on him a "distinct and palpable" injury.

25        For all the reasons set forth above, the Court should deny Plaintiff's most recent Rule

26   60 Motion for Relief.

27

28

4

# Plaintiff Will Graven's Complaint

Case No.:  CV2019-_____

Filed June 28, 2019

Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 21

1   Kevin E. O'Malley (Bar No. 006420)
    Mark C. Dangerfield (Bar No. 010832)
2   GALLAGHER & KENNEDY, P.A.
    2575 East Camelback Road
3   Phoenix, Arizona 85016-9225
    Telephone:   (602) 530-8000
4   Facsimile:   (602) 530-8500
    kevin.omalley@gknet.com
5   mark.dangerfield@gknet.com
    *Attorneys for Defendant State of Arizona and*
6   *Attorney General Mark Brnovich*

7              **SUPERIOR COURT OF THE STATE OF ARIZONA**

8                        **COUNTY OF MARICOPA**

9

10  IN RE WILL GRAVEN,                    No. CV2018-007856

              Plaintiff,
11
    v.
12
    STATE OF ARIZONA; ATTORNEY            **DEFENDANTS' REPLY IN**
13  GENERAL MARK BRNOVICH,                **SUPPORT OF MOTION TO**
                                          **DISMISS FOR FAILURE TO STATE**
14            Defendants.                 **A CLAIM**

15                                        (Assigned to the Hon. Connie Contes)

16

17
         Plaintiff Will Graven's 45-page over-length response to the State's motion to dismiss
18
    – together with its more than 600 pages of exhibits – completely misses the mark and is
19
    wholly improper in responding to a motion to dismiss. Indeed, for all its length, Graven's
20
    Response never really gets to the heart of the matter, which is this: Graven's complaint was
21
    untimely, and it pleads no valid cause of action.
22
    **I.    The statute of limitations bars Graven's complaint.**
23
         Graven filed this suit on May 20, 2018. As Graven acknowledges, he served his
24
    Notice of Claim relating to this complaint in January 19, *2016*, so his claims had accrued
25
    by that date. Given the one-year statute of limitations for suing the State, A.R.S. § 12-821,
26
    Graven thus had to file this lawsuit no later than January 18, *2017*. He failed to do so – by
27
    a wide margin.
28

*Gallagher & Kennedy, P.A.*
*2575 East Camelback Road*
*Phoenix, Arizona 85016-9225*
*(602) 530-8000*

1  "believed to be well in excess of $638 million...." And as Graven further alleges in ¶ 100,

2  that is "the amount the AGO was seeking to recuperate on my behalf...."

3      Although Graven's current Complaint adds some fact allegations to those in his

4  federal court complaint, the overarching theory is the same. In the State's Motion to Dismiss

5  (at 2), we characterized Graven's theory in his federal court complaint as follows:

6          Graven's Federal Court Action generally alleged that the State
           damaged him by making a discretionary decision not to criminally
7          indict a local law firm [Snell & Wilmer] and three of its partners.

8  Significantly, Graven's Response (at 3) admits that the above is a "fairly accurate

9  description" of his federal court lawsuit.

10     Graven tries to distinguish his legal theory in the current Complaint by saying (at 3)

11 that his claim here is that some "Snell suspects" were approved for charging, but the State

12 then "surreptitiously exonerated" the Snell lawyers so they were never indicted.

13 Presumably, Graven is suggesting that he now has evidence that the State "acted badly" in

14 deciding not to pursue the Snell & Wilmer suspects.

15     But that allegation, even if true, doesn't change anything, for at least four reasons.

16     First, as discussed in our Motion to Dismiss, the case law makes clear that

17 prosecutors have absolute immunity for decisions as to whether or not to initiate a

18 prosecution, bad motives or not, and Graven's Response cites no case to the contrary.[3]

19     Second, even assuming the prosecutors had "bad" motives in deciding *not* to

20 prosecute the Snell & Wilmer lawyers, that wouldn't somehow give *Graven* a cause of

21 action against the state. To paraphrase the decision of the federal court judge in dismissing

22 Graven's federal lawsuit, Graven cites to no legal authority that allows him to bring a claim

23 against state officials for their failure – even if it's a wrongful failure – to criminally

24 prosecute people who Graven believes should be prosecuted. No such claim exists.

25     Third, the State's alleged failure to criminally prosecute the Snell lawyers could not

26 violate Graven's right to "due process." The 14th Amendment to the United States

27

28 [3] *Marshal v. Jerrico,* 446 U.S. 238 (1980), which Graven cites at page 38 of his Response,
deals with the actions of administrative agencies and has no bearing on the issue.

4

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

---

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 22

1   Kevin E. O'Malley (Bar No. 006420)
    Mark C. Dangerfield (Bar No. 010832)
2   GALLAGHER & KENNEDY, P.A.
    2575 East Camelback Road
3   Phoenix, Arizona 85016-9225
    Telephone:   (602) 530-8000
4   Facsimile:   (602) 530-8500
    kevin.omalley@gknet.com
5   mark.dangerfield@gknet.com
    *Attorneys for Defendant State of Arizona and*
6   *Attorney General Mark Brnovich*

7               **SUPERIOR COURT OF THE STATE OF ARIZONA**

8                        **COUNTY OF MARICOPA**

9
    IN RE WILL GRAVEN,                    No. CV2018-007856
10
                    Plaintiff,
11                                        **DEFENDANTS' RESPONSE TO**
    v.                                    **PLAINTIFF'S MOTION FOR**
12                                        **RECONSIDERATION**
    STATE OF ARIZONA; ATTORNEY
13  GENERAL MARK BRNOVICH,
                                          (Assigned to the Hon. Connie Contes)
14                  Defendants.

15

16          The Court's 4/19/19 minute entry correctly granted the Defendants' motion to

17  dismiss, both because Plaintiff's Complaint failed to plead a valid cause of action against

18  the State of Arizona and Attorney General Brnovich (collectively, the "State"), and because

19  the Complaint was untimely. As to the "failed to plead a valid cause of action" prong of the

20  Court's ruling, Plaintiff says the Court was simply "confused" about the nature of his claim.

21  As to the "untimeliness" prong of the Court's ruling, Plaintiff argues that the State's

22  employees "withheld records" from him, by virtue of which the Court "should readily be

23  able to declare tolling of the statute of limitation." *Id.* at 2.

24          In fact, though, the Court's understanding of Plaintiff's Complaint was not at all

25  confused. Indeed, Plaintiff's argument that this Court misunderstood his claim is the same

26  tune he sung when the federal court dismissed his similar federal court complaint. As

27  Plaintiff then said about the federal court: "The Court misunderstood the content and even

28  intent of my Complaint....My complaint was not '...to bring a state law claim against state

7320255v1/568-0184

1    Mark Brnovich went on a rampage to protect" Snell. *Id.* at 2 (emphasis in original).

2          The major distinction between Plaintiff's 2016 federal court motion for

3    reconsideration and his current motion for reconsideration is that Attorney General

4    Brnovich was the alleged "conflict-laden" employee in the 2016 version of the motion,

5    while Plaintiff's current motion alleges Assistant Attorney General Ahler to be the

6    conflicted employee. But that distinction doesn't make Plaintiff's basic claim any different

7    here. Indeed, as Plaintiff himself asserted in this very case: "The present Complaint is

8    merely my Federal Complaint being refiled in Arizona State Court." *See* 6/25/18 "Proof of

9    Service of Complaint/Motion for Approval of Substitute Effective Service." at p. 4.

10         In dismissing Plaintiff's federal court suit, Judge Snow characterized Plaintiff's

11   complaint as alleging that "Defendants' refusal to seek criminal indictments against third

12   persons constitutes a violation of his rights under the Fifth and Fourteenth Amendments to

13   the United States Constitution," and also constituted "state law torts of selective

14   prosecution, selective enforcement, prosecutorial misconduct, conspiracy to commit

15   prosecutorial misconduct, and abuse of prosecutorial discretion." 9/22/16 Order at 1,

16   attached as **Exhibit** 7. These are the same type of claims Plaintiff asserts here.

17         Judge Snow also found – just as did this Court – that Plaintiff had cited no authority

18   "that suggests that he has a federal right to have third parties criminally prosecuted by state

19   officials," or that "would allow him to bring a state law claim against state officials for their

20   failure to criminally prosecute third persons he believes should be prosecuted." *Id.* at 3.

21         **C.    It is well-settled that prosecutors have absolute immunity in deciding
22             whether or not to initiate a prosecution, <u>regardless of their motives</u>.**

23         Long-settled case law makes clear that prosecutors have absolute immunity in

24   deciding whether or not to initiate a prosecution, bad motives or not, and Plaintiff has never

25   cited a case to the contrary. Indeed, it is hornbook law that "criminal prosecutors may claim

26   absolute immunity from damages liability for actions 'intimately associated with the

27   judicial phase of the criminal process,' such as the prosecutor's initiation of a prosecution

28   and presentation of the state's case." *Torres v. Goddard,* 793 F.3d 1046, 1051 (9th Cir. 2015

                                                  5

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

---

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 23

# Plaintiff Will Graven's Complaint
## Case No.:  CV2019-_____
## Filed June 28, 2019
## Assigned for all practical purposes to the Honorable

---

*Will Graven,*
Plaintiff,

*v.*

*State of Arizona,*
Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 23

**Note:** The Conform Stamp on this Exhibit/pleading is very light, but it is there. This pleading was filed with the Clerk of Court for Maricopa County on 6/7/19.

William "Will" A. Graven, In Pro Per
2700 S. Woodlands Village Blvd; Suite 300-251
Flagstaff, Arizona 86001

## IN SUPERIOR COURT FOR THE STATE OF ARIZONA; COUNTY OF MARICOPA

| | |
|---|---|
| In Re: Will Graven, Plaintiff, | ) Case No.: **CV2018-007856** |
| | ) Case Filed: May 30, 2018 |
| v. | ) Assigned to the Honorable: **Judge Connie Contes** |
| | ) |
| State of Arizona; Department of the Attorney | ) |
| General for the State of Arizona; and AG Mark | ) **PLNTFF'S RPLY TO DEFS' RSPNSE TO MY** |
| Brnovich. Defendants. Defendants. | ) **NOTICE OF THEIR EXTREME FRAUD** |

## I. INTRODUCTION2

This Case turns on the Court taking a legal stand on a single issue, from which all else will then follow:

*Does this Court approve of, or not, the Defendants' argument/defense that they are above the law?*

Defendants have repeatedly claimed they are above the law, and that they are thereby excused for

committing criminal acts against me. Acts which caused me to lose the justice and restitution I had been

receiving, and was yet to receive. As recent examples of Defendants' repeated claims (Defs' Rspns to my Mtn

for Relief Due to Court Error for not Granting my Mtn for Summary Judgment, pg 4, lns 22-24 [5/20/19]):

"In addition, Plaintiff lacks standing to bring his claims because he has not pled and cannot
prove that the alleged actions of the AGO – **even if they were criminal** – (Bold underline by Plaintiff.)

Another example would be in their Response to my Motion for Reconsideration (pg 5, lns 21/22 [5/7/19]):

**"C. It is well-settled that prosecutors have absolute immunity in deciding
whether or not to initiate a prosecution, *regardless of their motives*.**" (Italics by Plaintiff.)

Defendants believe they are above the law, so can commit criminal acts against me, or anyone, apparently.

*Defendants using this unsupportable defense makes it clear they have been caught "red-handed."*

## II. DEFENDANTS' FRAUDULENT ATTEMPTS TO CLAIM "PROSECUTORIAL DISCRETION"

Defendants have led their effort by giving citations for prosecutorial discretion. But none, of course,

support criminal acts. And AGO records make clear they did commit these acts (see a review as **Ex 1**, page 2).

*Prosecutorial discretion approved charging the Snell Parties during the Tom Horne Administration;*

criminal acts were used by Defendants to exonerate the Snell Parties shortly after Mark Brnovich became

Attorney General. ***These criminal acts are the documented origin of my Case, standing, and injuries*** (Ex 1).

Our Arizona Supreme Court disagrees with their ludicrous "defense" to justify committing criminal

conflict of interest; facilitation; et al (**Ex 1**). From *State v. Murphy* 113 Ariz. 416 (1976) 555 P.2d 1110:

"Generally, the courts have no power to interfere with the discretion of the prosecutor **unless he is acting
illegally or in excess of his powers**." (Bold underline by Plaintiff.)

As does our US Supreme Court disagree, such as in *Marshall v. Jerrico*, 446 U.S. 238, 248-50 (1980):

1

"The "traditions of prosecutorial discretion do not immunize from judicial scrutiny cases in which enforcement decisions of an administrator were motivated by improper factors or were otherwise contrary to law." Id. at 249." (Bold underline by Plaintiff.)

And from Arizona Governor Doug Ducey, in an Executive Order signed on 7/20/18:

"Politicians are NOT above the law. Everyone should know that, and the Arizona Constitution is clear-"

Following Gov/ Ducey signing his Executive Order, he took to Twitter and stated:

"This morning I signed an Executive Order making it clear: No one has immunity from breaking our laws-"

I would have thought that the recent and overwhelming press coverage and public discussion of "no one is [being] above the law," regarding allegations against our President, would have reminded the Defendants that no one, not even the President of the United States, is above the law. The President is being accused of obstructing justice, which the Defendants also did (and obstructing prosecution), per AGO records.

## II. REGARDING THE DEFENDANTS' "DECISION" NOT TO CHARGE THE SNELL SUSPECTS

Defendants' attempt to defend themselves in this Case by claiming they simply decided not to charge the Snell Party suspects by using prosecutorial discretion. Noting again, per above, prosecutorial discretion was used to approve charging during the Horne Administration (this is also made clear by AGO records).

But, for the Court's consideration: If the Defendants legitimately used "prosecutorial discretion" to not charge the Snell Party suspects (as they claim), why did they use surreptitious (from behind the fraud scheme of a legally required Screen) criminal acts to "un-approve" charging the Snell Party suspects?

*Asked somewhat differently: Why weren't Defendants' acts to un-approve charging the Snell Suspects above-board, and legal, and not based on a series of criminal acts, led by (Screened) Paul Ahler?*

Defendants committed multiple criminal acts for sport? Of course not...they committed these criminal acts to quietly exonerate the Snell Party suspects that had been approved for charging by AG Tom Horne.

*Criminal acts do not, and cannot, create/constitute/be aggregated to be called, a legal decision, such as prosecutorial discretion. Prosecutorial discretion cannot be used to justify criminal acts.*

## III. WHAT FOLLOWS THE COURT'S TAKING A STAND ON THIS ISSUE OF WHETHER OR NOT THE DEFENDANTS BEING ABOVE THE LAW

As the Court cannot accept Defendants' claim they are above the law, I will express in the affirmative what will follow this Court taking its legally required stand regarding the Defendants not being above the law:

1.) my standing for this action is validated
2.) my causes of action are validated
3.) my injuries are validated
4.) as the Defendants withheld records post/to cover their criminal acts, Tolling is validated

So, once again, this Court needs to take a stand, making it clear the Defendants are not above the law.

2

# Plaintiff Will Graven's Complaint

Case No.:  CV2019-_____

Filed June 28, 2019

Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 24

Clerk of the Superior Court
*** Electronically Filed ***
04/23/2019 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2018-007856                                      04/19/2019


                                                CLERK OF THE COURT
HONORABLE CONNIE CONTES                               A. Durda
                                                      Deputy


WILL GRAVEN                          WILL GRAVEN
                                     2700 S WOODLANDS VILLAGE BLVD
                                     STE 300-251
                                     FLAGSTAFF AZ  86001

v.

STATE OF ARIZONA, et al.             KEVIN E O'MALLEY


                                     MARK C DANGERFIELD
                                     JUDGE CONTES


**MINUTE ENTRY**

On February 22, 2019, at the conclusion of oral argument, the court took under advisement the ruling on the Motion to Dismiss for Failure to State a Claim under Ariz. R. Civ. P. 12(b)(6), filed August 28, 2018 on behalf of State of Arizona and Attorney General Mark Brnovich (State). The court has read and considered:

- The State's Motion to Dismiss and exhibits thereto;
- Plaintiff Will Graven's response and exhibits thereto filed January 7, 2019; and
- The State's reply and exhibits thereto filed January 14, 2019.

The State seeks dismissal of this civil action, arguing that plaintiff's complaint fails to plead a valid cause of action against the State and is untimely. The gravamen of plaintiff's claim is that the State harmed plaintiff by failing or refusing to indict a law firm and four of its lawyers

Docket Code 926                    Form V000A                    Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2018-007856                                        04/19/2019

based upon familial and political motivations, violating plaintiff's constitutional due process rights, Arizona laws regarding conflicts of interest, and prosecutorial discretion.

Plaintiff contends in his response and at oral argument that his claim is about old-fashioned fraud and corruption and conspiracy by state officials in failing and refusing to prosecute relatives and cronies for criminal wrongdoing, which has stolen from him justice and restitution.

The court finds that, as a matter of law, plaintiff's complaint fails to plead a legally-valid basis for a cognizable cause of action against the State and its official. No legal authority has been cited that would allow plaintiff to pursue his complaint against the State and its official for the failure to criminally prosecute third persons whom he believes should have faced prosecution. Even if plaintiff's complaint stated a legally-valid cause of action against the State, such a claim is untimely by the 180-day Notice of Claim statute as well as the one-year statute of limitations for bringing an action against the State or its official. No legal authority has been cited for the tolling of these statutes, as plaintiff requests.

IT IS THEREFORE ORDERED granting the State's Motion to Dismiss for Failure to State a Claim.

IT IS FURTHER ORDERED dismissing plaintiff's complaint, filed May 30, 2018.

 By this ruling, the court has applied existing law, which the court is bound to follow. The ruling does not constitute an expression of opinion by this court as to the substance of the underlying factual circumstances framed by plaintiff.

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 25

Clerk of the Superior Court
*** Electronically Filed ***
06/13/2019 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2018-007856                                    06/12/2019

                                                  CLERK OF THE COURT
HONORABLE CONNIE CONTES                              S. Perez
                                                     Deputy

WILL GRAVEN                                  WILL GRAVEN
                                             2700 S WOODLANDS VILLAGE BLVD
                                             STE 300-251
                                             FLAGSTAFF AZ  86001

v.

STATE OF ARIZONA, et al.                     KEVIN E O'MALLEY

                                             JUDGE CONTES

**MINUTE ENTRY**

In connection with the matters set forth below, the court issues the following rulings.

**I.**

The court has read and considered plaintiff's *Motion for Reconsideration* (filed Apr. 23, 2019), which seeks reconsideration of the court's April 19, 2019 order granting the State of Arizona and Attorney General Mark Brnovich's (collectively, "the State") motion to dismiss, and the State's response (filed May 7, 2019). Having reviewed the foregoing,

IT IS ORDERED denying plaintiff's Motion for Reconsideration.

IT IS FURTHER ORDERED denying as moot the State's *Motion to Strike Plaintiff's Unauthorized Reply re Motion for Reconsideration* (filed May 17, 2019). Plaintiff's reply to his motion for reconsideration (filed May 14, 2019) was not authorized by Arizona Rule of Civil Procedure 7.1(e)(2) and, on that basis, the court did not read or consider it.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2018-007856                                        06/12/2019

## II.

The court has read and considered plaintiff's *Rule 60 Motion for Relief Due to Court Error* (filed Apr. 26, 2019), the State's response (filed May 10, 2019), and plaintiff's reply (filed May 17, 2019). The court has also read and considered plaintiff's *Rule 60 Motion for Relief Due to Court Error in Denying My Motion for Summary Judgment and My Motion for a Combined Rule 55(d) Judgment Against the State and a "the Full Amount of Damages" Hearing* (filed May 1, 2019), the State's response (filed May 20, 2019), and plaintiff's reply (filed May 24, 2019).

Rule 60(b) (formerly Rule 60(c)) "is primarily intended to allow relief from judgments that, although perhaps legally faultless, are unjust because of extraordinary circumstances that cannot be remedied by legal review." *Hyman v. Arden-Mayfair, Inc.,* 150 Ariz. 444, 446 (App. 1986) (quoting *Tippit v. Lahr,* 132 Ariz. 406, 409 (App. 1982)). The court has broad discretion in deciding issues under Rule 60(b). *Woodbridge Structured Funding, LLC v. Ariz. Lottery,* 235 Ariz. 25, 29, ¶ 21 (App. 2014). In the exercise of that discretion, having reviewed the foregoing,

IT IS ORDERED denying both Rule 60 motions.

In connection therewith, the court also read and considered plaintiff's *Notice of Extreme Fraud by Defendants in Their Response to My Motion for Relief Due to Court Error for Not Granting My Motion for Summary Judgment* (filed May 24, 2019), the State's response (filed June 4, 2019), and plaintiff's reply (filed June 7, 2019).

The "extreme fraud" pointed out by plaintiff relates to the State's argument, in response to one of the Rule 60 motions, that plaintiff lacks standing to bring an equal protection claim. Because the issue of standing was not briefed or argued in connection with the State's motion to dismiss, the court did not consider it in denying plaintiff's post-dismissal motions. On this basis,

IT IS ORDERED taking no action on plaintiff's notice as moot.

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 26

**Will Graven**
**2700 S. Woodlands Village Blvd.**
**Suite 300-241**
**Flagstaff, AZ 86001**
**Mobile Phone: 928-890-8825**
**Email: will@willgraven.com**

# Notice of Claim

State of Arizona; and                                             January 19, 2016
Office of the Attorney General for the State of Arizona; and
Mark Brnovich, in his official capacity, and individually; and
Mike Bailey, in his official capacity, and individually; and
Don Conrad, in his former official capacity, and individually;
Paul Ahler, in his official capacity, and individually; and
Joe Waters, in his official capacity, and individually

Served to the office, and residential addresses, as appropriate.

Re: A Notice of Claim against the State of Arizona, the Office of the Attorney General,
and the named individuals, both in their official or former official capacities, and as
individuals, for various civil and criminal acts and the liability created therefrom

Ladies and gentlemen:

I am a victim of a number of criminal acts by former employees and interrelated
parties.

I have been the victim of a number of criminal investigations by a number of Special
Agents and Prosecutors of the Attorney General's Office, for more than four years.

My Special Agent Investigators and Prosecutors were on the ½ yard line of a
number from cases of this four years plus effort, the culmination of which would
have resulted in the indictment, prosecution, and realization of substantial sums of
money to me.

However, Attorney General Brnovich, both in his capacity as Attorney General, and
as an individual, determined that my lead Special Agent had backed the AG and his
executive team (as named above) into a corner, with an investigation, and
presentation of that investigation, that made it impossible to avoid indicting certain
very powerful attorneys and their law firm.

Attorney General Brnovich then directed then Chief of Special Prosecutions Don
Conrad to make it (the being backed into a corner) go away.

1

Don Conrad then enlisted his Assistant Chief, Paul Ahler (whose son works at the powerful law firm), and Paul Ahler enlisted his right hand man, Joe Waters.

The above parties, the above State entities, and the above individual in their official capacities, and as individuals, proceeded to commit a number of acts that have ended the four year plus quest for justice, by my lead Special Agent, other Special Agents, Prosecutors, and others, including myself.

The acts that the above parties committed as entities and offices or departments singularly and in concert with one another, and the above named individuals, individually and in concert with one another, include, but are not limited to the following;

- Prosecutorial Misconduct, noting Selective Prosecution based upon a profession, and a political party, amongst other, thereby violating the 5th and 14th Amendments to the United States Constitution, resulting in my not receiving Due Process and/or Equal Protection
- Conflict(s) of Interest
- Abuse of Prosecutorial Discretion
- Abuse(s) of Process
- Abuse(s) of Power
- Intimidation
- Bribery through "trading favors"
- Prosecutorial Corruption
- Withholding Public Records Requests
- Public Corruption
- Noting, all of the above were done intending to injure me, if not "put me in my place"

As a result of the above acts by the above parties, I hereby demand payment of $1.9 billion dollars (which is the amount of my personal financial statement at the time certain criminal defendants and should-have-been criminal defendants brought my businesses to their knees…times 3…as the criminal acts were inherently committed with an evil mind, treble damages apply). This is the amount I will not be receiving as a result of the above described acts by the above parties.

If I have not received payment within 60 days of service of this Notice of Claim, I will file a civil complaint(s) against each and everyone of the above entities and individual parties, for $1.9 billion, plus pre and post judgment interest, and other amounts as allowed by law.

Should you have any questions, or comments, or wish to meet to discuss this matter, I am available to meet in good faith in an attempt to settle amicably.

Sincerely,

Will Graven

2

# Plaintiff Will Graven's Complaint

Case No.:  CV2019-_____

Filed June 28, 2019

Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 27

## CERTIFICATE OF DELIVERY

The undersigned certifies I executed delivery of the below documents as stated below:

<u>Documents Delivered:</u> **Notice of Claim**

<u>Delivery Upon:</u> **State of Arizona**

Date of Delivery: 1/19/2016   Time Of Delivery: 9:10 am

**Address of Delivery:** 1275 W Washington Phoenix Az 85007

**Manner of Delivery:**

☐ By Delivering to _____ in person.

☐ Substitute, by delivering to _____, a person of suitable age & discretion who resides with _____ at the address of delivery.

☒ By personally delivering to Lisa Fisher who holds the position of Receptionist .

☐ Other , As Detailed Below.

☐ Unable to deliver for the Reasons Detailed Below.

_____

_____

_____

I certify under penalty of perjury that the foregoing is true and correct.

X _____
Declarant: Print Name  Hai Tang

Executed on  1/22/16
(480) 314-5050

| Service: | $67.50 |
|---|---|
| Mileage: | $ |
| Locate: | $ |
| Other: | $ |
| Total: | $ 67.50 |

## CERTIFICATE OF DELIVERY

The undersigned certifies I executed delivery of the below documents as stated below:

<u>Documents Delivered:</u> **Notice of Claim**

<u>Delivery Upon:</u> **Office of the Attorney General for the State of Arizona**

Date of Delivery: _1/19/16_   Time Of Delivery: _9_ : _41_

Address of Delivery: _1275 W. Washington St. Phoenix AZ 85007_

**Manner of Delivery:**

☐ By Delivering to _____ in person.

☐ Substitute, by delivering to _____, a person of suitable age & discretion who resides with _____ at the address of delivery.

☒ By personally delivering to _Lisa Fisher_ who holds the position of _Receptionist_.

☐ Other , As Detailed Below.

☐ Unable to deliver for the Reasons Detailed Below.

_____
_____
_____

I certify under penalty of perjury that the foregoing is true and correct.

x _[signature]_
Declarant: Print Name _Arie Lara_

**Executed on** _1/19/16_
(480) 314-5050

| Service: | $ 67.50 |
|---|---|
| Mileage: | $ — |
| Locate: | $ — |
| Other: | $ — |
| Total: | $ 67.50 |

# Plaintiff Will Graven's Complaint

Case No.:  CV2019-_____

Filed June 28, 2019

Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 28



Douglas A. Ducey
Governor

Craig C. Brown
Director

## ARIZONA DEPARTMENT OF ADMINISTRATION

RISK MANAGEMENT DIVISION
Property, Liability and Insurance Section
100 NORTH FIFTEENTH AVENUE • SUITE 301
PHOENIX, ARIZONA 85007
(602) 542-2180

January 29, 2016

Mr. Will Graven
2700 South Woodlands Village Blvd, Suite 300-241
Flagstaff, AZ 86001

RE:     Our Claim Number:          G01601015
        Incident Date:             Not Provided

We are writing to acknowledge your correspondence dated January 19, 2016. Please be advised it has been referred to the Department of Administration's Risk Management Section and assigned to adjuster Scott Reid, his telephone number is 602-692-0102.

If you have any additional supporting documentation to provide you may either email it to plexistingclaims@azdoa.gov with our claim number in the subject line, or mail the documentation to Arizona Department of Administration, Risk Management Division, 100 North Fifteenth Avenue, Suite 301, Phoenix, Arizona, 85007. Be sure to reference our claim number on your correspondence.

By acknowledging your correspondence, we expressly do not waive, nor do we intend to waive, any defenses the State may have under A.R.S. 12-821.01, nor are we acknowledging that your correspondence meets all requirements of the statute.

Sincerely,

Risk Management Division
Phone # (602) 542-2180

Document1

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 29



Douglas A. Ducey
Governor

Craig C. Brown
Director

## ARIZONA DEPARTMENT OF ADMINISTRATION

RISK MANAGEMENT DIVISION
Property, Liability and Insurance Section
100 NORTH FIFTEENTH AVENUE • SUITE 301
PHOENIX, ARIZONA 85007

(602) 542-2180

March 2, 2016

Mr. Will Graven
2700 South Woodlands Village Blvd. Suite 300-241
Flagstaff, AZ 86001

RE:   Our File Number:    G201601015
      Claimant:           Mr. Will Graven
      Date of Loss:       Not Provided

Dear Mr. Graven,

We have completed our investigation into your claim. After carefully reviewing all available facts, we believe The State of Arizona is not legally responsible for this incident; therefore, we respectfully deny your claim against The State of Arizona.

Sincerely,

Scott Reid
Senior Adjuster, Property & Liability Section
ADOA - Risk Management Division, State of Arizona
100 North 15th Avenue, Suite 301, Phoenix, AZ 85007
602 542-5292, Fax 602 382-2309
Scott.Reid@azdoa.gov

# Plaintiff Will Graven's Complaint

## Case No.:  CV2019-_____

### Filed June 28, 2019

Assigned for all practical purposes to the Honorable

_____

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 30

# Plaintiff Will Graven's Complaint
## Case No.:  CV2019-_____
## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

_____

*Will Graven,*
Plaintiff,
*v.*
*State of Arizona,*
Defendants,
in
United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 30

<u>Note</u>: I have but one copy of my Personal Financial Statement from relevant times, and so am not submitting it with this Complaint, but rather, have included two photos of my PFS. However, when it is time to review damages, I will, of course, make it available to the Court.

Will Graven

Personal

Financial

Statement

as of

11-30-06