```
_____ RECEIVED    _____ COPY

        SEP 0 3 2019

CLERK U S DISTRICT COURT
   DISTRICT OF ARIZONA
BY_____ᴧᴧᴧᴧ___DEPUTY
```

William "Will" A. Graven, In Pro Se
2700 S. Woodlands Village Blvd. Suite 300-251
Flagstaff, Arizona 86001

### IN UNITED STATES DISTRICT COURT, DISTRICT OF ARIZONA, PHOENIX DIVISION

| | |
|---|---|
| In Re: Will Graven, | ) Case No.: <u>2:19-cv-04586</u> |
| Plaintiff, | ) Case Filed: <u>June 28, 2019</u> |
| v. | ) <u>Honorable Judge Steven P Logan</u> |
| | ) PLAINTIFF'S MOTION FOR A JUDGMENT |
| State of Arizona, | ) ON THE PLEADINGS FROM THIS CASE, |
| <u>                    Defendants.</u> | ) <u>AND RELATED CASES</u> |

### I. MY STATE HAS HAD/HAS NO DEFENSE, EXCEPT CONCEALING RECORDS; LYING; AND REFUSING TO CONFRONT THEIR ACTS, SINCE MY FIRST CASE HERE, ALMOST 3 ½ YEARS AGO

When I filed my first Complaint here on 4/27/16, AGO Defendants were denying my Crime Victim's Rights; refusing Public Records Requests from all parties; and they had threatened who would have been my two "star" witnesses, to prevent them from testifying (the two former lead AGO Agents on my Cases). Defendants did these things because they knew what they had done: they had committed a series of criminal acts as they exonerated the Snell Parties, and then sought to cover their tracks by more criminal acts, as seen in AGO records I now have.

When I filed my Complaint here on 4/27/16, I had only very limited records (4 of 15 AGO records now used), and so could only allege what I thought had happened; the result was that my first Complaint here was dismissed.

The State could have then come-clean, but instead, they concealed what they had done, and lied to this Court.

I continued seeking additional AGO records by using Alternate Sources, which the AGO later responded to.

Several months after that dismissal, I obtained AGO records which added pieces to the puzzle of what I alleged had gone on behind the Screen of Chief Prosecutor Paul Ahler, and others, and so I filed a Motion for Relief.

This was another opportunity for the State to come-clean, and admit what Ahler, and others, had done to me.

But they doubled-down, and continued to conceal the remaining records that contained the truth, and their efforts went deeper into the abyss, including multiple frauds on this Court (Rspns to Defs' Mtn to Dsmss, Sec 1A).

This was my State cheating me...my State, who is guided, and required, by a number of mandates (e.g., the Az Agency Handbook), to treat all Arizona Citizens fairly, including, they cannot violate any US Constitutional Right.

By Defendants yet concealing those last few records I needed, and lying to this Court, my Motion was denied.

I then filed an Appeal, where Defendants continued to conceal those records, and they lied to that Court as well.

I later obtained those last records, confirming what I alleged 2 years earlier, and so filed anew in State Court.

With the puzzle complete, the State had another opportunity to come-clean...but, they relied on being able to influence, if not control their home-Court. So they created a series of incredulous, and obvious, frauds on that Court.

Defendants have consciously chosen, time and again, since 4/27/16, to continue injuring me.

William "Will" A. Graven, In Pro Se
2700 S. Woodlands Village Blvd. Suite 300-251
Flagstaff, Arizona 86001

## IN UNITED STATES DISTRICT COURT, DISTRICT OF ARIZONA, PHOENIX DIVISION

| | |
|---|---|
| In Re: Will Graven, | ) Case No.: 2:19-cv-04586 |
| Plaintiff, | ) Case Filed: June 28, 2019 |
| v. | ) Honorable Judge Steven P Logan |
| | ) PLAINTIFF'S MOTION FOR A JUDGMENT |
| State of Arizona, | ) ON THE PLEADINGS FROM THIS CASE, |
| Defendants. | ) AND RELATED CASES |

## I. MY STATE HAS HAD/HAS NO DEFENSE, EXCEPT CONCEALING RECORDS; LYING; AND REFUSING TO CONFRONT THEIR ACTS, SINCE MY FIRST CASE HERE, ALMOST 3 ½ YEARS AGO

When I filed my first Complaint here on 4/27/16, AGO Defendants were denying my Crime Victim's Rights; refusing Public Records Requests from all parties; and they had threatened who would have been my two "star" witnesses, to prevent them from testifying (the two former lead AGO Agents on my Cases). Defendants did these things because they knew what they had done: they had committed a series of criminal acts as they exonerated the Snell Parties, and then sought to cover their tracks by more criminal acts, as seen in AGO records I now have.

When I filed my Complaint here on 4/27/16, I had only very limited records (4 of 15 AGO records now used), and so could only allege what I thought had happened; the result was that my first Complaint here was dismissed.

The State could have then come-clean, but instead, they concealed what they had done, and lied to this Court.

I continued seeking additional AGO records by using Alternate Sources, which the AGO later responded to.

Several months after that dismissal, I obtained AGO records which added pieces to the puzzle of what I alleged had gone on behind the Screen of Chief Prosecutor Paul Ahler, and others, and so I filed a Motion for Relief.

This was another opportunity for the State to come-clean, and admit what Ahler, and others, had done to me.

But they doubled-down, and continued to conceal the remaining records that contained the truth, and their efforts went deeper into the abyss, including multiple frauds on this Court (Rspns to Defs' Mtn to Dsmss, Sec 1A).

This was my State cheating me...my State, who is guided, and required, by a number of mandates (e.g., the Az Agency Handbook), to treat all Arizona Citizens fairly, including, they cannot violate any US Constitutional Right.

By Defendants yet concealing those last few records I needed, and lying to this Court, my Motion was denied.

I then filed an Appeal, where Defendants continued to conceal those records, and they lied to that Court as well.

I later obtained those last records, confirming what I alleged 2 years earlier, and so filed anew in State Court.

With the puzzle complete, the State had another opportunity to come-clean...but, they relied on being able to influence, if not control their home-Court. So they created a series of incredulous, and obvious, frauds on that Court.

Defendants have consciously chosen, time and again, since 4/27/16, to continue injuring me.

1

## II. THE COMPLETED PICTURE: DEFENDANTS COMMITTED DOCUMENTED CRIMINAL ACTS

The picture of the puzzle is that Defendants committed criminal acts as they exonerated the already-approved for Charging Snell Parties (I had none of the below withheld Exhibits when I filed my Complaint here on 4/27/16):

1.) Ahler gave Notice regarding his conflict of interest (Cmplnt Par 17, Ex 6 at Ref 1; by 4/27/15)
2.) Conrad Screened Ahler (Cmplnt Par's 18-23, Ex 6 at Ref 3; 4/27/15)
3.) Ahler took part in completing and signing the Snell Case (and others) Charging Form (Cmplnt Par's 24-27, Ex 7 at Ref 1; 7/16/15). There was no reason for Ahler to break the law committing criminal conflict of interest, ARS 38-510, and more, by taking part in completing this Form, except to remove the Snell Parties' names.
4.) Conrad enabled Ahler to do these things; so Criminal Facilitation, and more (Cmplnt Par's 28-45, Ex 7 at Ref 2)
5.) Four other AGO Officials assisted Ahler and Conrad (Cmplnt Par 46, Ex's 9-15), committing even more crimes

***Defendants knew of all of their acts when I filed my Complaint here on 4/27/16...but they concealed these records, and the acts in them, and they lied to this Court about the truth they were hiding.***

## III. MY STATE HAS CONCEALED RECORDS AND LIED TO THIS COURT FOR 3 ½ YEARS

In my first Complaint, Defendants' Motion to Dismiss started with lies that they have continued with, and built on, creating a paradigm (e.g., quoting Judge Snow, which see) to mislead Justice (Ex 1 here, pg 2, lns 4-7):

"The gist of the Complaint is the accusation that the state violated Plaintiff's Constitutional rights by failing to exercise its discretion to seek an indictment of a law firm and a few of its lawyers. But such a claim is frivolous on its face: no federal cause of action exists for such."

*My* Complaint is about what AGO records undeniably document: the *State committed criminal acts as they exonerated the already approved-for-charging Snell Parties, which includes Supporting Acts* (Cmplnt Sec II-H).

***Defendants do actually know what my Complaint is about*** (Rspns to Defs' Mtn to Dsmss, Sec 1-B).

## IV. SEEKING TO OBTAIN ADDITIONAL AGO RECORDS

As described earlier on page 1, after the dismissal of my first Complaint here, I continued seeking to obtain additional AGO records that I thought would further support my suspicions and the allegations of my Complaint.

When I obtained more records, I filed a Motion for Relief here. I was then getting close to, and being able to show, the complete picture of the puzzle. Defendants should have come-clean. Instead, they began to seriously commit fraud on this Court, in part, by lying about 3 of the AGO records I had obtained (3 important AGO Forms).

Defendants filed a Response in Opposition (Ex 2 here) to my Motion for Relief, and began what I will later call the "Three Forms Fraud" (pg 3, lns 7-20).

I mentioned the Three Forms Fraud in Sec I Introduction to my Combined Response and Motion to Strike Defendants Motion to Dismiss, as Fraud number 5, and further explained it in Sec I-C.

With the denying of my Motion for Relief, I filed an Appeal with the Ninth Circuit as I thought the additional new records I then had obtained filled in enough pieces of the puzzle to see what had happened.

Defendants continued there to withhold records, conceal the truth, and use frauds (e.g., Ex 3 here, pgs 1/2/3).

2

## V. THE PICTURE OF THE PUZZLE BECOMES COMPLETE

Once I did finally obtain the few more AGO records I needed to complete the puzzle and recognize what the picture was, I then filed a new Complaint, in Arizona State Court.

As mentioned earlier, with those last several records (including Cmplnt Ex's 6/7; and 9-15), the puzzle was complete, and so the picture was easily seen: AGO Defendants had committed multiple criminal acts as they exonerated the Snell Parties, and then committed related Supporting Acts to cover their tracks.

The State had another opportunity to come-clean...but instead, they relied on being able to influence, if not control, their home-Court. So they increased their incredulous, and obvious, frauds (e.g., throughout Ex 4 here).

As described in my Complaint (Sec's IIJ-P) and Combined Response and Motion to Dismiss Defendants' Motion to Dismiss (Sec I-D), the State Court accepted Defendants' criminal acts, and countless frauds on that Court.

And as Defendants' frauds on the Court worked well in their home-Court, they brought them here to use again, with hopes that their being the State; represented by a large law firm; and my being Pro Per, this Court will accept their frauds. See my Combined Response and Motion to Dismiss Defs' Motion to Dismiss, Sec's I-A; I-C and I-D.

## VI. A BRIEF REVIEW OF DEFENDANTS' FRAUDULENT BASIS FOR THEIR DEFENSE

Limiting my review of their continuing and repetitious use of their longstanding frauds, I quote just 2 instances from their Reply to my Response (Lodged 8/15/19) to their Motion to Dismiss (first is pg 2, lns 6-9):

"The FAC also fails to state a claim, for essentially the same reasons that both his 2016 Federal Action and his 2018 State Action failed to state a claim. Graven has no federal or state right to have third parties criminally prosecuted, even if he believes those third parties harmed him." (*Plaintiff: Yes, Defendants claim they are the same, but they are not, at all, the same.*)

And (pg 9, lns 25-28 and top of pg 10):

"In Judge Snow's words, Graven hasn't cited "to any legal authority that suggests that he has a federal right to have third parties criminally prosecuted by state officials," or "any authority that would allow him to bring a state law claim against state officials for their failure to criminally prosecute third persons that he believes should be prosecuted."

## VII. DEFENDANTS' DEFENSE, PART 2: THEY REFUSE TO CONFRONT THEIR CRIMINAL ACTS

Defendants' Reply to my Response (Lodged 8/15/19) to their Motion to Dismiss does not address their documented criminal acts, except to say (Defs' Rply, pg 2 late in ln 17): "While that never happened,..."

***This statement, in light of Ex's 6/7 and 9-15, is a boldface lie.*** I hereby incorporate Complaint Sec's IIB-D; and Rspns to Defs' Mtn to Dsmss, Sec IV, to again include Defendants documented criminal acts.

## VIII. DEFENDANTS CREATED A NEW FRAUD FOR THEIR REPLY TO MY RESPONSE TO THEIR MOTION TO DISMISS

In Defendants' Reply, Sec 5, they commit a new fraud on the Court, claiming that the criminal investigations and prosecutions that I have called "my cases," never were my Cases, and so I have no standing.

I hereby incorporate Sec IV, particularly, Ex's 8-19, of my Reply to their Response to my Motion to Strike .

## IX.  THE FRAUD OF QUOTING JUDGE SNOW FROM ALMOST 3 ½ YEARS AGO

My Complaint here, is about Defendants' criminal acts to exonerate the Snell Parties, and is based on those first 4 exhibits, and 11 more (which also brought perspective to the first 4), that took me more than 2 years to obtain.

Anticipating that Defendants would continue to use the fraud of claiming that my first Complaint here and this one are for the same allegations, I included in my Complaint Section II-I My First Complaint In This Court v. This Complaint; and Sec J My Recent Complaint in State Court.

And I described Defendants' "One in the Same Fraud" as Fraud Number 8 in my Combined Response and Motion to Strike Defendants' Motion to Dismiss, and provided additional detail with Exhibit 8.

Defendants quoting Judge Snow from 3 ½ years ago (e.g., see Sec VI here), is an attempt to bring false credibility to their seeking dismissal here, as the two Complaints are *very* different, *albeit, Defendants have tried their damnedest to make them appear the same*. Quoting Judge Snow this way is nothing less than fraud on this Court.

## X.  MOTION FOR A JUDGMENT ON THE PLEADINGS, FROM THIS CASE, AND RELATED CASES

Defendants *have had/have no defense* except withholding records; threatening witnesses; and when too many records did slip-through (as their criminal acts are so well documented), they resorted to multiple frauds on the Court.

Defendants have filed 3 repetitious pleadings in this Case, using their same longstanding frauds, over and over.

The Court can see Defendants using their same frauds for the fourth time here...as ***they have no other defenses***.

*As Defendants' frauds are not what this Complaint is about, but such claims are the basis of their defenses, their arguments, their "denominator" for dismissal, are meaningless, **except to be recognized as no defense at all***.

There is no reason for this Court to waste its resources to entertain Defendants' ***nonexistent defense***.

Defendants have far surpassed, long ago, the limits of zealous representation for a civil complaint.

I hereby Motion the Court to make a Judgment on the Pleadings, and Grant the return of Justice to me.

## XI.  CONCLUSION

First, my State stole Justice and restitution from me; then, following their being caught in a series of criminal acts, they committed multiple frauds on the Courts. Now, not only have they stolen Justice and restitution, they have stolen almost 3 and ½ years of my life, or 4 ½ years, if we go back to the beginning of their criminal acts.

I thank the Court in advance for its time and efforts in adjudicating the matters herein.

Respectfully submitted this 3rd day of September 2019, by: _____, In Pro Se.

Plaintiff Will Graven

- Original of this Motion was filed the Clerk of District Court this 3rd day of September, 2019.
- Defendants to be Served as required by the Federal Rules of Civil Procedure, or as agreed with Counsel.
- VERIFICATION of the above Motion and referenced Exhibits is on the following page.

**VERIFICATION**

STATE OF ARIZONA      )
                             )ss:
County of Coconino      )

      William A. Graven, being first duly sworn upon his oath avows that he has written and therefore read this Motion, and that the allegations contained therein are true and correct, based upon his personal knowledge, except as to allegations made upon information and belief, and as to such allegations and information, he believes them to be true.

      As well, William A. Graven, being first duly sworn upon his oath avows that he has reviewed all referenced pleadings Exhibits, and swears that each is a true and correct copy of the original, based upon my personal knowledge.

      Should I be called upon to testify under oath for either this Motion, and its contents, or referenced pleadings and Exhibits, I would be able to do so.

DATED this 3rd day of September, 2019.

--------------------------------
William A. "Will" Graven

      Subscribed and sworn to before me, the undersigned Notary Public, this 3rd day of September, 2019, by Will Graven.

_____
Notary Public

My Commission Expires: 3/31/2022

DENISE STABE
Notary Public – Arizona
Coconino County
My Comm. Expires Mar 31, 2022

5

# Plaintiff Will Graven's

# Motion for a Judgment on the Pleadings

## Case No.:  CV2019-04586

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

## Judge Stephen P. Logan

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 1

1   Patrick J. McGroder III (Bar No. 002598)
    Kevin E. O'Malley (Bar No. 006420)
2   Mark C. Dangerfield (Bar No. 010832)
    GALLAGHER & KENNEDY, P.A.
3   2575 East Camelback Road, Suite 1100
    Phoenix, Arizona  85016
4   Telephone:   (602) 530-8000
    Facsimile:   (602) 530-8500
5   E-mails:   pjm@gknet.com
                kevin.omalley@gknet.com
6                mark.dangerfield@gknet.com
7   Attorneys for Defendants State of Arizona,
    Governor Doug Ducey, Department of Arizona
8   Attorney General, Attorney General Mark
    Brnovich, and Assistant Attorney General Michael
9   Bailey

10

11                      UNITED STATES DISTRICT COURT

12                          DISTRICT OF ARIZONA

13   William A. Graven,                    No. CV-16-01249-PHX-GMS

14                  Plaintiff,             **DEFENDANTS' MOTION TO**
                                           **DISMISS FOR LACK OF SUBJECT**
15        v.                               **MATTER JURISDICTION AND FOR**
                                           **FAILURE TO STATE A CLAIM**
16   State of Arizona; Governor Doug Ducey;
     Department of Attorney General for the
17   State of Arizona; Attorney General Mark
     Brnovich; Assistant Attorney General
18   Michael Bailey; (Former) Chief of the
     Criminal Section Donald Conrad;
19   (Current) Chief of the Criminal Section
     Paul Ahler; Assistant Attorney General
20   Joe Waters; State of Arizona employees
     John Doe's I through X and Jane Doe's I
21   through X; and various departments,
     divisions and section of the State of
22   Arizona, I through X,

23                  Defendants.

24

25        Defendants collectively move to dismiss the Complaint in this matter under Fed. R.

26   Civ. P. 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and failure to state a

27   claim.  The Complaint, full of overblown rhetoric and conclusory statements, is defective

28   on multiple levels:  it pleads no valid cause of action, the Plaintiff would lack standing to

*(left margin, rotated)* Gallagher & Kennedy, P. A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

1   bring the claims if there were a valid cause of action, the Defendants have immunity for

2   their discretionary decision not to bring an indictment, and—giving weight only to the

3   well-pleaded facts in the Complaint—it fails to allege a plausible claim for relief.

4        The gist of the Complaint is the accusation that the state violated Plaintiff's

5   Constitutional rights by failing to exercise its discretion to seek an indictment of a law

6   firm and a few of its lawyers.  But such a claim is frivolous on its face: no federal cause of

7   action exists for such.

8        Moreover, this is not the first time Plaintiff has filed a frivolous lawsuit in this

9   Court about an official's alleged failure to take discretionary action.  In 2011, Plaintiff

10  sued President Barack Obama and others, alleging they had failed to take "further steps"

11  to help him obtain redress for alleged injury to his property by Indians.  This Court

12  dismissed that action as "patently frivolous," and the Ninth Circuit affirmed that dismissal

13  in an April 30, 2014 Memorandum, stating that Mr. Graven's complaint "attempts to

14  compel action that is purely discretionary."[1]

15  **I.    FACTUAL BACKGROUND.**

16       Plaintiff alleges that he suffered a "catastrophic business failure" due to what he

17  says was "a pervasive internal criminal enterprise" operated by several of his executives

18  and a minority shareholder.  Cmpl. ¶ 36.  According to a report prepared by then-Interim

19  Chief Special Agent Dan Woods of the Arizona Attorney General's Special Investigations

20  Section, these allegedly fraudulent schemes took place about 10 years ago, between

21  November 2005 and June 2007.  Cmpl. Ex. 6, p. 1.[2]  According to that report, Plaintiff

22  claims the above events caused his companies to lose over $8 million, and also caused his

23  businesses—which Plaintiff said were previously valued at more than $200 million—to

24  fail.  *Id.*

25

26  [1] *See* Ex. 1 and 2, attached.  The Court can take judicial notice of publicly-filed
    documents. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir.2010).

27  [2] Without converting a motion to dismiss into a motion for summary judgment, the Court
    can take judicial notice of materials attached as exhibits to a complaint or necessarily

28  relied on by a complaint. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001).

2

1    In response to these events, Plaintiff "filed 19 separate lawsuits against former

2    employees, attorneys, and officials from the city of Victorville," in most of which he

3    represented himself. Cmpl. Ex. 6, p. 7, ¶ 33. Unhappily for Plaintiff, he lost every single

4    case and, according to Agent Woods' report: "All of Will Graven's cases were eventually

5    dismissed and Will Graven was declared a vexatious litigant." *Id.*

6    On June 13, 2011, Plaintiff then sued the law firm of Snell & Wilmer and three of

7    its attorneys in state court, filing a 41-page complaint with more than 300 pages of

8    exhibits.    The lawsuit alleged that, shortly after May 7, 2007, Plaintiff discovered

9    suspicious e-mail communications between his in-house general counsel, Daniel Esposito,

10   and Snell & Wilmer, that Snell & Wilmer fraudulently concealed those e-mails from him,

11   and that the firm's actions somehow helped bring about the catastrophic loss of Plaintiff's

12   $200 million business.  (Interestingly, Plaintiff now claims his lost business was worth

13   $600,000 million, and seeks $1.9 billion in damages. Cmpl. ¶ 83, p. 13, ¶ 115.)

14   Plaintiff's 2011 lawsuit thus asserted multiple counts against Snell & Wilmer and

15   the three attorneys, alleging negligence, breach of fiduciary duty, conflict of interest,

16   constructive fraud, fraudulent concealment, and conspiracy to commit fraudulent

17   concealment, among others. Cmpl. Ex. 8, p. 41, ¶ 158.

18   In October 2011, however, the superior court dismissed all but two counts of that

19   lawsuit as barred by the statute of limitations (since Plaintiff waited more than four years

20   after learning of the matter to bring suit), but gave Plaintiff leave to amend two of his

21   counts.[3]  Plaintiff never filed an amended complaint, however.

22   Instead—having failed to obtain relief through his civil lawsuits—Mr. Graven on

23   November 3, 2011 sought help from the attorney general's office. Cmpl. ¶ 37. Following

24   an investigation, the attorney general's office eventually "indicted or negotiated pre-

25   

26   [3] *See* Ex. 3 attached.  In February 2014, the Arizona Court of Appeals affirmed dismissal,
     and the Arizona Supreme Court subsequently denied Plaintiff's Petition for Review.

27   Plaintiff then took it one step further: he asked the United States Supreme Court to review
     the matter.  That Court also declined to do so. Cmpl. Ex. 8, p. 45, ¶¶ 193, 199.

28   

3

1   indictment plea agreements, in five criminal cases," against nine of Plaintiff's former

2   employees.  Cmpl. ¶ 43.  In the process, the AG recovered approximately $500,000 in

3   assets for Mr. Graven.  Cmpl. ¶ 83, p. 13.  However, the Attorney General declined to

4   indict Snell & Wilmer or its attorneys, telling Mr. Graven "that what Snell & Wilmer had

5   [sic] did not rise to the level of being criminal."  Cmpl. at 12, ¶ 80.

6       In this suit, he now alleges that the State Attorney General's office—and Attorney

7   General Brnovich in particular—should have, through the Grand Jury, sought an

8   indictment against Snell & Wilmer, the two Snell & Wilmer lawyers he previously sued,

9   and one or two other Snell & Wilmer lawyers.  Cmpl. ¶ 69.  According to Plaintiff's

10  conclusory allegations, the Attorney General refused to seek such an indictment because

11  he wants to "protect certain of his fellow (influential) attorneys, by not indicting them,"

12  Cmpl. ¶ 5, and this has "violated [Plaintiff's] 5th and 14th Amendments Rights to Due

13  Process and Equal Protection."  Cmpl. ¶ 33.

14  **II.   <u>THE COURT LACKS JURISDICTION BECAUSE PLAINTIFF'S</u>**
       **<u>COMPLAINT FAILS TO STATE A RECOGNIZED FEDERAL CAUSE OF</u>**
15     **<u>ACTION.</u>**

16      Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction

17  because not one of its seven counts is a recognized federal cause of action.  Counts One

18  and Two of the Complaint allege that state officials "caused the Plaintiff material

19  damages" by violating his 5th and 14th Amendment rights to due process and equal

20  protection.  The Fifth Amendment, however, only applies to the federal government, not

21  state officials.  So that claim must be dismissed.

22      As for the 14th Amendment, it bars a state from "depriv[ing] any person of life,

23  liberty, or property, without due process of law," and also prohibits states from "deny[ing]

24  to any person within its jurisdiction the equal protection of the laws."  And Congress long

25  ago established the remedy for such violations:  42 U.S.C. § 1983.  That statute permits

26  civil damage suits against "[e]very person" who under color of state law subjects any

27  citizen to "the deprivation of any rights, privileges, or immunities secured by the

28  Constitution and laws . . . ."  But Plaintiff's Complaint does not assert a Section 1983

4

1   claim, and no general civil cause of action exists against either the State of Arizona or

2   state officials for violating the U.S. Constitution.[4]

3        Nor could it.   Plaintiff's Complaint nowhere alleges that state officials deprived

4   him of any "rights, privileges, or immunities secured by the Constitution and laws." There

5   is no Constitutional right to have your former lawyer indicted, even if he or she did bad

6   things.   Nor does Plaintiff allege that state officials improperly assaulted him or arrested

7   him or took his property.   And there is no precedential or logical basis for the claim that a

8   state official's mere decision to indict some people, but not others, could deny "equal

9   protection of the laws" to a citizen who believed someone *should have been* indicted.

10        Moreover, Section 1983 applies only to state officials, not to states. *E.g. Arizonans*

11   *for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Cortez v. County of Los Angeles*,

12   294 F.3d 1186, 1188 (9th Cir. 2002) (noting that a state is not considered a "person"

13   within the meaning of § 1983).   So the Court would certainly lack jurisdiction over the

14   State of Arizona, even if Plaintiff had brought a claim under § 1983, which he has not.

15        Indeed, the 11th Amendment to the Constitution absolutely bars federal court

16   actions against a state.   *E.g. Brooks v. Sulphur SpringsValley Elec. Coop*, 951 F.2d 1050,

17   1053 (9th Cir. 1991).   And the 11th Amendment applies equally to bar claims against state

18   agencies, *see P.R. Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144

19   (1993), as well as to bar damage actions against state officials in their official capacity.

20   *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007).

21

22

23

24

---

25   [4] When there is no other statutory relief available, courts have allowed victims to sue the
United States for damages for violation of constitutional rights. *Bivens v. Six Unknown*

26   *Fed. Narcotics Agents*, 403 U.S. 388 (1971).   But when Congress has created a specific
statute to recover for deprivation of Constitutional rights, then litigants must pursue relief

27   under that statute. *E.g. Bush v. Lucas*, 462 U.S. 367 (1983) (declining to find a general
cause of action under the Constitution for alleged deprivation of First Amendment rights,

28   when Congress had created a "comprehensive scheme" intended to compensate victims.).

Hence, the 11th Amendment itself requires the dismissal from this suit of the State of Arizona, the Department of Attorney General, and Governor Doug Ducey.[5]

Furthermore, "vicarious liability is inapplicable to *Bivens* and § 1983 suits," so a plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 55 U.S. 662, 676 (2009). There are no such allegations against Governor Ducey, so he must be dismissed for that additional reason. And there are no allegations in the Complaint whatsoever concerning any actions or omissions taken by Defendant Paul Ahler, so he must also be dismissed.

Plaintiff's other claims—for alleged "selective prosecution," "selective enforcement," "prosecutorial misconduct" and "conspiracy to commit" such misconduct, and "abuse of prosecutorial discretion"—fare no better. If such claims exist, they would at most be state tort claims, not federal claims. And (assuming Plaintiff had pled a Section 1983 claim), Section 1983 does not provide a cause of action for violations of state law. *See Galen v. Cnty. of Los Angeles*, 477 F.3d 52, 662 (9th Cir. 2007).

Finally—at least based on the facts set forth in the Complaint which assert the State's alleged *failure* to indict someone—these are simply not valid causes of action under any theory. No recognized tort claim exists—and certainly no federal tort claim— for a prosecutor's alleged failure to indict a third party.

## III.   PLAINTIFF LACKS ARTICLE III STANDING TO BRING THE CLAIMS ASSERTED.

Even if the Complaint asserted an-otherwise valid federal cause of action, under Article III of the Constitution, Plaintiff lacks standing to bring it. The judicial power of the United States extends only to actual "cases and controversies." To show an actual

---

[5] Plaintiff's Complaint names "Governor Doug Ducey," thus appearing to name the Governor only in his official capacity. The only allegations against the Governor are that he allegedly "refused to take action on [Plaintiff's] behalf," Cmpl. ¶ 13, and that he allegedly told Plaintiff he had no authority to act, Cmpl. ¶¶ 32, 107. Furthermore, the emails Plaintiff attached as Ex. 26 to his Complaint are all e-mails to and from representatives of the Governor's office, not the Governor himself.

1  case or controversy, a plaintiff must show that he has personally suffered an "injury in

2  fact," that the injury in question is fairly traceable to the defendants' challenged actions or

3  omissions, and that the claimed injury would be redressed by a favorable judicial decision.

4  *See, e.g. Valley Forge Christian College v. Americans United*, 454 U.S. 464, 472 (1982);

5  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

6      The heart of Plaintiff's Complaint is that state officials have allegedly violated his

7  Constitutional rights by failing to seek a criminal indictment against attorneys from a

8  particular law firm, Snell & Wilmer, and its individual attorneys, even though—as

9  Plaintiff claims—these attorneys have committed criminal acts.  But even if one assumes

10  that the state's failure to seek such an indictment was somehow a violation of the 14th

11  Amendment's Equal Protection clause, and that this Court had jurisdiction to redress that

12  violation, that failure has not harmed Plaintiff personally any more than other citizens.  As

13  the Complaint itself asserts, "Such behavior violates every Arizonan's right to Due

14  Process, and Equal Protection." Cmpl. ¶ 3 at p. 2.  Defendants are not aware of any case

15  that gives a citizen standing to sue state officials for the failure to indict a third party.

16      Moreover, the Plaintiff's requested remedy—$1.9 billion in money damages for

17  him—even if granted, would not correct the alleged constitutional wrong, in that it would

18  not require the attorneys to actually be prosecuted or pay any restitution.

19      In fact, in February of this year, Plaintiff filed a separate Special Action asking the

20  Arizona Supreme Court to order the State to present evidence against Snell & Wilmer to a

21  grand jury.  But on May 19, 2016—just last week—Arizona's Supreme Court declined to

22  accept jurisdiction of that action.[6]  Logically, if the State *cannot* be compelled to bring an

23  indictment because it is a discretionary act, then the Plaintiff has no standing to claim

24  damages when the State decides not to indict.  And if the State *could* be compelled to

25  bring an indictment, then Plaintiff's remedy would be to compel that indictment.

26      Furthermore, Plaintiff's Complaint is in any event premature.  As the Complaint

27  acknowledges, on February 26, 2016, the Attorney General transferred all of the pending

28

---

[6] *See* Ex. 4 attached.

7

cases involving Plaintiff, including what Plaintiff calls "the Snell & Wilmer case," to the Pinal County Attorney's Office for an "independent Review." Cmpl. ¶ 83 at p. 14.[7] There thus remains the possibility that the state could take action on the matter.

## IV.   THE ATTORNEY GENERAL'S OFFICE IS IMMUNE FROM LIABILITY FOR ITS DECISIONS ON WHETHER TO INDICT SOMEONE.

Even if the Court had jurisdiction and Plaintiff had standing, the Complaint would also be barred by the doctrine of prosecutorial immunity.   A prosecutor enjoys absolute immunity from damage suits when he acts within the scope of his prosecutorial duties and discretion. *See*, *e.g. Imbler v. Pachtman*, 424 U.S. 409 (1976).   Thus, in deciding to initiate a prosecution, as well as in pursuing that prosecution, a prosecutor is immune from a civil suit for damages.   As the Ninth Circuit Court of Appeals explained just last year, "the prosecutor's activities in connection with the preparation and filing of the information ... were protected by absolute immunity." *Torres v. Goddard*, 793 F.3d 1046, 1053 (2015) (internal quotation marks and citation omitted).

As the United States Supreme Court has emphasized, a "prosecutor's act in seeking an indictment is but the first step in the process of seeking a conviction." *Kalina v. Fletcher*, 522 U.S. 118, 128 (1997).   And the decision whether to prosecute or not necessarily requires legal knowledge and the exercise of related legal discretion—the precise attributes prosecutorial immunity seeks to protect. As the *Kalina* court elaborated:

> Exposing the prosecutor to liability for the initial phase of his prosecutorial work could interfere with his exercise of independent judgment at every phase of his work, since the prosecutor might come to see later decisions in terms of their effect on his potential liability.

*Kalina, supra.*

In addition, courts have expressly recognized that, "as a general rule," a prosecutor's decision whether or not to "bring suits or institute prosecution" are "matters resting within his discretion. . . ." *Ackerman v. Houston*, 45 Ariz. 293, 296-97 (1935) (declining to order county attorney to file complaint for perjury); *State v. Tsosie*, 171 Ariz. 683, 702 (App. 1992) ("It is within the sound discretion of the prosecutor to determine

---

[7] The date the cases were transferred comes from Cmpl. Ex. 16, p. 14.

whether to file criminal charges and which charges to file."); *see also Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 379 (2d Cir. 1973) ("[F]ederal courts have traditionally and, to our knowledge, uniformly refrained from overturning, at the instance of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons regarding whom a complaint of criminal conduct is made.").

As the Supreme Court has explained, "[i]n our criminal justice system, the Government retains broad discretion as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (citation and internal quotation marks omitted). Indeed,

> so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.

*Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

As the *Wayte* court emphasized, the policy basis for such "broad discretion" rests "largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Wayte*, 470 U.S. at 607. That is because:

> Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.

*Id.*

Moreover, the court elaborated, "[j]udicial supervision in this area" entails "systemic costs of particular concern." *Id.* In the Court's words:

> Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.

*Wayte*, 470 U.S. at 607-608.

*Wayte* involved a young man who was prosecuted for failing to register with the selective service, and who alleged that the federal government violated his Constitutional rights to equal protection by selectively prosecuting him—while deliberately *not* prosecuting many others whom the government knew had failed to register. The Supreme Court disagreed.

1    But Plaintiff's claim is far weaker than the *Wayte* plaintiff:  Mr. Graven wants to

2  hold a prosecutor civilly liable for the alleged *failure* to initiate a prosecution of a third

3  party.  We know of no precedent supporting such a claim, and Plaintiff cites none.  A

4  prosecutor's decision not to prosecute involves the exercise of legal judgment and

5  discretion for which no civil liability could attach.

6  **V.     PLAINTIFF'S COMPLAINT FAILS TO ALLEGE A PLAUSIBLE CLAIM.**

7    Even if the Court had jurisdiction, Plaintiff had standing, and the defendants were

8  not immune, the Complaint would still be defective because it fails to plead a plausible

9  claim for relief, particularly when reduced only to its well-pleaded facts.  In essence, the

10  Complaint merely alleges that a non-attorney investigator with the Attorney General's

11  office, Dan Woods, believed that his investigation supported an indictment against Daniel

12  Esposito and two or three Snell & Wilmer attorneys, but that the lawyers at the Attorney

13  General's office did not think what the Snell & Wilmer attorneys did arose "to the level of

14  being criminal."  Cmpl. ¶ 80.  So the Attorney General declined to pursue an indictment.

15  Plaintiff claims that the decision not to indict violated his Constitutional rights, and

16  damaged him.

17    Such allegations do not make out a plausible claim for relief.

18    As the Supreme Court held in *Iqbal*, 556 U.S. at 664, in considering a motion to

19  dismiss, a court "may begin by identifying allegations that, because they are mere

20  conclusions, are not entitled to the assumption of truth."  Plaintiff liberally sprinkles his

21  Complaint with conclusory allegations such as "fraud" (*e.g.* ¶¶ 50-53, 58) and "criminal

22  acts" (*e.g.* ¶¶ 5, 22), but the Court should disregard all such freighted labels.

23    In addition, if the well-pleaded facts of the Complaint are subject to two possible

24  interpretations, a court is entitled to accept the more likely interpretation. *Iqbal*, 556 U.S.

25  at 681-682.  Here, the more likely interpretation of the well-pleaded facts is that the

26  Attorney General's office had legitimate reasons to conclude that a criminal case against

27  Snell & Wilmer could not succeed.

28

1       The material, non-conclusory facts either set forth in Plaintiff's Complaint, or set

2   forth in exhibits attached to the Complaint, may be summarized as follows:

3       &bull;    As set forth in a "Factual Basis Addendum" to a plea agreement by Deborah

4   Dubree, Plaintiff Will Graven's involvement with Arizona Building Systems (ABS) had a

5   complicated history. Cmpl. Ex. 12, Factual Basis Addendum. At the end of 2004, Dubree

6   owned ABS, but had given Graven the option to buy it for $350,000. *Id.* In the ensuing

7   months of 2005, Graven decided not to exercise the option, then changed his mind and

8   decided to buy it, then decided to only buy 90.1% of it and leave Dubree with 9.9%, then

9   decided to make Dubree an employee of the company instead, then changed his mind on

10  that again. *Id.* So during 2005, ABS was owned by Dubree, but mostly run by Graven. *Id.*

11      &bull;    In June 2005, Graven hired Snell & Wilmer as counsel for ABS. Cmpl.

12  Ex. 8, ¶ 8, p. 6. At the time, the company was still owned by Dubree; Graven did not

13  exercise his option to buy ABS until October 2005. Cmpl. Ex. 12, Factual Basis

14  Addendum.

15      &bull;    In the spring of 2014, Dan Woods, then an investigator with the Attorney's

16  General's office, thought he had discovered a criminal scheme by Dubree and Daniel

17  Esposito to improperly take control of the Board of Directors of some of Plaintiff's

18  companies by preparing new corporate documents, such as operating and shareholder

19  agreements. Cmpl. ¶¶ 44-46. Woods also discovered that Dubree and Esposito had

20  "enlisted the [unspecified] assistance" of two Snell & Wilmer attorneys. Cmpl. ¶ 46.

21      &bull;    Woods received approval to investigate the matter from the Attorney

22  General's office, then headed by Tom Horne, and was told that the Attorney General

23  would approve indictments if Woods' investigation found there had been criminal acts

24  committed by the attorneys. Cmpl. ¶ 53.

25      &bull;    In the course of investigating that, Woods learned that Dubree had, without

26  Will Graven's knowledge, "[d]iscussed the planned changes to the ABS shareholders'

27  agreement with several Snell & Wilmer attorneys including Jim Sienicki and Mike

28  Donahey." Cmpl. ¶ 62, p. 10. In the meeting with Dubree, the Snell & Wilmer attorneys

1   told her that, in order for them to make the requested changes to the shareholder's

2   agreement, "both she and Will Graven needed to sign new engagement letters making it

3   clear that Snell & Wilmer did not represent her nor [sic] Will Graven." Cmpl. ¶ 62, p. 10.

4       •   According to a report prepared by Woods, and attached to the Complaint,

5   both Dubree and Will Graven did sign the new engagement letters, and in light of that,

6   Snell & Wilmer prepared a draft of a new shareholder's agreement. Cmpl. Ex. 8, ¶¶ 94-95

7   at p. 28; ¶ 117 at p. 32.   But the new Snell & Wilmer-prepared agreement was never

8   signed or used:  according to Dubree's testimonial agreement, Esposito later told Dubree

9   "that he changed his mind about changing the ABS shareholders' agreement to take

10  control of the company."   Cmpl. Ex. 12, Factual Basis Addendum to Dubree plea

11  agreement, p. 4. So this alleged criminal scheme to take control of ABS was never carried

12  out.

13      •   Following his investigation, in May of 2015, Woods gave a presentation to

14  (now) Attorney General Brnovich's senior staff.   According to Woods, the above facts

15  supported a criminal charge against the Snell & Wilmer attorneys for a "scheme to shirk

16  fiduciary duty" for failing to advise Will Graven about the planned (but never carried out)

17  changes to the shareholder agreement.  Cmpl. Ex. 13.  According to Woods, the "benefit"

18  Snell & Wilmer obtained from this alleged criminal act of shirking a duty, was:

19  "Continued and increased billing for legal services, and keeping ABS as a prospective

20  long term client. . . ." *Id.*

21      •   After the presentation, Prosecutor Joe Waters was given permission to indict

22  Daniel Esposito, but not the Snell & Wilmer attorneys.  Cmpl. ¶ 57.  In August 2015,

23  Esposito was indicted.  Cmpl. ¶ 59.  (Dubree was not indicted because she had entered a

24  plea agreement and was cooperating with the investigation.)  Cmpl. ¶ 57.

25      •   Plaintiff was later told that the review of the evidence by the Attorney

26  General's office "did not establish probable cause against Snell & Wilmer and therefore

27  using prosecutorial discretion, he refused to take the Snell & Wilmer case to the State

28  Grand Jury. . . ." Cmpl. ¶ 85.

1   •   Later, the Attorney General decided to transfer the Snell & Wilmer matter,
2   along with other Graven-related cases, to the Pinal County Attorney's Office for an
3   "independent review." Cmpl. ¶ 83, p. 14.

4   The above facts offer ample reasonable basis for a prosecutor to decline to pursue
5   criminal charges against a prominent law firm on the novel charge of a "scheme to shirk
6   fiduciary duty."

7   Of course, in addition to the above, Plaintiff makes many wild claims suggesting
8   that the Defendants want to "bury" him, and that Attorney General Brnovich is lying and
9   committing "Fraud on the Arizona Supreme Court." *E.g.* Cmpl. ¶¶ 23, 83. But this Court
10   should be loath to give credence to Plaintiff's hyperbolic assertions, considering his
11   history before this Court and others.  As reflected in Exhibit 1, this Court has previously
12   found an action he filed to have been frivolous.  This Court has also found an appeal
13   which Plaintiff filed to have been frivolous (and thereby revoked his *in forma pauperis*
14   status). *See* Ex. 5.  Further, the United States Bankruptcy Court for the District of Arizona
15   specifically dismissed Plaintiff's bankruptcy petition, finding he "did not file the
16   bankruptcy case in good faith." *See* Ex. 6.  That same court also found that Plaintiff
17   "improperly attempted to use the bankruptcy process as a litigation tactic against various
18   individuals and entities. . . ." *Id.*  And a California court formally found that Plaintiff was
19   a "vexatious litigant" under California Code of Civil Procedure section 391.1, subd. (b).
20   *See* Ex. 7.

21   Moreover, for Plaintiff to prevail on his claim for monetary damages, he would
22   have to plead and prove not only that the Attorney General's office violated his civil
23   rights in failing to seek an indictment, but that:

24   •   had the Attorney General's office presented the case to the Grand Jury, the
25      Grand Jury would have returned an indictment ;
26   •   during the ensuing prosecution, the attorneys would not have agreed to a
27      plea bargain that might have resolved the matter without Snell & Wilmer
28      paying any significant restitution for Plaintiff;

13

1   &bull;   the Attorney's General's office would have taken the case to trial, and a jury

2         would have examined the evidence and found it beyond reasonable doubt

3         that the Snell & Wilmer attorneys were guilty of criminal acts; and

4   &bull;   following that, the court would have to determine that acts for which Snell

5         & Wilmer were guilty caused economic loss to Graven that required the

6         payment of restitution.

7         Plaintiff's Complaint, however, alleges only that the Attorney General's office

8   failed to seek an indictment, a plainly insufficient claim.

9         For all the reasons discussed above, the Court should dismiss the Complaint in its

10  entirety.

11        RESPECTFULLY submitted this 27th day of May, 2016.

12                              GALLAGHER & KENNEDY, P.A.

13

14                  By: /s/ Mark C. Dangerfield

15                      Patrick J. McGroder III
                        Kevin E. O'Malley
16                      Mark C. Dangerfield
                        2575 East Camelback Road, Suite 1100
17                      Phoenix, Arizona  85016
18                      Attorneys for Defendants State of
                        Arizona, Governor Doug Ducey,
19                      Department of Arizona Attorney General,
                        Attorney General Mark Brnovich, and
20                      Assistant Attorney General Michael
21                      Bailey

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that on the 27th day of May, 2016, a copy of the foregoing

3

document was filed electronically via the Court's CM/ECF system and Notice of

Electronic Filing served on all parties by operation of the Court's CM/ECF system, with a

4

hard copy mailed to the Plaintiff by regular, First-Class, mail at the following address:

5

6

    Mr. William A. Graven
    2700 South Woodland Village, Ste. 300-241
    Flagstaff AZ 86001

7

    Plaintiff, *pro per*

8

9

By: */s/ Candice J. Cromer*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Plaintiff Will Graven's

# Motion for a Judgment on the Pleadings

Case No.:  CV2019-04586

Filed June 28, 2019

Assigned for all practical purposes to the Honorable

Judge Stephen P. Logan

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 2

1  Patrick J. McGroder III (Bar No. 002598)
   Kevin E. O'Malley (Bar No. 006420)
2  Mark C. Dangerfield (Bar No. 010832)
   GALLAGHER & KENNEDY, P.A.
3  2575 East Camelback Road, Suite 1100
   Phoenix, Arizona  85016
4  Telephone:  (602) 530-8000
   Facsimile:   (602) 530-8500
5  E-mails:  pjm@gknet.com
             kevin.omalley@gknet.com
6             mark.dangerfield@gknet.com
7  Attorneys for Defendants State of Arizona,
   Governor Doug Ducey, Department of Arizona
8  Attorney General, Attorney General Mark
   Brnovich, and Assistant Attorney General
9  Michael Bailey

10            UNITED STATES DISTRICT COURT

11               DISTRICT OF ARIZONA

12  William A. Graven,                    | No. CV-16-01249-PHX-GMS

13                   Plaintiff,           | **DEFENDANTS' RESPONSE IN
                                          | OPPOSITION TO PLAINTIFF'S
14        v.                              | RULE 60 MOTION FOR RELIEF
                                          | AND HIS MOTION FOR A CHANGE
15  State of Arizona; Governor Doug Ducey; | OF JUDGE DUE TO ALLEGED
    Department of Attorney General for the | "CONFLICTS"**
    State of Arizona; Attorney General Mark
16  Brnovich; Assistant Attorney General
    Michael Bailey; (Former) Chief of the
17  Criminal Section Donald Conrad; (Current)
    Chief of the Criminal Section Paul Ahler;
18  Assistant Attorney General Joe Waters;
    State of Arizona employees John Doe's I
19  through X and Jane Doe's I through X; and
    various departments, divisions and section
20  of the State of Arizona, I through X,

21                  Defendants.

22        Plaintiff William Graven's motion for relief under Fed. R. Civ. P. 60 (the "Motion")

23  patently lacks merit. The Motion seeks to re-open a case that the Court dismissed almost 11

24  months ago for lack of subject matter jurisdiction and for failure to state a claim.  Graven

25  filed no appeal of the Court's dismissal.  In those circumstances, "new evidence" cannot

26  help.  In granting Defendants' motion to dismiss, the Court necessarily assumed the truth

27  of the well-pleaded facts in Graven's complaint.  And since the Court's ruling was not based

28  on a lack of evidence, no supposedly "new evidence" can help.

                                    1

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

1    In his complaint in this matter, Graven sought monetary damages against several

2    state officials acting in their official capacities; he believed his compensable damages were

3    "well in excess of" $1.9 billion.  Compl. (Dkt. 1), ¶ 115.  In its 09/22/16 Order (Dkt. 25),

4    the Court dismissed the action for lack of federal subject matter jurisdiction.  As the Court's

5    Order states:  "the Eleventh Amendment bars [federal court] damage suits against state

6    officials in their official capacities"; thus, "Plaintiff's complaint in its entirety is barred by

7    the Eleventh Amendment."

8    In light of that ruling, no matter what "new evidence" Graven says he has come up

9    with, this Court lacks legal jurisdiction to consider either the evidence or the claims.  New

10   evidence cannot give the Court subject matter jurisdiction over claims which the Eleventh

11   Amendment bars.  And even though the Court's Order is clear on this point, Graven's Rule

12   60 motion never once even mentions the Eleventh Amendment.[1]

13   Graven's Motion is also wholly lacking in merit because, as the Court found,

14   "Plaintiff does not cite to any legal authority that suggests that he has a federal right to have

15   third parties criminally prosecuted by state officials."  "New evidence" does not change that

16   ruling either.  What Graven needs is legal authority—statutes or case law—to support his

17   specious claims.  But he has none.

18   Graven's Motion chooses to simply ignore the problems the Court's dismissal order

19   highlighted.  Instead, he complains that the Court's dismissal order focused on what Graven

20   derisively refers to as "the standard litany" of why he "couldn't take action against the

21   Defendants," and "prosecutorial discretion"—when he thinks the Court should have

22   focused on "the Defendants' acts that violated my rights."  Mot. at 2.  But the essence of the

23   dismissal order is that the Court *lacks jurisdiction* to focus on the Defendants' acts.

24   Sadly, this is not the first time Graven has turned a blind eye to the substance of the

25   Court's dismissal order, while claiming that he had "new evidence" that should resuscitate

26
27   [1] At page 3 of Mr. Graven's Motion, he suggests that *Ex parte Young*, 209 U.S. 123 (1908)
     allows "complaints such as [his] in Federal Courts when state officials acting on behalf of
28   their state acted unconstitutionally. . . ."  But *Ex parte Young* only authorizes federal court
     *injunctions* against state officials in some circumstances, not damage claims, as sought here.

1   his claims.  At page 2 of Graven's 09/30/16 Motion for Reconsideration (Dkt. 27), he also

2   criticized the Court's dismissal order as "nothing more than a standard, canned litany of

3   prosecutorial discretion and immunity," and—as in the current Rule 60 Motion—claimed

4   to have "new evidence" for the Court.  The Court promptly denied the motion for

5   reconsideration (Dkt. 28).  Apparently, though, Graven still has not received the message.

6   The Court should therefore consider sanctions to stop the flow of Graven's frivolous filings.

7        Moreover, when Graven's Rule 60 Motion gets around to revealing his supposed

8   "new evidence," the proffered evidence has no bearing even on the substance of his claims.

9   Graven touts his Exhibit 4—a 04/27/15 Memorandum from Donald E. Conrad, Criminal

10  Division Chief Counsel, to various members of the Attorney General's office (Dkt. 29,

11  pp. 25-26)—as supposedly showing that the Attorney General had decided to indict Snell

12  & Wilmer and some of its individual lawyers.  But Exhibit 4 merely contains a statement

13  by Conrad that Snell & Wilmer and the named lawyers are "[p]ossible targets of the

14  investigation."

15       The Memorandum also says that Paul Ahler, then the Chief Counsel of the Fraud &

16  Special Prosecution Section, had a conflict related to Snell & Wilmer, and so was to be

17  screened from that investigation.  So Graven argues that his Exhibit 5—a July 2015 "Case

18  Charging Approval" signed by Paul Ahler (Dkt. 29, pp. 28-32)—violated that screening

19  order.  But Exhibit 5 is just a "Case Charging Approval" for two defendants who are *not*

20  affiliated with Snell & Wilmer:  Michael Martin and Daniel Esposito.  And the only

21  reference in that document to the law firm is at Dkt. 29, p. 29, where it alleges that Esposito

22  "conspired with the minority owner of ABS, Debora Dubree, to have Snell & Wilmer

23  rewrite the corporate documents for ABS. . . ."  The document does not suggest that Snell

24  & Wilmer was part of the conspiracy, and it is an undisputed fact that Snell & Wilmer did

25  not in fact "rewrite the corporate documents" for ABS.  *See, e.g.* Ex. 12 to Graven's original

26  complaint (Dkt. 1-3 at p. 32), Factual Basis Addendum to Debora Dubree pleas agreement

27  (stating that Esposito later told Dubree "that he changed his mind about changing the ABS

28  shareholder's agreement to take control of the company.").

3

1    Graven also moves for a change of judge on the grounds that both Judge Snow and

2  undersigned counsel Mark Dangerfield are "Bishops in the Church of Jesus Christ of Latter-

3  day Saints (also known as the Mormon church)." According to Graven—who admits he is

4  not a Mormon—such Bishops have a "strong bond" between them. Graven speculates that

5  that is why the Attorney General's Office chose Dangerfield as counsel in this case.

6    It is not the reason, but even if it were the reason, Graven's Motion fails to support

7  a recusal at this stage of the case. To begin with, Graven never asked Judge Snow to recuse

8  himself before Graven's case was dismissed; having failed to raise the issue then, he should

9  not be allowed to raise the issue in a post-judgment Rule 60 motion.

10    Under 28 U.S.C. §§ 544(a) and (b), a judge should "disqualify himself in any

11  proceeding in which his impartiality might reasonably be questioned," or where he "has

12  personal bias or prejudice" concerning a party." But the "standard is an objective one";

13  hence, "the judge need not recuse himself based on the subjective view of a party no matter

14  how strongly that view is held." *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir.

15  1990) (internal quotation marks and citation omitted).

16    Graven has alleged no facts showing that the standard for recusal has been met. In

17  the Mormon Church, Bishops serve as lay leaders of individual congregations called

18  "wards,"[2] of which there are 809 in Arizona, and thus 809 different Bishops.[3] Since the

19  Bishops each serve entirely different congregations in different areas, most Bishops will not

20  even know each other. Further, LDS Bishops generally serve a congregation for about five

21  years, and then are replaced, so there are many hundreds more "retired" Bishops in the state

22  whose prior service as Bishops will remain anonymous to each other: LDS Bishops and

23  retired Bishops do not generally walk around with a sign around their necks stating their

24  status. Indeed, undersigned counsel Mr. Dangerfield—who is not currently serving as an

25  LDS Bishop—has no idea whether Judge Snow is or is not a current or former LDS Bishop

26  / / /

27

28  [2] *See* http://www.mormonnewsroom.org/article/bishop
    [3] *See* http://ldschurchtemples.org/statistics/units/united-states/arizona/.

4

1          In any event, Graven cites no case law justifying the need for recusal on such facts,

2   and Defendants are unaware of any.

3          For all the reasons discussed above, the Court should deny both Graven's Rule 60

4   Motion for Relief and his Motion for Change of Judge.

5          RESPECTFULLY submitted this 21st day of August, 2017.

6                                                  GALLAGHER & KENNEDY, P.A.

7

8                                          By:  */s/ Mark C. Dangerfield*
                                                Patrick J. McGroder III
9                                               Kevin E. O'Malley
                                                Mark C. Dangerfield
10                                              2575 East Camelback Road, Suite 1100
                                                Phoenix, Arizona  85016
11                                              Attorneys for Defendants State of
                                                Arizona, Governor Doug Ducey,
12                                              Department of Arizona Attorney General,
13                                              Attorney General Mark Brnovich, and
                                                Assistant Attorney General Michael
14                                              Bailey
15

16

17                             **CERTIFICATE OF SERVICE**

18          I hereby certify that on the 21st day of August, 2017, a copy of the foregoing

19  document was filed electronically via the Court's CM/ECF system and Notice of Electronic

20  Filing served on all parties by operation of the Court's CM/ECF system.

21  By:  */s/ Candice J. Cromer*

22

23

24

25

26

27

28

                                           5

# Plaintiff Will Graven's

# Motion for a Judgment on the Pleadings

## Case No.:  CV2019-04586

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

## Judge Stephen P. Logan

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 3

No. 17-16889

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

WILLIAM A. GRAVEN, named as Will Graven

Plaintiff-Appellant,

v.

STATE OF ARIZONA, *ET AL.*

Defendants-Appellees.

On Appeal from the United States District Court, District of Arizona
Honorable G. Murray Snow, United States District Court Judge
No. 2:16-cv-01249-PHX-GMS

## DEFENDANTS/APPELLEES' RESPONSE TO PLAINTIFF/APPELLANT'S
## MOTION TO REMAND
## AND RULE 201 REQUEST FOR THE
## COURT OF APPEALS TO TAKE JUDICIAL NOTICE

Patrick J. McGroder III (Bar No. 002598)
Kevin E. O'Malley (Bar No. 006420)
Mark C. Dangerfield (Bar No. 010832)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road, Suite 1100
Phoenix, Arizona  85016
Telephone:  (602) 530-8000
Facsimile:   (602) 530-8500
pjm@gknet.com
kevin.omalley@gknet.com
mark.dangerfield@gknet.com
*Attorneys for Defendants-Appellees State of
Arizona, Governor Doug Ducey, Department
of Arizona Attorney General, Attorney
General Mark Brnovich, and Assistant
Attorney General Michael Bailey*

Plaintiff/Appellant William Graven's October 6, 2017 Motion to Remand, and the accompanying request asking the Court to take judicial notice, are frivolous. Indeed, the filings serve to highlight the insubstantial nature of the issues raised by the appeal itself.  The Court should therefore not only deny the motion and the request for judicial notice, but should consider summarily disposing of the appeal under Circuit Rule 3-6.

To begin with, the Court cannot take judicial notice of the requested items, because none of them are "adjudicative facts" as defined in Fed. R. Evid. 201(b). That is because none of the items are either "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

More significantly, in September 2016 the underlying case was dismissed for lack of jurisdiction and for failure to state a claim (D. Ariz. Dkt. 25)—not for lack of evidence.  In the underlying matter, Graven had sued the State of Arizona and several of its officers acting in their official capacity (collectively, "the State") in the Federal District Court for the District of Arizona, seeking money damages he believed to be "well in excess of $1,900,000.00."   Complaint at ¶ 115, D. Ariz. Dkt. 1.  Graven's lawsuit generally alleged "that the State's refusal to seek criminal indictments against third persons constitutes a violation of his rights under the Fifth

1

and Fourteenth Amendments to the United States Constitution," and also constitutes various state law torts. D. Ariz. Dkt. 25 at 2:6-10.

But as the District Court explained in dismissing the action: "The Eleventh Amendment prohibits federal courts from hearing suits against an unconsenting state." D. Ariz. Dkt. 25 at 3:10-12, *quoting Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991). In addition, "the Eleventh Amendment bars damages suits against state officials in their official capacities." *Id.* at 3:15-17, *quoting Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

And even if jurisdiction had existed, the District Court held that Graven's complaint failed to state a plausible claim, and in fact consisted "almost entirely of legal conclusions which are erroneous." D. Ariz. Dkt. 25 at 3:19-21. Nor did Plaintiff "cite to any legal authority that suggests he has a federal right to have third parties criminally prosecuted by state officials." *Id.* at 3:21-22.

Significantly, Graven did not appeal that dismissal and the related judgment, D. Ariz. Dkt. 26. Rather, almost 11 months later he filed a Rule 60 motion to reopen the case based on supposedly new evidence—for which he asked the District Court to take judicial notice D. Ariz. Dkt. 29. But even assuming the new evidence helped establish that the State acted wrongly, that would not override the Eleventh Amendment and somehow give Graven permission to use a federal court to sue the

2

State and its officials, let alone transmute his various allegations into a plausible claim.

So on September 13, 2017, the District Court (1) denied Graven's Rule 60 motion, (2) denied Graven's request to take judicial notice (finding that the documents sought to be noticed could not "be the appropriate subjects of judicial notice"), and (3) ordered that Graven "shall not file any further pleadings in this action." D. Ariz. Dkt. 35. In its September 13 Order, the District Court stated:

> The Court dismissed the Complaint in September 2016, not only because it had no jurisdiction to grant the relief requested by the Plaintiff—a claim for monetary damages against state officials acting in their official capacity which is barred by the Eleventh Amendment— but also because it failed to state a plausible claim.

*Id.* at 1:25-28.

So Graven brought this appeal—and now has filed multiple new requests for judicial notice. But regardless of the contents of any new documents, they could not, as a matter of law, relieve Graven's failure to appeal the District Court's September 22, 2016 dismissal of his case, nor give the Court jurisdiction in violation of the Eleventh Amendment, nor create a new tort theory against the State for failure to criminally indict a third party.

As has already become clear, Plaintiff/Appellant Graven will keep filing unwarranted and inappropriate motions until he is told to stop. Indeed, he combined his 09/19/17 Notice of Appeal in this case with a motion to "accept a request for

3

judicial notice that the district court would not allow [him] to file." COA 9 Dkt. 3.

And Graven has already filed yet another separate request for judicial notice, COA 9

Dkt. 7, in this Appeal.   The appropriate cure for such meritless filings is to either

summarily dismiss the appeal or direct Plaintiff/Appellant to cease filing such

motions.

Respectfully submitted on this 23rd day of October, 2017.

GALLAGHER & KENNEDY, P.A.

By: _s/ Mark C. Dangerfield_____
Patrick J. McGroder III
Kevin E. O'Malley
Mark C. Dangerfield
*Attorneys for Defendants-Appellees State
of Arizona, Governor Doug Ducey,
Department of Arizona Attorney General,
Attorney General Mark Brnovich, and
Assistant Attorney General Michael
Bailey*

4

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing *Defendants/Appellees'*
*Response to Plaintiff's/Appellant's Motion to Remand and Rule 201 Request for the*
*Court of Appeals to Take Judicial Notice* with the Clerk of the Court for the United
States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system
on October 23, 2017.

A copy has been mailed to Appellant at his updated address:

> William A. Graven
> 2700 South Woodlands Village Blvd., Suite 300-251
> Flagstaff, Arizona  86001

October 23, 2017                    GALLAGHER & KENNEDY, P.A.

                                    By:   *s/ Mark C. Dangerfield*
                                          Mark C. Dangerfield

1

# Plaintiff Will Graven's

# Motion for a Judgment on the Pleadings

## Case No.:  CV2019-04586

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

## Judge Stephen P. Logan

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 4

# Plaintiff Will Graven's Response
## to
# Defendants' Motion to Dismiss

## Case No.:  CV2019-04586

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

## Judge Stephen P. Logan

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 3

1   Kevin E. O'Malley (Bar No. 006420)
    Mark C. Dangerfield (Bar No. 010832)
2   GALLAGHER & KENNEDY, P.A.
    2575 East Camelback Road
3   Phoenix, Arizona 85016-9225
    Telephone:   (602) 530-8000
4   Facsimile:   (602) 530-8500
    kevin.omalley@gknet.com
5   mark.dangerfield@gknet.com
    *Attorneys for Defendant State of Arizona and*
6   *Attorney General Mark Brnovich*

7                  **SUPERIOR COURT OF THE STATE OF ARIZONA**

8                            **COUNTY OF MARICOPA**

9   IN RE WILL GRAVEN,                          No. CV2018-007856

10                  Plaintiff,

11  v.

12  STATE OF ARIZONA; GOVERNOR
    DOUG DUCEY; DEPARTMENT OF          **STATE OF ARIZONA AND**
13  ATTORNEY GENERAL FOR THE           **ATTORNEY GENERAL MARK**
    STATE OF ARIZONA; ATTORNEY         **BRNOVICH'S MOTION TO**
14  GENERAL MARK BRNOVICH;             **DISMISS FOR FAILURE TO STATE**
    ASSISTANT ATTORNEY GENERAL         **A CLAIM**
15  MICHAEL BAILEY; (FORMER) CHIEF
    OF THE CRIMINAL SECTION DONALD
16  CONRAD; (CURRENT) CHIEF OF THE     (Assigned to the Hon. Connie Contes)
    CRIMINAL SECTION PAUL AHLER;
17  ASSISTANT ATTORNEY GENERAL
    JOE WATERS,
18
19                  Defendants.

20

21          Defendants State of Arizona and Attorney General Mark Brnovich move under Ariz.

22  R. Civ. P. 12(b)(6) to dismiss Plaintiff Will Graven's Complaint, for failure to state a claim.[1]

23  The Complaint pleads no valid claims against any of the named Defendants, but even if it

24  did, all such claims would be time-barred by both the 180-day Notice of Claim statute, and

25  the one-year statute of limitations for suing the State or its employees.

26  _____

27  [1] No defendants have yet been served in this case. On June 25, 2018, the State and the
    Attorney General entered a special appearance to contest jurisdiction regarding Graven's
28  motion for terminating sanctions. Despite not having been served, the State and the Attorney
    General file this motion out of an abundance of caution.

*(vertical left margin)* Gallagher & Kennedy, P.A. / 2575 East Camelback Road / Phoenix, Arizona 85016-9225 / (602) 530-8000

1    Graven's current Complaint is just the latest in a series of frivolous filings he
2    continues to make, hoping that some Court will buy his rejected theory that his
3    constitutional rights were violated when the State *declined to criminally indict* a law firm
4    and some of its individual members. *Ref 5*

5    **I.    PROCEDURAL BACKGROUND.**

6    Before one can sue the State or its employees, A.R.S. § 12-821.01 requires a plaintiff
7    to serve a Notice of Claim on the entities and individuals to be sued, and to do so within
8    180 days after the alleged claims accrued. If a plaintiff then decides to sue the State or its
9    employees based on the disclosed claims, A.R.S. § 12-821 requires the plaintiff to file that
10   suit within one year after the claims accrued.

11   On January 19, 2016, Graven served a Notice of Claim on the State, Attorney
12   General Brnovich, and others. *See* Exhibit 21 to Graven Compl. The Notice of Claim
13   demanded payment of $1.9 billion for damages Graven allegedly suffered by virtue of
14   "prosecutorial misconduct" – by which Graven meant refusing to indict "certain very
15   powerful attorneys and their law firm" – as well as alleged violations of his 5th and 14th
16   Amendments rights to due process and equal protection, along with the State's engagement
17   in conflicts of interest, abuse of prosecutorial discretion, abuse of power, intimidation,
18   prosecutorial corruption, and other alleged bad acts. *Id.*

19   Then on April 27, 2016 – after the State declined to pay the demanded $1.9 billion
20   – Graven sued the State in federal court – *Graven v. State of Arizona et al.,* (D. Ariz. No.
21   CV-16-01249 2016) (the "Federal Court Action") – based on his January 19, 2016 Notice
22   of Claim. Excerpts attached as **Exhibit 1**.[2] Graven's Federal Court Action generally alleged
23   that the State had damaged him by making a discretionary decision *not* to criminally indict
24   a local law firm and three of its partners. *Id.*

25   On September 22, 2016, the District Court granted the State's motion to dismiss the
26   Federal Court Action, on two independent grounds. *See* Order attached as **Exhibit 2**. First,

27   _____
28   [2] On a motion to dismiss, the Court can take judicial notice of publicly-filed documents.
     *Coto Settlement v. Eisenberg,* 593 F.3d 1031, 1038 (9th Cir. 2010).

2

1    the court found that it lacked subject matter jurisdiction, because the 11ᵗʰ Amendment to

2    the U.S. Constitution barred federal court suits against a state or state officials in their

3    official capacities. *Id.* at p.3. Second, the court found that Graven's complaint "fail[ed] to

4    state a claim that [was] plausible on its face." *Id.* In that regard, the court said, Graven failed

5    "to cite to any legal authority that he has a federal right to have third parties criminally

6    prosecuted by state officials," or "any authority that would allow him to bring a state law

7    claim against state officials for their failure to criminally prosecute third persons that he

8    believes should be prosecuted." *Id.*

9           Significantly, Graven did not appeal the dismissal of his Federal Court Action.

10   Nevertheless, almost a year later, on August 7, 2017, Graven filed a Rule 60 motion for

11   relief in the Federal Court Action, based on what Graven called "new evidence." The federal

12   court denied Graven's Rule 60 motion on September 13, 2017. *See* attached **Exhibit 3**.

13          Graven then appealed the denial of his Rule 60 motion to the Ninth Circuit Court of

14   Appeals. On May 21, 2018, the Ninth Circuit – before Graven had even filed his opening

15   brief on the appeal – dismissed the appeal, calling it "frivolous." *See* attached **Exhibit 4**.

16          Once the federal court system had rejected his claims, Graven filed this action.

17   According to his Complaint, Graven bases this action on the same January 19, 2016 Notice

18   of Claim used for his Federal Court Action. Compl. ¶ 91. Graven says he can use the same

19   Notice of Claim because "[t]his is a continuation of *essentially the same case*" that he filed

20   "in both District Court and the Ninth Circuit." *See* Graven's 6/25/18 Motion for Approval

21   of Substitute-Effective Service, at p. 3 (emphasis added). Indeed, Graven says, "[t]he

22   present Complaint is merely my Federal Complaint being refiled in Arizona State Court.

23   *Id.* at p. 4.

## ANALYSIS

24

25   **II.     GRAVEN'S COMPLAINT SHOULD BE DISMISSED AS UNTIMELY.**

26          As noted, under A.R.S. §§ 12-821 and 12-821.01, a plaintiff must serve a Notice of

27   Claim against a government entity "within one hundred eighty days after the cause of action

28   accrues," and must file suit on the claims alleged "within one year after the cause of action

accrues and not afterward." So assuming Graven timely filed his January 19, 2016 Notice of Claim, the statute of limitations on actually filing suit expired no later than January 18, 2017 – well over a year before Graven filed this action. Graven's suit is thus plainly time-barred.

Graven nevertheless argues that, since he timely filed his *Federal Court Action*, there is nothing "that prevents that action from being moved/remanded from one court to another," and so A.R.S. § 12-821.01 "has no application what so ever to this case…." *See* 7/30/18   Plaintiff's Combined Reply to Defendants' Response to My Motion for Terminating Sanctions and Defendants Non-Verbal Response My Motion for Summary Judgment ("7/30/18 Combined Reply") at p. 6. Graven, of course, cites no authority for the novel proposition that, if one court denies his timely-filed claims – and he fails to appeal that denial – he can nevertheless simply wait a year or two and refile the claims in another court. He can't, and the Court should dismiss the Complaint.[3]

## III.   GRAVEN'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLEAD A VALID CAUSE OF ACTION.

Regardless of the statute of limitations, Plaintiff's Complaint fails to plead any valid cause of action. The gist of Plaintiff's claim is that the State harmed him by failing to exercise its discretion to indict a law firm and a few of its members, and Plaintiff suggests that there were political motivations underlying that decision. Graven asserts five causes of action arising from such allegations:

1) violation of his 5th and 14th amendment rights to due process;

2) violation of his right to due process under Art. II, Sec. 4 of the Arizona Constitution;

3) violations of Chapter 8, of the Arizona Agency Handbook, dealing with conflicts of interest;

---

[3] Graven also argues that the Defendants' alleged bad acts in any event toll all his claims, thus making the statute of limitations "mute" (sic). 7/30/18 Combined Reply at 7. Graven cites no authority for this argument. More importantly, none of the alleged bad acts prevented Graven from timely filing his Federal Court Action, and he could have timely filed this one as well, but failed to do so.

4

1    4) violations of A.R.S. 38-501 – 511, dealing with conflicts of interest; and

2    5) prosecutorial misconduct.

3    But no statute or case law authorizes a civil damage claim against the government

4    based on any such allegations.  The claims are frivolous, and the Court should dismiss them.

*Ref 2*

5    What the Federal District Court said in dismissing the similar claims in Graven's

6    Federal Court Action applies equally here:



*Ref 4*

7        Plaintiff does not cite to any legal authority that suggests that he has
8        a federal right to have third parties criminally prosecuted by state
         officials. Nor does Plaintiff cite any authority that would allow him to

*Ref 3*

9        bring a state law claim against state officials for their failure to
         criminally prosecute third persons that he believes should be
10       prosecuted.

**Exhibit 2** (9/22/16 Order at 3:21-25).

11   Indeed, it is hornbook law that "criminal prosecutors may claim absolute immunity

12   from damages liability for actions 'intimately associated with the judicial phase of the

13   criminal process,' such as the prosecutor's initiation of a prosecution and presentation of

14   the state's case." *Torres v. Goddard,* 793 F.3d 1046, 1051 (9th Cir. 2015 (quoting *Imbler v.*

15   *Pachtman,* 424 U.S. 409, 430 (1976)); *accord State v. Super. Ct.,* 186 Ariz. 294, 297, 921

16   P.2d 697, 700 (App. 1996) (holding that a prosecutor has "absolute" immunity when acting

17   "within the scope of his or her authority and in a quasi-judicial capacity.").

18   As the United States Supreme Court has emphasized, a "prosecutor's act in seeking

19   an indictment is but the first step in the process of seeking a conviction." *Kalina v. Fletcher,*

20   522 U.S. 118, 128 (1997.  And the decision whether to prosecute or not necessarily requires

21   legal knowledge and the exercise of related legal discretion – the precise attributes

22   prosecutorial immunity seeks to protect.  As the *Kalina* court elaborated:

23

24       Exposing the prosecutor to liability for the initial phase of his
         prosecutorial work could interfere with his exercise of independent
         judgment at every phase of his work, since the prosecutor might come
25       to see later decisions in terms of their effect on his potential liability.

26   *Kalina, supra.*

27   In addition, courts have expressly recognized that, "as a general rule," a prosecutor's

28   decision whether or not to "bring suits or institute prosecution" are "matters resting within

*Wayte*, 470 U.S. at 607-608.

But Graven's claim is far weaker than the *Wayte* plaintiff: Graven wants to hold a prosecutor civilly liable merely for the failure to initiate a prosecution of a third party. We know of no precedent supporting such a claim, and Graven cites none. A prosecutor's decision not to prosecute involves the exercise of legal judgment and discretion for which no civil liability could attach.

Nor does Graven's claim that Defendant Paul Ahler was not properly "screened" from the investigation of the Snell & Wilmer defendants make any difference. Even if true, such a fact would not give Graven some heretofore-unrecognized personal right to sue the State for money damages for the State's failure to properly screen. Nor would such a fact somehow give Graven the novel right to sue the State for failure to criminally prosecute third persons whom Graven believes should be prosecuted.

Nor is this the first time Graven has made the "Ahler was not properly screened" argument. As noted above, almost a year after the Federal District Court dismissed his Federal Court Action, Graven filed a Rule 60 motion based on allegedly "new evidence" supposedly showing that Paul Ahler had not been properly "walled off" from his case. But as the Federal District Court found, "[e]ven assuming the evidence now proferred by the Plaintiff were newly discovered," nothing about it would "change this court's conclusion that Plaintiff still fails to state a plausible claim upon which relief could be granted." **Exhibit 3** ((9/13/17 Order at 1:25-2:4).

IV.   **THE ALLEGATIONS IN GRAVEN'S COMPLAINT MISREPRESENT DOCUMENTS ATTACHED TO THE COMPLAINT, AND FAIL TO DISCLOSE MATTERS OF PUBLIC RECORD THAT HE KNOWS CONTRACDICT HIS ALLEGATIONS.**

In addition to the defects already detailed above, Graven's Complaint misleads the Court both by mischaracterizing documents and failing to advise the Court that the indictments and plea agreements his Complaint relies on were all later reversed.

### A. Graven Mischaracterizes Case Opening Documents as Charging Documents.

The "story" Graven's Complaint tries to tell is that Arizona Attorney General Criminal Division Chief Don Conrad first approved charging certain Snell & Wilmer attorneys with crimes, but then allowed Paul Ahler - a Conrad subordinate who allegedly had a conflict of interest – to "overrule" him and not charge the attorneys. For this story, Graven's Complaint relies heavily on his Exhibits 3, 6 and 14. Graven asserts that, pursuant to Complaint Exhibits 3 and 6, "four Snell & Wilmer parties were approved for charging" by Division Chief Conrad, Compl. ¶ 32. But then, Ahler "removed the four Snell parties' names," and charged only Daniel Esposito. *Id.* ¶¶ 60-62

But even a cursory review of Exhibits 3 and 6 to Graven's Complaint show that each was just a "case opening" form – an authorization to investigate – that did not approve charging anyone. Exhibit 3, for example, is titled "Case Opening Form," and states: "No *investigation* is to proceed until this form is approved by the Criminal Division Chief." (Emphasis added.) Likewise, Exhibit 6 is titled, "Case Opening Form," and states that "if the Office of the Attorney General is to conduct any investigation in this case, the Case Opening Sheet must be approved by the Criminal Division Chief Counsel *before any investigation* is conducted." (Emphasis added.)

The difference between approving *an investigation* and approving *bringing criminal charges* against someone is plainly seen by comparing Exhibit 14 of Graven's Complaint, which is the only "charging" document Graven does attach. Exhibit 14 is expressly titled, "Case Charging Approval," and it was prepared, not by Ahler, but by Assistant Attorney General Joe Waters. Exhibit 14 approves bringing specific felony charges against two defendants, Mike Martin and Daniel Esposito. Both Ahler and Conrad then signed to indicate their approval of those charges. Exhibit 14 did not approve bringing charges against the Snell & Wilmer attorneys.

Thus, the very documents Graven expressly relies on and attaches to his Complaint don't support his claims. What those documents instead suggest is that an investigation was

8

1   authorized, but it turned up insufficient evidence to satisfy the assigned prosecutor –

2   Assistant Attorney General ("AAG") Joe Waters – to charge the Snell & Wilmer attorneys.

3   Indeed, Exhibit 11 to Graven's Complaint confirms this narrative.  Exhibit 11 is a letter

4   from AAG Waters to Graven, stating: "After all of the information was carefully

5   considered, the Assistant Attorney General" [*i.e.* Waters] determined that the filing of a

6   felony charge was not appropriate."

7           The very documents Graven attaches to his Complaint bely his farfetched conspiracy

8   theory.

9       **B.    Graven's Complaint Relies on Indictments and Plea Agreements That
        He Knows Have Been Overturned and Discharged.**

10

11          As is evident from Graven's Complaint, he really wants to see the Snell & Wilmer

12  attorneys criminally indicted. And in an apparent attempt to buttress his claims as to the

13  attorneys' liability, his Complaint asserts that the Attorney General's Office "completed a

14  plea agreement" with "one of the Snell Case suspects"  in which she "described the Snell

15  Case crimes" and "pled guilty to such...."  Compl. ¶ 13. (Graven attached the referenced

16  plea agreement – one for Ms. Deborah Dubree – as Exhibit 1 to his Complaint. In fact,

17  though, Ms. Dubree was not a Snell & Wilmer attorney, as his Complaint Exhibit 1 makes

18  clear.) Graven also asserts that his former general counsel, Daniel Esposito, was also

19  indicted "for conspiring with outside counsel" – Snell & Wilmer – to commit "fraudulent

20  schemes and artifices."

21          But here's the "rest of the story" that Graven failed to tell the Court, all of which

22  comes from the public records: in January 2017, the Dubree plea agreement – along with

23  other plea agreements in Graven-related cases – were withdrawn, and all charges were

24  dismissed against both Dubree, Daniel Esposito, and the other individuals indicted in

25  Graven-related cases. *See* attached **Exhibit 5**. Graven knows this, because he intervened in

26  a failed attempt to contest the dismissals. *See* attached **Exhibit 6**. But he failed to disclose

27  such facts to this Court.

28

                                            9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For all the reasons discussed above, the Court should dismiss Plaintiff's Complaint.

RESPECTFULLY SUBMITTED this 28th day of August, 2018.

GALLAGHER & KENNEDY, P.A.


By: /s/ Mark C. Dangerfield
    Kevin E. O'Malley
    Mark C. Dangerfield
    2575 East Camelback Road
    Phoenix, Arizona  85016-9225
    *Attorneys for Defendant State of Arizona*

*eFiled* this 28th day of August, 2018 with
the Clerk of the Court, and COPY
delivered via the ECF filing system to
the Honorable Connie Contes

COPY of the foregoing emailed and mailed this
28th day of August, 2018, to

William "Will" A. Graven, Pro Per
2700 South Woodlands Village Blvd.,
Suite 300-251
Flagstaff, AZ 86001
will@willgraven.com


   Gloria Kannberg

10

# Plaintiff Will Graven's

# Motion for a Judgment on the Pleadings

## Case No.:  CV2019-04586

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

## Judge Stephen P. Logan

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 5

# Plaintiff Will Graven's Response
## to
# Defendants' Motion to Dismiss

## Case No.:  CV2019-04586

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

## Judge Stephen P. Logan

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 2

1  Mark C. Dangerfield (Bar No. 010832)
   Kevin E. O'Malley (Bar No. 006420)
2  GALLAGHER & KENNEDY, P.A.
   2575 East Camelback Road
3  Phoenix, Arizona 85016-9225
   Telephone:   (602) 530-8000
4  Facsimile:   (602) 530-8500
   mark.dangerfield@gknet.com
5  kevin.omalley@gknet.com
   *Attorneys for Defendant State of Arizona*

6

7                   UNITED STATES DISTRICT COURT

8                        DISTRICT OF ARIZONA

9

10  Will Graven,                        No. 2:19-cv-04586-SPL

11                  Plaintiff,          **DEFENDANT'S MOTION TO
                                        DISMISS**
12  v.

13  State of Arizona,

14                  Defendants.

15

16        The State of Arizona (the "State") asks the Court to dismiss Plaintiff Will Graven's

17  first amended complaint (the "FAC"), which suffers from multiple, patent, defects. Indeed,

18  the FAC is frivolous. First and foremost, the FAC is barred by the Eleventh Amendment,

19  which prohibits a citizen from using federal court to sue a non-consenting state.

20        This Motion is also supported by the attached Certificate of Conferral, certifying that

21  the parties conferred prior to the filing of this Motion.

22                        **PROCEDURAL BACKGOUND**

23        This is now Mr. Graven's third lawsuit asking that he be awarded money damages

24  because the State did not indict a prominent local law firm – Snell & Wilmer – and some

25  of its partners, whom Mr. Graven felt had committed criminal acts. Mr. Graven filed the

26  first such lawsuit in this Court in 2016, CV-16-01249-PHX-GMS (the "2016 Federal

27  Action"). On September 22, 2016, Judge Murray Snow granted the State's motion to

28  dismiss that suit both because it was barred by the Eleventh Amendment and because it

"fail[ed] to state a claim that [was] plausible on its face." 2016 Federal Action, Dkt. 25 at
3. For convenience, we have attached a copy of Judge Snow's Order at **Exhibit 1.**[1]

Graven filed the second such lawsuit in Maricopa County Superior Court in 2018,
CV2018-007856 (the "2018 State Action"), based on the same basic legal theory he asserted
in the Federal Action. Indeed, to try and evade the bar of the statute of limitations,. Graven
referred to his 2018 State Action as "a continuation of *essentially the same case*" that he
filed in "both the [2016 Federal Action] and the Ninth Circuit." *See* **Exhibit 3** at p. 3
(excerpts of 6/25/18 Mot. for Approval of Substitute-Effective Service (emphasis added).
Indeed, Graven said, his 2018 State Action was "merely my [2016 Federal Action] being
refiled in Arizona State Court." *Id.* at p. 4.

In a minute entry issued on April 19, 2019, Judge Connie Contes dismissed Graven's
2018 State Action, finding that Graven's "complaint fails to plead a legally valid basis for
a cognizable cause of action against the State and its official." 4/19/19 minute entry at 2;
copy attached as **Exhibit 4.** The court also found that Graven's complaint was untimely and
barred by the "180-day Notice of Claim statute as well as the one-year statute of limitations
for bringing an action against the State or its official." *Id.*

Graven then filed the current federal court action, which suffers from the same
defects as his 2016 Federal Action – but is now also barred by the statute of limitations.

**I.    Because of the Eleventh Amendment, the Court lacks jurisdiction.**

The FAC is plainly barred by the Eleventh Amendment, which acts as a limit on
federal subject matter jurisdiction. *Demery v. Kupperman,* 735 F.2d 1199, 1149, n. 8 (9th
Cir. 1984). Specifically, the "Eleventh Amendment prohibits federal courts from hearing
suits brought against an unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Corp.*
951 F.32d 1050, 1053 (9th Cir. 1991). The State does not consent to this suit.

---

[1]Graven didn't appeal that dismissal, but later filed a Rule 60 motion in 2017 (2016 Federal
Action, Dkt. 29), arguing that he then had "new evidence" that called for the court to revisit
his claims. Judge Snow denied that motion, *Id.* Dkt 35, and Graven appealed that denial to
the Ninth Circuit. Without awaiting full briefing, the Ninth Circuit dismissed that appeal
as "frivolous." *See* copy of May 21, 2017 order attached as **Exhibit 2.**

1       Although Graven acts *pro se,* because of what happened to his 2016 Federal Action

2   he well knows that the Eleventh Amendment bars this lawsuit. Perhaps Graven thinks that

3   – by having added in the FAC counts for alleged violations of 42 U.S.C. § 1983 and 18

4   U.S.C. § 241 and 242 – he now has the right to sue the State in federal court. But those

5   counts don't trump the Eleventh Amendment. Moreover, the law is clear that a State is not

6   a "person" as defined in Section 1983, so a § 1983 claim can't lie against the State,

7   regardless of the forum.  *E.g. Arizonans for Official English v. Arizona,* 520 U.S. 43, 69

8   (1997). Nor did adding alleged violations of 18 U.S.C. §§ 241 and 242 to Plaintiff's FAC

9   help surmount the jurisdictional bar of the Eleventh Amendment.  In any event, those are

10   criminal statutes, and as the Ninth Circuit has noted, "[t]hese criminal provisions, however,

11   provide no basis for civil liability." *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980)

12   (affirming dismissal of complaint for failure to state a claim).

13       The Court need read no further to determine that it lacks jurisdiction here, just as

14   Judge Snow determined three years ago. So the case must be dismissed. But should the

15   Court harbor any doubts, the claims in the FAC are also barred by other patent defects,

16   which we discuss below.

17   **II.**   **In light of the recent decision in the 2018 State Action, the FAC claims are barred by the doctrine of *res judicata.***

18

19       Graven's 2018 State Action asserts most of the same claims set forth in the FAC,

20   and is based on the same facts and legal theory as those alleged in the FAC. *See* copy of

21   state-court complaint attached as **Exhibit 5** (excluding exhibits). Hence, the FAC is barred

22   by the doctrine of *res judicata* or claim preclusion. "Res judicata, also known as claim

23   preclusion, bars litigation in a subsequent action of any claims that were raised or could

24   have been raised in the prior action." *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d

25   708, 713 (9th Cir. 2001) (internal quotations marks and citation omitted). The doctrine

26   applies "whenever there is (1) an identity of claims, (2) a final judgment on the merits, and

27   (3) identity or privity between parties." *Id.* (internal quotations marks and citation omitted).

28

3

1    The first element, "identity of claims," does not require that each claim asserted in

2    the second action was also asserted in the first action. Rather, the test is whether "the two

3    suits arise out of the same transactional nucleus of facts." *Id.*, 244 F.3d at 714 (internal

4    quotation marks and citation omitted). That test is easily met here. In its 4/19/19 minute

5    entry granting the State's motion to dismiss the 2018 State Action, the court summarized

6    Graven's basic legal theory:

7         The gravamen of plaintiff's claim is that the State harmed plaintiff by
          failing or refusing to indict a law firm and four of its lawyers based on

8         familial and political motivations, violating Plaintiff's constitutional
          due process rights, Arizona laws regarding conflicts of interest, and

9         prosecutorial discretion.

10   **Exhibit 4** (4/19/19 minute entry at 1-2).

11       This is the same basic legal theory asserted in the FAC.

12       In our "meet and confer" prior to filing this Motion, Graven justified the FAC

13   because, he said, his state court complaint did not contain "Causes of Action regarding

14   public corruption; acts violating Federal or State criminal or civil laws; or violating my civil

15   rights." While that's not entirely accurate, it doesn't matter: "Res judicata, or claim

16   preclusion, prohibits lawsuits on any claims that were raised *or could have been raised* in

17   a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (emphasis in

18   original).

19       In the *Owen* case cited above, the plaintiff argued that *res judicata* should not bar his

20   second suit because the causes of action in that suit were "distinctly different" from those

21   in his prior suit. 244 F.3d at 713. In his prior lawsuit, the plaintiff had alleged "wrongful

22   termination and various state law claims based on breach of contract," whereas his second

23   action "alleged Title VII claims of discriminatory termination, hostile work environment,

24   and wrongful retaliation." *Owen*, 244 F.3d at 713. But the District Court – affirmed by the

25   Ninth Circuit – concluded that "[b]oth causes of action [were] predicated on racial

26   discrimination and allege[d] the same circumstances regarding Appellants' terminations";

27   both suits thus "clearly ar[o]se from the same transactional nucleus of facts" and *res*

28   *judicata* applied. *Id.*

4

1    So too here. Both Graven's 2018 State Action and the FAC arise out of the same
2  "transactional nucleus of facts." This is easily seen by comparing Graven's own summary
3  of his 2018 State Action – which Graven inserts into FAC ¶ 67, at p. 9 – with FAC
4  paragraphs 8-43, summarizing essentially the same allegations in the FAC.

5    Furthermore, Plaintiff's State Action included causes of action for:

6    (1) "Violations of the 5th and 14th Amendments for Due Process"; (2) "Violations of
7  the Arizona Constitution, Article II, Section 4, Due Process of Law"; (3) Violations of the
8  Agency Handbook, Chapter 8, Conflict of Interest; (4) "Violations of A.R.S. 38-501
9  through 38-511, Conflict of Interest"; and (5) "Prosecutorial Misconduct." *See* **Exhibit 5.**

10    Although somewhat differently worded in parts, the FAC brings each of the above
11 claims, and also adds claims for "public corruption," violations of the "14th Amendment for
12 Equal Protection," violations of 42 U.S.C § 1983 and 18 U.S.C. §§ 241 and 242, and
13 "conspiracy to commit prosecutorial misconduct."

14    With one possible exception, though, Plaintiff could have brought these additional
15 claims in his State Action, so the doctrine of *res judicata* or claim preclusion bars all the
16 claims in the FAC.

17    The single possible exception is Graven's claim for "public corruption," which
18 appears to be primarily based on Graven's new allegation that Judge Contes' decision in
19 the 2018 State Action was a "corrupt ruling" that "excus[ed] criminal acts," so this Court
20 should ignore or reverse the decision. FAC ¶ 4. However, the concept of asking a federal
21 district court to reverse the action of a state court is barred by the *Rooker-Feldman*
22 doctrine. *See e.g. Exxon Mobil Corp. v. Saudi Basic Industries Corp*, 544 U.S. 280 (2005)
23 (noting that the *Rooker-Feldman* doctrine bars cases brought by a state-court loser which
24 invites a federal district court to review and reject the state court decision).

25 **III.**  **The FAC is also barred by Arizona's 180-day Notice of Claims statute and the**
        **one-year statute of limitations for suing the State.**
26
    As the state court also determined, Plaintiff's claims are barred by both the 180-day
27 Notice of Claims statute and the one-year statute of limitations for suing the State, and that
28

5

1   rationale applies *a fortiori* to the FAC. **Exhibit 4** at 2. Under A.R.S. §§ 12-821 and 12-

2   821.01, a plaintiff must serve a Notice of Claim against a government entity "within one

3   hundred eighty days after the cause of action accrues," and must file suit on the claims

4   alleged "within one year after the cause of action accrues and not afterward." Like the first

5   two versions of this lawsuit, Graven grounds his present complaint, the FAC, on a January

6   19, 2016 Notice of Claim, a copy of which he attached as Exhibit 6 to the FAC. *See* FAC

7   ¶¶ 136 -141 at p. 15.

8       Assuming Graven timely filed his January 19, 2016 Notice of Claim, the statute of

9   limitations on actually filing suit expired no more than one year later, on January 18, 2017

10  – well over two years before Graven filed this action.  Graven's suit is thus plainly time-

11  barred.

12      On the other hand, if, as Graven sometimes claims, the claims he brought in his 2018

13  State Action (and in this action) differed from those brought in his 2016 Federal Action,

14  then Graven failed to file a new Notice of Claim before suing the State, and his claims are

15  barred by that failure.

16  **IV.    The FAC fails to state a valid claim for relief.**

17      The FAC also fails to state a valid claim for relief. The FAC asserts that, following

18  an investigation by the Arizona Attorney General's Office (the "AGO"), a local law firm,

19  Snell & Wilmer ("S&W"), and three of its attorneys had been "approved for Charging" with

20  criminal acts. FAC ¶¶ 10-12. However, Graven claims, S&W had political and family

21  connections with the governor and AGO, so AGO employees committed various criminal

22  acts, including "criminal Conflict of Interest," to ensure that the S&W attorneys would *not*

23  be criminally indicted. FAC ¶¶ 12-13; 17-20; 24-31. According to Graven, these and other

24  acts discussed in the FAC "are the origin of [his] losing Justice and restitution from the

25  exonerated Snell parties and other cases Defendants dismissed/closed, while hiding their

26  acts and the Snell parties' crimes." FAC ¶ 48.

27

28

6

1    As a result of the State supposedly "exonerating" instead of indicting S&W and
2    others, Graven claims he lost $638 million, and that amount should be trebled to equal $1.9
3    billion. FAC ¶ 144-147.
4    This is the same basic claim Graven made in his January 19, 2016 Notice of Claim,
5    attached as Exhibit 6 to the FAC. There, Graven asserts that the AGO prosecutors were "on
6    the ½ yard line" of a number of criminal investigations, "the culmination of which would
7    have resulted in the indictment, prosecution, and realization of substantial sums of money
8    to me." FAC Ex. 6 at 1. Then, Graven says, the attorney general – realizing that the AGO
9    had been backed "into a corner" that made it "impossible to avoid indicting certain very
10   powerful attorneys and their law firm – "directed" his Chief of Special Prosecutions to make
11   it "go away." *Id.* Other AGO employees were then recruited, and they allegedly committed
12   a number of bad acts, "individually and in concert," which included prosecutorial
13   misconduct, conflicts of interest, and "public corruption," among others, to ensure that
14   S&W would not be indicted. *Id. at 2.*
15   Such acts, Graven claims, ended his "four year plus quest for justice," and thus cost
16   him $1.9 billion dollars. *Id.*
17   As the courts in both Graven's 2016 Federal Action and his 2018 State action
18   determined, however, the above allegations don't state a valid cause of action. Judge Snow
19   aptly noted that Graven hadn't cited "to any legal authority that suggests that he has a federal
20   right to have third parties criminally prosecuted by state officials," or "any authority that
21   would allow him to bring a state law claim against state officials for their failure to
22   criminally prosecute third persons that he believes should be prosecuted." **Exhibit 1** at 3:21-
23   25. In fact, Judge Snow said, "it is axiomatic" that "criminal prosecutors may claim absolute
24   immunity from damages liability for actions 'intimately associated with the judicial phase
25   of the criminal process,' such as the prosecutor's initiation of a prosecution and presentation
26   of the state's case." *Id.* at 3:25-4:3 (*quoting Torres v. Goddard,* 793 F.3d 1046, 1051 (9th
27   Cir. 2015), which was quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976).
28

1    Judge Contes in the 2018 State Action agreed, stating that "[n]o legal authority has
2  been cited that would allow plaintiff to pursue his complaint against the State and its official
3  for the failure to criminally prosecute third persons whom he believes should have faced
4  prosecution." **Exhibit 4** (4/19/19 minute entry at 2.

5    The FAC – like the 2016 Federal Action and the 2018 State Action – fails to plead a
6  valid cause of action upon which relief could be granted.

7  **V.    The FAC is barred by Plaintiff's lack of standing.**

8    In order for a plaintiff to sue the State, there must be some direct connection between
9  the State's alleged actions, and the effect of those actions on the plaintiff personally.  In the
10  law, this is called the doctrine of legal "standing."

11    In the words of the Arizona Supreme Court, "[t]o gain standing to bring an action,
12  a plaintiff must allege a distinct and palpable injury." *Sears v. Hull,* 192 Ariz. 65, 69, ¶ 16,
13  961 P.2d 1013, 1017 (1998), *citing Warth v. Seldin,* 422 U.S. 490, 501 (1975). Thus, "[a]n
14  allegation of generalized harm that is shared alike by all or a large class of citizens
15  generally is not sufficient to confer standing. *Id.*

16    According to the FAC, the alleged connection between the State's acts and the harm
17  to Graven is this: "suspects" who were "approved for Charging" were supposedly
18  "exonerated through a series of criminal and supporting acts" by State employees, which
19  "caused [Graven] to lose Justice and restitution." FAC ¶ 66. But the supposed "exoneration"
20  – or more accurately, deciding not to indict – certain parties, didn't by itself harm Mr.
21  Graven. The State's decision not to indict S&W didn't take any money from Graven's
22  pocket or physically harm him or wrongfully imprison him. Simply alleging a failure to
23  indict a third party Graven wanted indicted doesn't plead any "distinct and palpable injury"
24  to *him.* Mr. Graven has no more standing to complain about the State's alleged failure to
25  indict someone than does the public at large. The FAC is thus subject to dismissal on that
26  ground alone.

27    The FAC argues that the State's actions violated the due process and equal protection
28  clauses of the state and federal constitution, and therefore harmed Graven. Similarly, in

8

1  *Sears* the plaintiffs alleged that two statutes enacted by the State violated their rights under

2  the state and federal equal protection clauses. *Sears,* 192 Ariz. at 70-71, ¶ 23, 961 P.2d at

3  1018-19. But as our Supreme Court emphasized in denying the claim, "To have standing to

4  bring a constitutional challenge, however, a plaintiff must allege injury resulting from the

5  putatively illegal conduct." *Id.* In short, plaintiffs "must show that they have been injured

6  by the alleged equal protection or special laws violation." *Id.* But the FAC fails to allege

7  how Graven has been injured by the alleged violations.

8                                    **CONCLUSION**

9          For all the reasons advanced above, the Court should dismiss the FAC in its

10  entirety.

11          RESPECTFULLY SUBMITTED this 23ʳᵈ day of July, 2019.

12

13                                          GALLAGHER & KENNEDY, P.A.

14

15                              By:    *Mark C. Dangerfield*
                                       Mark C. Dangerfield
16                                     Kevin E. O'Malley
                                       2575 East Camelback Road
17                                     Phoenix, Arizona  85016-9225
                                       *Attorneys for Defendant State of Arizona*
18

19                           **CERTIFICATE OF SERVICE**

20          I hereby certify that on this 23ʳᵈ day of July, 2019, I electronically transmitted a

21  PDF version of this document to the Clerk of the Court, using the CM/ECF System for
    filing and for transmittal of a Notice of Electronic Filing to the CM/ECF registrants, and
22  mailed  and emailed a copy to:

23

24  William "Will" A. Graven, Pro Per
    2700 South Woodlands Village Blvd.,
25  Suite 300-251
    Flagstaff, AZ 86001
26  will@willgraven.com

27  Rona L. Miller
    7401178v2/568-0195
28

                                          9