FILED ✓ LODGED
___ RECEIVED ___ COPY

AUG 1 5 2019

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ *UW* DEPUTY

William "Will" A. Graven, In Pro Se
2700 S. Woodlands Village Blvd. Suite 300-251
Flagstaff, Arizona 86001

### IN UNITED STATES DISTRICT COURT, DISTRICT OF ARIZONA, PHOENIX DIVISION

| | |
|---|---|
| In Re: Will Graven, ) | Case No.: **2:19-cv-04586** |
| Plaintiff, ) | Case Filed: June 28, 2019 |
| v. ) | Honorable Judge **STEVEN P LOGAN** |
| ) | **PLAINTIFF'S COMBINED RESPONSE TO** |
| State of Arizona, ) | **DEFENDANTS' MOTION TO DISMISS;** |
| Defendants. ) | **AND MOTION TO STRIKE DEFS' MOTION** |

### I-A.  INTRODUCTION: DEFENDANTS BRING THEIR HOME-COURT FRAUDS TO THIS COURT

Defendants have done what I expected they would do, which is to try their same frauds here as they used in

State Court. Their 8 "Main Frauds" worked well with *their home-Court* (see State Court Dismissal here, Sec I-D):

1.) that my Complaint is based on I "**felt**" or "**believed**" the Snell Parties had committed crimes (*My* Complaint is against *the State, for their criminal acts, as they exonerated the already approved-for-charging Snell Parties.*)

2.) that my Complaint is based on I "**wanted**" or "**had a right**" to have Snell indicted (*Snell was approved to be indicted [Cmplnt Ex's 4/5], I did not need to [ridiculously] "want" or claim a "right" to have them indicted.*)

3.) that I alleged the State "**failed;**" "**did not;**" "**declined;**" or "**refused**" to indict the Snell Parties (*My Complaint is about Defendants' documented criminal acts to exonerate Snell from already being approved to be indicted.*)

4.) that the State simply, honestly, **decided not to indict** the Snell Parties (*Defendants' series of documented criminal acts to exonerate the Snell Parties does not qualify as a "decision not to indict."*)

5.) they claim that 3 Forms authorizing separating the Snell Case from the Graven Master Case for prosecution were merely authorizing the beginning of the Snell Investigation (*Sec I-C below, the "Three Forms Fraud."*)

6.) they ignored their **criminal acts/evidence**, except to bury them with frauds on the Court (*The home-Court obliged, never saying a word about Defendants' criminal acts, nor the frauds on the Court by their counsel.*)

7.) that as prosecutors, they are above the law, "**even if criminal**" (*They actually claim this; Cmplnt Sec II-K.*)

8.) that my first Complaint here, and the one in State Court, were **one in the same** actions (*Cmplnt Sec II-J.*)

*None* of their frauds *appeared in my Complaint*, but their home-Court dismissed by *quoting them* (Sec I-D).

Now, Defendants *use these same frauds* in their Motion here, *but **none** of them appear in this Complaint either.*

*My* Complaint: Ahler was Screened for Conflicts, CmpInt Ex 6; but took part in/signed the Snell Charging Form (Criminal Conflict), removing the Snell names, Ex 7; he was assisted by others, so more criminal acts, Ex's 9-16.

*Defendants, since my first Complaint here, knew what they had done, but withheld records and hid the truth.*

Below are examples of how Defendants used their Main Frauds here (Defs' Mtn to Dsmss, pg 1, lns 24/25 [*they*

*forgot to mention that Snell was investigated/approved to be indicted; that Snell had hired criminal counsel; and*

*Defendants forgot their criminal acts while exonerating Snell; all of which are documented by their own records]*):

"...because the State **did not indict** a prominent local firm–Snell & Wilmer, and some of its partners, who Mr. Graven **felt** had committed criminal acts." (*This is their very first sentence in the "Background" of their Motion.*)

Or (DMtD pg 8, lines 21–24 [*we will see at I-B, Defendants do know what my Complaint is actually about*]):

"The State's **decision not to indict** S&W didn't take any money from Graven's pocket or physically harm him or wrongfully imprison him. Simply **alleging a failure to indict** a third party Graven **wanted** indicted doesn't plead any "distinct and palpable injury" to him." (Bold underline by Plaintiff.)

1

William "Will" A. Graven, In Pro Se
2700 S. Woodlands Village Blvd. Suite 300-251
Flagstaff, Arizona 86001

### IN UNITED STATES DISTRICT COURT, DISTRICT OF ARIZONA, PHOENIX DIVISION

| | |
|---|---|
| In Re: Will Graven, <br>      Plaintiff, <br><br> v. <br><br> State of Arizona, <br>      Defendants. | ) Case No.: **2:19-cv-04586** <br> ) Case Filed: June 28, 2019 <br> ) Honorable Judge **STEVEN P LOGAN** <br> ) **PLAINTIFF'S COMBINED RESPONSE TO** <br> ) **DEFENDANTS' MOTION TO DISMISS;** <br> ) **AND MOTION TO STRIKE DEFS' MOTION** |

## I-A.  INTRODUCTION: DEFENDANTS BRING THEIR HOME-COURT FRAUDS TO THIS COURT

Defendants have done what I expected they would do, which is to try their same frauds here as they used in

State Court. Their 8 "Main Frauds" worked well with *their home-Court* (see State Court Dismissal here, Sec I-D):

1.) that my Complaint is based on I **"felt"** or **"believed"** the Snell Parties had committed crimes (*My* Complaint is against *the State, for their criminal acts, as they* exonerated the *already approved-for-charging* Snell Parties.)

2.) that my Complaint is based on I **"wanted"** or **"had a right"** to have Snell indicted (*Snell was approved to be indicted [Cmplnt Ex's 4/5], I did not need to [ridiculously] "want" or claim a "right" to have them indicted.*)

3.) that I alleged the State **"failed;" "did not;" "declined;"** or **"refused"** to indict the Snell Parties (*My Complaint is about Defendants' documented criminal acts to exonerate Snell from already being approved to be indicted.*)

4.) that the State simply, honestly, **decided not to indict** the Snell Parties (*Defendants' series of documented criminal acts to exonerate the Snell Parties does not qualify as a "decision not to indict."*)

5.) they claim that 3 Forms authorizing separating the Snell Case from the Graven Master Case for prosecution were merely authorizing the beginning of the Snell Investigation (*Sec I-C below, the "Three Forms Fraud."*)

6.) they ignored their **criminal acts/evidence**, except to bury them with frauds on the Court (*The home-Court obliged, never saying a word about Defendants' criminal acts, nor the frauds on the Court by their counsel.*)

7.) that as prosecutors, they are above the law, **"even if criminal"** (*They actually claim this; Cmplnt Sec II-K.*)

8.) that my first Complaint here, and the one in State Court, were **one in the same** actions (*Cmplnt Sec II-J.*)

*None* of their frauds *appeared in my Complaint*, but their home-Court dismissed by *quoting them* (Sec I-D).

Now, Defendants *use these same frauds* in their Motion here, *but none of them appear in this Complaint either*.

*My* Complaint: Ahler was Screened for Conflicts, Cmplnt Ex 6; but took part in/signed the Snell Charging Form (Criminal Conflict), removing the Snell names, Ex 7; he was assisted by others, so more criminal acts, Ex's 9-16.

***Defendants, since my first Complaint here, knew what they had done, but withheld records and hid the truth.***

Below are examples of how Defendants used their Main Frauds here (Defs' Mtn to Dsmss, pg 1, lns 24/25 [*they forgot to mention that Snell was investigated/approved to be indicted; that Snell had hired criminal counsel; and Defendants forgot their criminal acts while exonerating Snell; all of which are documented by their own records*]):

"...because the State **did not indict** a prominent local firm–Snell & Wilmer, and some of its partners, who Mr. Graven **felt** had committed criminal acts." (*This is their very first sentence in the "Background" of their Motion.*)

Or (DMtD pg 8, lines 21–24 [*we will see at I-B, Defendants do know what my Complaint is actually about*]):

"The State's **decision not to indict** S&W didn't take any money from Graven's pocket or physically harm him or wrongfully imprison him. Simply **alleging a failure to indict** a third party Graven **wanted** indicted doesn't plead any "distinct and palpable injury" to him." (Bold underline by Plaintiff.)

1

My Complaint is *__not__* about what I **felt/wanted** *re Snell* *__nor__* "**alleging a failure to indict**." *It is about* (see Ex 1 here) **Defendants'** documented criminal acts (Cmplnt Sec's IIB-D, Ex's 6/7; 9-16), committed as they exonerated the Snell Parties, who had been investigated (Sec's IIA/B, Ex's 1/2/3/6/9) and approved to be indicted (Ex's 4/5).

Defendants' claiming "State's decision not to indict" or my "alleging a failure to indict" *__are boldface lies.__*

Defendants use frauds to divert the Court's attention from their criminal acts. They expect the Court to fall for their frauds of a "*decision not to indict" et al*, so the Court will then not even bother to look at their criminal acts. **Example:** they use a "decision not to indict" as a diversion from Ahler/Conrad's criminal signatures on Cmplnt Ex 7.

If Defendants had legitimately been reversing approval by the previous Attorney General to charge the Snell Parties, *they would not have needed to commit criminal acts to make their "decision not to indict," And if their acts were legitimate, their counsel would not to be using frauds on the Court to avoid/hide their clients' criminal acts.*

Defendants used their frauds in their Motion here (Ex 2 here [see underlining]), and in State Court (Ex 3).

Defendants' Motion *does not respond* to *my* Complaint, their Motion responds to their fraud scheme they created for the home-Court, which is the same scheme they now want this Court to believe is my Complaint.

*Defendants' documented criminal acts __and frauds on the Court__ impact __everything__: Immunity (including exceptions to); Res judicata; Statutes of Limitation (tolling); Failure to State a Claim; Jurisdiction; Damages; my Standing; Prosecutorial Discretion; having violated the US Constitution, and Federal Statutes; and etc.*

The result of Defendants' scheme and frauds on the Court is a false context, making their Motion meaningless, except for the prejudicial effects their scheme/frauds have on my Complaint. *So their Motion must be stricken.*

## I-B. INTRODUCTION: DEFENDANTS DO KNOW WHAT MY COMPLAINT IS REALLY ABOUT

Defendants used many frauds, *but they do know* what my Complaint is *really* about (DMtD pg 6, lns 17-26):

"The FAC also fails to state a valid claim for relief. The FAC asserts that, following an investigation by the Arizona Attorney General's Office (the "AGO"), a local law firm, Snell & Wilmer ("S&W"), and three of its attorneys had been "approved for Charging" with criminal acts. FAC ¶¶ 10-12. However, Graven claims, S&W had political and family connections with the governor and AGO, so AGO employees committed various criminal acts, including "criminal Conflict of Interest," to ensure that the S&W attorneys would not be criminally indicted. FAC ¶¶ 12-13; 17-20; 24-31. According to Graven, these and other acts discussed in the FAC "are the origin of [his] losing Justice and restitution from the exonerated Snell parties and other cases Defendants dismissed/closed, while hiding their acts and the Snell parties' crimes." FAC ¶ 48."

*Yes! This is it! Nothing about* I "felt" *or* "I wanted," *just facts, all of which came from AGO internal records.*

**This summary stands in *night/day contrast* to the frauds they used as the alleged basis of my Complaint.**

They gave this one reasonably accurate summary of my Complaint, by quoting me, *__but they did not respond to it, they only responded to/argued against their own frauds,__* except to make their summary appear ludicrous, by connecting it to the amount of money I lost, which they made seem farcical (see Damages in Sec VI [my Net

2

Worth at relevant times was $638m). Here is their next paragraph following that summary (DMtD pg 7, lns 1-3):

"As a result of the State supposedly "exonerating" instead of indicting S&W **and others**, Graven claims he lost $638 million, and that amount should be trebled to equal $1.9 billion. FAC ¶ 144-147."

As to Defendants quoting me saying "**these and other acts**" and "**and other cases Defendants dismissed/closed**," please see Complaint Sec II-H Supporting Acts (they committed *many* "supporting" and "other" acts).

As to treble damages, Arizona calls for treble damages for acts committed by an evil mind, and RICO crimes.

Defendants claiming "The FAC also fails to state a valid claim for relief." is a legal conclusion they claim, *but they did so without actually responding to the allegations and evidence of that summary.*

I ask the Court to note: the Snell Investigation Written Criminal Report (Cmplnt Ex 1) and the PowerPoint Report (Ex 2), both concluded the Snell Parties had in fact committed criminal acts; the 5th Snell Case suspect, Deborah Dubree, pled guilty to and described Snell's leadership in the Snell crimes (Ex 3); and the 6th suspect, Daniel Esposito, was indicted for conspiring to commit fraudulent schemes/artifices *with Snell* (Ex 4 at Ref's 1/2).

*Defendants' frauds on the Court are the context for their defenses,* e.g., when they say there is no valid claim or damages for my "*feeling*" the Snell suspects should have been charged...of course there isn't. Nor was there proper context when they used the same frauds in their home-Court. *But their frauds are not what my Complaint is about*.

*It is not Justice* that Defendants can file their Motion based on frauds, and skip-over *what is the essence* of my Complaint: AGO internal records documenting *their* criminal acts (Cmplnt Sec's IIB-D, Ex's 6/7 and 9-15).

Clearly, Defendants know my Complaint, but created their frauds to lead the Court into making a mal-informed decision. *Again, Defendants creating and using such frauds should cause their Motion to Dismiss to be stricken*.

**I-C. ANTICIPATING DEFENDANTS' NEXT FRAUD ON THE COURT, LIKELY IN THIER REPLY**

Defendants did not use their "Three Forms Fraud" in their Motion to Dismiss here.

I am guessing they saved it, to use in their Reply to this Response. At first glance, it is a persuasive fraud.

Defendants like this fraud quite a lot, as it appears to support prosecutorial discretion, and their claim that after an investigation, the State simply made their "decision not to indict" the Snell Parties.

This is how I described the first 2 of the 3 Forms (of the Three Forms Fraud) in my Complaint here:

"16. In late April and early May of 2015, the Chief of the Criminal Division ("CD"), Don Conrad, approved a new case number to separate the Snell Case from the Graven Master Case for the Fraud Special Prosecution Section ("FSP Section") to prosecute by (Ex 4); and a separate case number for post-Charging investigating (Ex 5)."

The 3rd Form is the Case Charging Form, which approves sending a Case to the Grand Jury (Cmplnt Ex 7).

**Here is how this Fraud works:** The first 2 Forms (Cmplnt Ex's 4/5) *came more than a year after the Snell Case Investigation began* as a fully authorized investigation, which was conducted under the then already 2 1/2 year

3

old Graven Master Investigation Case, and months after the approval to charge the 6 Snell Case suspects was given.

These 2 Forms are the only way to obtain *new investigation case* numbers; *or, separate case numbers for a subsidiary investigation to be separated from its master case, for the prosecution of that then standalone case, and the continuing investigation of that then "new" prosecution case*. As these two Forms are used for separating master-subsidiary cases, those Forms were used to separate *the year-old Snell Case* from the Graven Master Case.

Here is the basis for Defendants' clever fraud: At the top of Cmplnt Ex 4, it says: "CASE OPENING SHEET," and at the top of Ex 5 it says: CASE OPENING FORM.

So, Defendants seized on "OPENING" to claim that those Forms were *just then authorizing the beginning of the Snell investigation*. Here is Defendants' Motion to Dismiss in State Court (Ex 3 here, pg 8, lns 10-17):

"But even a cursory review of **Exhibits 3 and 6** to Graven's Complaint show that each was just a "case opening" form – an authorization to investigate – that did not approve charging anyone. Exhibit 3, for example, is titled "Case Opening Form," and states: "No investigation is to proceed until this form is approved by the Criminal Division Chief." (Emphasis added.) Likewise, Exhibit 6 is titled, "Case Opening Form," and states that "if the Office of the Attorney General is to conduct any investigation in this case, the Case Opening Sheet must be approved by the Criminal Division Chief Counsel before any investigation is conducted."

When I filed a Response to their Motion to Dismiss in State Court, I explained the Three Forms Fraud to that Judge. My Response included 30 pages/82 Exhibits (Ex 4 here, at Ref's 1/2) that made it very clear the first 2 Forms were for issuing "new" case numbers to separate the Snell Case from the Graven Master Case for prosecution.

There are many holes in Defendants' fraud that Cmplnt Ex's 4 and 5 ("Exhibits 3 and 6" in Defendants' just above paragraph) dated late April/early May 2015 just then authorized the beginning of the Snell Investigation.

Those holes are made obvious by those 82 Snell Case Exhibits, such as:

1.) the dates of these Exhibits are before the dates of Ex's 4/5, including up to just over a year before these 2 Forms;
2.) some of the those 82 Ex's include such investigative matters as;
    (a.) the Grand Jury Subpoena to Snell from September of 2014 (the year earlier than the 2 Forms that Defendants claimed just then first authorized the Snell Investigation);
    (b.) draft copies of the Snell Case Written Criminal Report, beginning in November of 2014;
    (c.) that the Snell Parties were refusing to be interviewed by December of 2014;
    (d.) that Snell had hired criminal defense attorney Michael Piccaretta by early January of 2015;
    (e) the dates of the description of the investigation et al of the Deborah Dubree Plea Agreement

The 3rd Form in the Three Forms Fraud is the Case Charging Form (Cmplnt Ex 7) that sent the Snell Case crimes (and others) to the Grand Jury (Ex 7 documents at least 8 criminal acts; Cmplnt Sec IIB-C, or Sec IV below).

Now, with the 3rd Form, the Three Forms Fraud works like this: First, having lied about the first 2 Forms (Cmplnt Ex's 4/5) which separated the Snell Case from the Graven Maser, they have a foundation to then claim *that after that just-then-authorized investigation*, they determined that Snell should not be charged, and so the Snell Parties' names on not on the Case Charging Form. ***But is must be noted, they ignored Ahler and Conrad's criminal***

4

*signatures on Ex 7, and the 8 criminal acts by their signatures, and the several other criminal dominos that then fell; and they ignored the Snell Written/PowerPoint Reports; Dubree's Plea; and Esposito's being indicted.*

I ask this Court to expect Defendants will yet use their Three Forms Fraud in their Reply to this Response.

## I-D. INTRODUCTION: STATE COURT DISMISSAL BY HOME-COURT CORRUPTION

As described and shown in Ex 3 here, Defendants, in State Court, used their Main Frauds many times (and others, which I did not underline), in just their Motion to Dismiss. They used those frauds in pleading after pleading.

I tried to combat their frauds, many times, e.g., Ex's 5, 6, 7 and 8 here, but that Court dismissed my Complaint *by actually quoting Defendants' frauds* (to be seen in Ex 9 below):

**Ex 5** is a copy of the docket from my State Court Case. Please note my reporting instances of Extreme Fraud on the Court by Defendants on 8/31/18; 3/15/19; and 5/24/19. The State Court did nothing in response.

**Ex 6** is my Emergency Notice of Extreme Fraud on the Court which I filed 3 days after Defendants filed their fraud-filled Motion to Dismiss (again, Ex 3 here, see underlining). Please see my Noticing that Court of 6 instances (Ref's 1-6) of fraud on the Court. Please note, those happen to be many of their Main Frauds as I listed/explained them at the top of and page 1, they are amongst the same frauds that now appear in their Motion to Dismiss here.

*Please note at Ref 7, I* emphatically stressed what my Complaint was about *(Ex 1 here).* Eight months later, after many pleadings, and a Hearing, that Court will dismiss my Complaint, quoting Defendants' frauds (which see Ex 9), not my Complaint, never having reacted to Defendants' documented criminal acts, or their frauds on the Court.

**Ex 7** is my seeking Motion for Relief of the State Court's dismissal. I aggressively explained to that Court that the Judge had ruled on Defendants' frauds, and had not considered their criminal acts (Ex 7 Sec II). Motion denied.

**Ex 8** is a partial copy of my Response to Defendants' Motion. Referring to Fraud 8 on page 1 here, Defendants used my first Complaint here to claim that my then new State Complaint, and my first Complaint here, were for the same allegations (they were not close). I called this particular fraud their "One in the Same Fraud" (Ex 8, Sec's I-B; II-A) (they also use this Fraud here by tying this action to Judge Snow's ruling in my first Case here [Cmplnt Sec II-I]).

The State Court became very well informed about Defendants' criminal acts, both by pleadings such as Ex's 6/7/8 here, and by the Hearing held in that Case on 2/22/19, as described in Cmplnt Par's 69-71 (that Hearing, Cmplnt Ex 19, can be heard/seen at youtube.com/watch?v=MUqIZbc4WCM]. I also have the original disk I received from the State Clerk of Court, which was the source for my putting this video on YouTube.)

Defendants, nor that Court, not addressing Defendants' criminal acts, or the Defendants' frauds on the Court, gave the wrong context for adjudicating my Complaint. This was by the State Court's corrupt case management.

Another part of that "wrong context," is the "Three Forms Fraud," which I just reviewed above in "Sec I-C Anticipating Defendants' Next Fraud on the Court."

Ex 9 here is the State Court's Order of Dismissal. I would like to ask this Court to review that decision with me.

*I wish to emphasize, again, I made none of the claims that the Defendants made here, i.e., their claims are not from my Complaint (e.g., per Ex 1 here), which are the claims the State Court dismissed my Complaint by.*

5

Defendants claimed (Ex 3 here at Ref 3):

"**their failure** to criminally prosecute third persons that **he believes** should be prosecuted."

The home-Court Ruled (Ex 9 at Ref 3):

"**the failure** to criminally prosecute third persons whom **he believes** should have faced prosecution."

The Defendants claimed (Ex 3 at Ref 4):

"**does not cite** to any legal authority that suggests **that he has a federal right** to have third parties criminally prosecuted by state officials."

The home-Court Ruled (Ex 9 at Ref 4):

"**No legal authority has been cited** that would allow plaintiff to pursue his complaint against the State"

The Defendants claimed (Ex 3 at Ref 5):

"when the State **declined to criminally indict a law firm and some of its individual members**."

The home-Court Ruled (Ex 9 at Ref 1):

"The *gravamen of plaintiff's claim* is that the State harmed plaintiff by **failing or refusing to indict a law firm and four of its lawyers**"

As the Court was led by the Defendants' fraudulent transforming of my Complaint from *my* stated legally-valid basis to *their* fraudulent version of my Complaint, and the Court willingly accepted that, and other frauds, the Court *dismissed Defendants' version* of my Complaint, *not my version of my Complaint.*

To be clear, Defendants obtained dismissal by fraud on the State Court, which willingly accepted Defendants frauds, no matter how many times, no matter how many ways, in how many pleadings, I explained their frauds.

*It is not Justice* that the State Court accepted their criminal acts, *and* their frauds on that Court (Sec's IIK/L).

It is in fact, as was made obvious here, corruption, that guided the State Court.

Defendants, shortly after I filed this Complaint, filed a Notice of Lodging Proposed Form of Judgment, asking the home-Court for a dismissal with prejudice.

That Court, of course, gave them that. They will certainly use it in their Reply to this Response.

But as will be discussed below in Sec X, *Res Judicata* (and other) does not apply to judgments that were won by frauds on the Court, whether without or with prejudice.

## I-E.  INTRODUCTION: CONCLUSION

Clearly, my State Complaint was not what Defendants' fraud schemes claimed, nor what that Court cited/ruled.

Clearly, it is by public corruption the State Judge used Defendants' fraud schemes to dismiss my Complaint.

I wish to reaffirm my call for Defendants' Motion to be Dismissed to be stricken, for their again using frauds here, frauds which they know are frauds, by my repeated retorts, and which I have been battling now for years.

6

## II.  BACKGROUND

After an investigation by AGO Special Agents, Snell & Wilmer was approved in late 2014 to be criminally charged along with 2 of my former employees, by then AG Horne (Cmplnt Sec IIA; Ex's 1/2; and Sec II, Par 14).

In early 2015, new AG Brnovich was called on to pay a political debt to Snell, and Chief Paul Ahler wanted to advance his son's career at Snell. So they enlisted others in the AGO, to forge documents, and other, to "exonerate" Snell. Ahler was Screened for Conflicts, but see his signatures, so Criminal Conflicts: ARS 38-510A1; others assisting, so Facilitation: 13-1004; planning these acts, so Conspiracy: 13-1003; and etc (Sec's IIB-D).

***This series of criminal acts to exonerate Snell is what this Complaint is about...not what I felt about Snell.***

Next, the AGO fired the 2 longtime lead Agents on my cases; I was removed as the victim of active cases that had been in my name for more than 4 years (ending some restitution); they dismissed cases against former employees who had already signed Plea Agreements (ending more restitution; ***and further burying the Snell Case***); they stopped seizing and liquidating assets to my benefit based on a $45m Lien against 10 former employees (Damages detailed below in Sec VI); they closed my remaining investigations; when they closed my cases/ investigations, they denied my rights to Confer, ARS 13-4419A; and etc (see Cmplnt Sec II-H Supporting Acts).

Then, the AGO withheld records from me (Sec V-A Tolling), and the public at large; and threatened those fired Agents to prevent them from testifying in my Complaint here, which was dismissed for want of evidence.

***It is clear now, they withheld evidence, and threatened potential witnesses, to hide their criminal acts.***

But after two years of struggling to obtain more evidence, I filed a new Complaint in State Court, where a Judge corruptly ignored the AGO's own internal records that document their criminal acts; accepted the AGO's defense that they are above the law; ignored Tolling; ignored frauds on the Court by the State's counsel (the Judge's former firm); and then that Judge dismissed my Complaint.

My first Complaint here was based on limited evidence, as the AGO was withholding records from me.

So that Complaint was based on incomplete information, which resulted in claims that were not correct, and as Defendants' criminal acts were hidden in those withheld records, I found no exceptions for Federal Jurisdiction.

Defendants have used my first Complaint as a paradigm to claim my succeeding Complaints are the same.

Defendants have included this Court's dismissal under Judge Snow as their Exhibit 1 to support their fraud that my first Complaint here is the same as this one (8 lines into their Motion), and as Judge Snow ruled in that Case, so too must this Court rule here (as described above in Ex 8 here, the "One in the Same Fraud" [Cmplnt Sec II-I]).

To be clear, I am not suggesting Judge Snow was wrong in his ruling. My allegations then, were based on very limited evidence, and were for entirely different allegations/evidence from my State Complaint, or this Complaint.

7

## III. THIS COMPLAINT IS AN ARIZONA STATE, ALL-IN *RESPONDEAT SUPERIOR* COMPLAINT

When preparing to file this Complaint, I was not certain if it should be against the 6 AGO Officials seen in the below series (Sec IV) of AGO records ("person' being important to a 42 USC Sec 1983 claim); and other State Officials I have encountered on this journey, or simply the State as a whole. I chose the later, to be explained here.

Included in my decision for who/which parties should be the defendant(s), is that when the AGO started on its rampage committing what I call "Supporting Acts" or "other acts" (Cmplnt Sec II-H), I went to the Criminal Superior Court handling the several criminal cases of my former employees, and others, and asked that Judge to take action against the AGO to stop their rampage (Ex's here, 11, 12, 13; and Ex 14, see Dkt Entries on 1/19/16).

That Judge said she had no jurisdiction over the AGO.

So I went to the Arizona Supreme Court (Ex 15 here), who declined jurisdiction (Ex 16), saying that Superior Court had original jurisdiction (something I did not know at the time as being long well settled law).

When I returned to that Superior Court Judge, she said she did not know what jurisdiction the Supreme Court was referring to, and allowed the AGO to continue its rampage (e.g., dismissing cases, Ex 18, Dkt on 1/12/17).

I then went to the Governor (Ex 17). In refusing to intervene, his Chief of Staff said there was nothing the Governor could do. I did not know at the time, that Snell was both his personal and gubernatorial law firm; that his on-staff general counsel came from Snell; and that the Governor had appointed at least 10 Snell attorneys to various Arizona Government positions. Nor did I know the Executive Branch could appoint a Special Prosecutor.

My State Representative then took me to the floor of the House and called AG Brnovich out for his actions...but no one in the House was willing to support my Representative's call for answers (Ex 18).

I will also mention here that Defendants have played games with Service, such as in my first Complaint here, the AGO would not Waive (violating ARCP Rules 4.1/4.2) nor accept Service for Officials named as Officials in my Complaint/Summons, as they claimed that even when they are named as Officials, they must be Served outside of the AGO. Due to Defendants playing games with Service, I asked this Court for Effective Service (Ex 19 at Ref 1/2; and Ex 20 at Ref 1/2). Please see CV2016-01249, Dkt Entries 8 and 9 on 5/18/16 (Ex 21). I note as these parties are long-time law enforcement officials, their personal information, e.g., home addresses, are not publicly available.

As well, I again named several Officials in my State Complaint, but other games were played there, and so I amended that Complaint to remove their names (Ex 22, Dkt Entry on 9/17/18).

So, back to who I was going to name as the Defendant in this case: It struck me that 6 AGO Officials; a Superior Court Judge; the Arizona Supreme Court; the Governor; and the House of Representatives; all created a very large "*Respondeat Superior*" for the State, so I named the State as Defendants (plural).

8

*By a number of AGO Officials repeatedly committing criminal acts, over a considerable period, they voided any immunity they/the State may have had, and by all other branches of the Arizona Government turning a blind-eye to the AGO's criminal acts, they all made the State liable as Defendants, by several legal theories, to be seen.*

If I have errored in naming the State, as a whole, Defendants, by *Respondeat Superior*, I ask the Court to allow me to take leave to amend to add individual names (particularly as related to 42 USC Sec 1983).

If the Court Orders me to Take Leave to Amend in individual's names, I ask the Court to include in its Order that US Marshalls Serve the individuals, as no one but a Marshall will be able to find and Serve such State Officials.

## IV. WERE DEFENDANTS' ACTS REALLY CRIMINAL?

I ask the Court to refer to Cmplnt Sections IIB through IID to review Defendants' documented criminal acts.

The Arizona Attorney General before Mark Brnovich, Tom Horne, approved investigating suspected criminal activity Snell appeared to be involved in, to later approve criminally charging three Snell attorneys, and Snell itself as a law firm (the "Snell Parties"), and two other Snell Case suspects, both former employees of mine.

The events here started with Chief Prosecutor Paul Ahler giving notice (Cmplnt Ex 6, Ref 1) that he was conflicted with the prosecution/continuing investigation (Ref 2) of the Snell Case (his son is an attorney at Snell).

Ahler was then Screened by his boss (Ref 3), Don Conrad, the then Chief of the Criminal Division.

But internal AGO records show that Conrad and Ahler, and other Defendants, committed criminal acts using Ahler's Screen to exonerate the four Snell Parties (Cmplnt Ex's 6/7; and 10-15).

Several of Conrad and Ahler's criminal acts can easily, quickly, and unequivocally be seen in just two Ex's (Ex's 6/7), which are AGO records, and are described in my Complaint Par's 14-45.

Their criminal acts include, by AGO internal records (Complaint paragraph number noted first):

26. Ahler being Screened, but completing/signing this Form is **Criminal Conflict of Interest (ARS 38-510).**
29. Conrad enabling Ahler to participate in completing this Form is **Criminal Facilitation (ARS 13-1004).**
31. Conrad and Ahler discussing Ahler's completing this Form, so he could commit Criminal Conflict of Interest, makes their cooperation, and Conrad's Facilitating Ahler, **Criminal Conspiracy (ARS 13-1003).**
36. Conrad and Ahler forging the results/contents of the just above named records (Par 33), to remove the Snell Parties' names and their participation in the Snell Case crimes, is **Criminal Forgery (ARS 13-2002).**
37. Conrad and Ahler discussing their forging the description of the Snell Case crimes and suspects names makes their cooperation in this matter **Criminal Conspiracy (ARS 13-1003).**
38. Ahler giving legally required notice of being conflicted, so Conrad could then issue a Screen of Ahler, so they could then commit criminal acts behind that Screen, is a **Fraudulent Scheme and Artifice (ARS 13-2310).**
39. Conrad and Ahler exonerating the Snell suspects through the above series of criminal acts is Obstruction of Justice, known under Arizona law as **Obstructing a Criminal Investigation or Prosecution (ARS 13-2409).**
40. At least two of the above criminal acts qualify as "predicate acts," thusly, Conrad and Ahler (and others, to be seen) operated the State as a criminal enterprise, and thereby committed **Racketeering Activity (18 USC §1961).**

This list of 8 criminal acts is only an overview of what Conrad/Ahler committed together in violating various

laws, there are many more criminal acts to be alleged for their acts in violating Federal law (e.g., 42 USC §1983; 18 USC §'s 241 and 242); and in acts they committed with/by the four additional Defendants seen in Cmplnt Par 46, Ex's 10-15 (also all AGO internal records), violating both Federal and State criminal and civil statutes.

*If the Defendants had wanted to properly reverse the approval to charge the Snell Parties by the previous AGO Administration, they (Defendants) would not have needed to commit criminal acts to "decide" to do so.*

With due respect to the Court, I would like to comment that this Complaint is a civil one; that it is against the State, _not_ Snell for their criminal acts. All I need to achieve to prevail is a preponderance for the State's liability.

## V-A. STATUTES OF LIMITATION/TOLLING GENERALLY

I covered the possibility of Tolling in my Complaint, Sec III, which I incorporate here.

Defendants provided records of my cases in response to Public Records Request ("PRR") until late 2015, but then stopped (see Example 1 below). Please see Cmplnt Par 59, and Ex 17 (noting Cmplnt Ex's 1-3 and 9).

Defendants refusing to respond to PRR's was a part of their "Supporting Acts" (Cmplnt II-H).

But none of the records provided showed what was "going on behind the curtain" (behind Ahler's Screen).

As the AGO would not respond to requests of any kind from me, such as my rights to Confer under ARS 13-4419A as they were closing and dismissing my cases, I used alternate sources ("Alternate Sources") to obtain records.

I alleged in my first Complaint here that based on the 4 key pieces of evidence I had at that time, the AGO was not providing Equal Protection, and had violated Due Process, and other.

I made these allegations as the Snell Investigation Written Criminal Report (Cmplnt Ex 1); and the Snell PowerPoint Report (Ex 2), both of which concluded the Snell Parties committed criminal acts; the 5th Snell Case suspect, Deborah Dubree had pled guilty to and described Snell's leadership in the Snell Case Crimes (Ex 3); and the 6th suspect Daniel Esposito had been indicted for conspiring to commit fraudulent schemes and artifices _with Snell_ (Ex 9 at Ref's 1/2). So I concluded that the Snell Party suspects should have also been indicted.

I had no records showing Defendants' criminal acts, as those acts were hidden in the withheld records.

*Defendants, in defending my first Complaint here, committed fraud on the Court, as they knew what had actually happened, and they concealed and lied about those records and truths. **These early acts established Tolling.***

My Alternate Sources would make Public Records Requests regarding investigations being conducted and cases being prosecuted in which I was the victim, and then each time forward me what they had received in response.

Evidence of this time consuming process can be seen in my previous Complaint here, CV2016-01249. Four examples of the delays and my piecemeal access to AGO records follow (noting, there are more examples);

1.) The Arizona Daily Independent filed a Public Records Request ("PRR") with the Attorney General's Office on 2-16-16 (Ex 23 here, on pg 2 at Ref 1), asking:

10

"Can we get all documents related to victim Will Graven? It is our understanding that several media outlets have made the same request."

The AGO responded later that day saying (Ex 23, on pg 2 at Ref 2);

"I am in receipt of your public records request below. This is currently an ongoing investigation and your request will be fulfilled at the time that we're able to fulfill it for other media outlets."

However, as the Arizona daily Independent ("ADI") knew that my last three cases had been closed by AG Brnovich on 1/8/16 (see Ex's 24, 25, and 26 below), ADI replied (Ex 23, on pg 1 at Ref 3):

"We have copies of letters from the AG's office stating that the cases are closed. Those letters are dated January 8. Can I get the documents for those cases? They are in regards to Snell & Wilmer, Victorville, and Rubble."

The AGO did not respond.

ADI emailed the AGO again (Ex 23, on pg 1 at Ref 4):

"Just wanted to touch base. We still haven't received a response to the question below"

Finally, on 2-24-16, the AGO responded saying (Ex 23, on pg 1 at Ref 5):

"I've put the question in but haven't heard an answer. I will let you know as soon as I hear anything in return."

On 2/26/16, ADI received notice that their contact at the AGO had put in a 2nd request (Ex 23, on pg 1 at Ref 1).

Approximately 3 months later, the AGO will provide some materials in response to the PRR by the Arizona Daily Independent. The last response will be in May of 2018, when the AGO claimed there are no records of Will Graven cases with any Paul Ahler involvement (I already had some of the records here showing his involvement).

Following that fraudulent response, I filed a Motion for Spoliation in my State Case (Ex 5 here at 6/8/18).

2.) By my Request for Judicial Notice filed here in CV2016-01249 on 5/18/16, Docket Entry 12 (Ex 21),

3.) By my Motion for Relief (Ex 27), filed on 8/7/17, Docket Entry 29 (Ex 28), which was based upon then just obtained additional records (which see Ex 29 just below) (the result of materials obtained through another PRR by one of my Alternate Sources, which was followed by a Request for Judicial Notice, which see next).

4.) By my Request for Judicial Notice filed in this Court on 9/5/17, Docket Entry 31 (Ex 28), the result of materials obtained through a PRR by one of my Alternate Sources (Ex 27 at Ref 1, pg 5; and Ref 2, pg 7).

Over the course of approximately 2 ½ years (from late 2015 through May of 2018), as I struggled to obtain more evidence, I found Cmplnt Ex's 6 and 7, and 10 through 15 in amongst several responses to multiple PRR's of thousands of pages forwarded to me by my Alternate Sources (as a lone Pro Per, that took quite some time).

From these additional 11 Exhibits, I was able to see Defendants' criminal acts (Cmplnt Sec IIA-D).

Bottom-line to Ex's 4–7 and 10–15 having been withheld: If I had those Exhibits when I first came here on 4/27/16, I would have been able to make the right allegations, in the right Court, for the right causes of action.

I would also like to remind the Court of Defendants' threatening witnesses (Sec II above; Cmplnt Sec II-H).

11

And I would also like to remind the Court of their Frauds on the Court as described throughout my pleadings.

Withheld records; threatening witnesses; and frauds on Courts, clearly all support Tolling.

## V-B. STATUTES OF LIMITATION/TOLLING OF ARIZONA TORT STATUTES

As described in my Cmplnt Sec II-H Supporting Acts, my lead Special Agent was put on-leave on Friday 12/18/15, and fired the following Tuesday 12/22/15; the State acted on 1/15/16 to remove me as the victim in the several criminal cases in which I had been the victim for more than 4 years (Ex 10 here); and the State closed the Snell Case and two other case on 1/8/16 (Ex's 24, 25, and 26 here [this was Conrad's last day as Chief of the Criminal Division, Ahler replaced him the following day]). I then filed the three actions in Arizona Criminal Superior Court described in Sec III here against the AGO (Ex's 11, 12, and 13 here). The State started dismissing the rest of my cases approximately 1 year later. I think it is fair to say by 1/19/16, I knew I was being injured, albeit, I did not know the detail of the acts causing the injuries or how extensive the injuries would become.

On 1/19/16, I filed a Notice of Claim against the State (Ex 29 here); which the State acknowledged (Ex 30). My Notice was filed within the period from injury allowed by Arizona statute. The State Declined on 3/2/16 (Ex 31).

I filed my first action here on 4/27/16 (Ex 32 here), also within the period allowed by Arizona statute.

The allegations of my 4/27/16 Complaint here were just plain wrong, as the AGO was withholding records.

Defendants, in defending my first Complaint here, committed fraud on the Court, as they knew what had actually happened, and they concealed those truths and records. My first Complaint here was thereby dismissed.

When I obtained additional records, I filed a Motion for Relief here (8/7/17). I did not have the whole picture, as I had not yet obtained all records needed to accomplish that. Defendants committed fraud on the Court when they lied about the new records I had obtained (those lies were an early version of 3 Forms Fraud; Ex 28, Entries 33/34).

When I filed for Relief, they knew what had actually happened, but they concealed those truths and records.

When I finally did obtain enough records to know what most of the picture was, I filed an action in State Court, where I encountered Arizona corruption at its worst.

I have asked this Court to declare Tolling, that overcomes any timing issues the Defendants have raised here.

## VI-A. DAMAGES

Defendants have described my Complaint as being about my feeling or believing the Snell Case suspects committed crimes, and my wanting or having a right to have them indicted, but that the State failed; did not; declined, or refused to indict the Snell Party suspects. So in claiming I suffered no injuries, the Defendants said:

"Simply **alleging a failure to indict** a third party Graven **wanted** indicted doesn't plead any "distinct and palpable injury" to him."

However, as that is not what my Complaint is about, their argument for my not having been damaged by

12

their description of my Complaint means nothing here (except it is fraud on the Court).

What does mean something, is what my Complaint is actually about...that is what I will respond by here, describing my damages as I actually suffered by their documented criminal acts.

The Defendants describe my claim for damages as only being about stolen Justice and restitution based on their having exonerated the Snell Parties, and their liability for that.

But my Complaint claims damages for exonerating the Sell Parties *and* "Supporting Acts" and "other acts" which caused me to lose much more Justice and restitution than just the Snell Parties' exoneration.

But first, as the Snell Case exoneration is what the Defendants have responded to, let's look at what was known about the Snell Case, and the likelihood of my receiving Justice or restitution, before the Defendants acted:

1.) We have Snell & Wilmer refusing to give me my client files, for years
2.) We have Snell fighting a Grand Jury Subpoena to give the AGO (under Tom Horne) my client files
3.) We have the Snell Party suspects refusing to be interviewed
4.) We have the Snell Parties hiring renowned Arizona criminal defense attorney Michael Piccaretta
5.) We have a one year investigation led by the Assistant Chief and Special Agent of the Special Investigations Section (who is a former Special Agent for the FBI and a former Covert Operations Officer for the CIA)
6.) The investigation was detailed by Agents and the assigned Prosecutor in a 57 page Written Report, with 157 exhibits/pieces of evidence (Cmplnt Ex 1)
7.) We have a PowerPoint, created by the Agents and the Prosecutor on the Snell Case, that is almost 3hrs and is over 1,000 slides, having been completed for use in presenting the Case to the Grand Jury (Cmplnt Ex 2)
8.) We have the assigned prosecutor guaranteeing success in prosecuting the case
9.) The results of the investigation were reviewed by (under AG Horne) 2 other Special Agents; the other Assistant Chief and Special Agent of the Special Investigations Section; by the Chief Investigator; by the Chief Prosecutor; and by the Chief of the Criminal Division; with all confirming they agreed the 6 Snell Case suspects should be charged (Snell as a firm; 3 Snell attorneys, and 2 of my former employees)
10.) Following 1 through 9 above, the six Snell Case suspects were approved for Charging
11.) We have the Snell Parties being charged for two sets of crimes: first, for committing criminal acts with two of my former employees; and second; for committing crimes against me in civil court (a Jury would certainly note this repeated and related behavior)
12.) Then, suspect Dubree pled guilty (1 of 2 former employees), signing a Plea Agreement with a Factual Basis Addendum detailing how she went to her old friend at Snell & Wilmer, attorney Jim Sienicki, and asked for his help to get "her" company back, and how he designed and led a plan (which was criminal) to help her; and etc
13.) Suspect Daniel Esposito was charged for Conspiracy to Commit Fraudulent Schemes and Artifices with Outside Counsel (Snell & Wilmer)
14.) Defendant Esposito offered to come in and roll-over to testify against Snell & Wilmer in that Case (which is when all-hell broke lose at the AGO under Mark Brnovich and the Defendants began committing the Supporting Acts to assure that the Snell Party suspects could not be charged, by anyone, as described throughout)
15.) We have State Officials committing criminal acts to exonerate the Snell Parties

This is a civil case. I am not trying nor do I need to convict Snell beyond a reasonable doubt to prevail here.

A Jury would have no trouble seeing 1-15 as a preponderance for the Snell Case crimes, and so the State's liability.

## VI-B. A CLOSER LOOK AT WHAT I INCLUDED IN MY COMPLAINT REGARDING DAMAGES

While the Defendants have addressed the Snell Case, and what Justice and restitution I lost only by the

13

Defendants committing criminal acts to exonerate the Snell Parties, they did not address "Supporting Acts" and

"other acts" as I described in my Complaint (Sec II-H). Those acts, by which I also lost restitution, include:

1.) The AGO removed my name as the victim of all the charged cases and investigations (7 cases/investigations at the time), which caused me to immediately lose restitution;
2.) They stopped seizing and liquidating assets to my benefit based on a $45m Lien against 10 former employees; 8 of whom had been charged; 5 of whom had pled guilty; the 9th had signed a Plea Agreement; and the 10th had completed negotiating a Plea Agreement, and was about to sign it.
3.) No, after the first and second bullets here, I could no longer afford an attorney (likely a part of their intention);
4.) The AGO dismissed a case against the City of Victorville Case, Criminal Investigation P0022014002355; this Case was ready to be sent to the Grand Jury; This case involved executives of mine working with City of Victorville Officials forging a Sales and Purchase Agreement for $70m worth of aircraft hangars I had built for and sold to the City of Victorville, CA. The basic forgery cost me $8.5m, plus damages done to me by not receiving that $8.5m. The AGO planned to use the same 2 provision proposal with the City of Victorville as they were going to use with Snell & Wilmer, because the Victorville crimes included city Officials. (Yes, I had a perfect storm: crooked executives who sought-out other crooked parties to commit crimes with.
5.) The AGO dismissed the Emery Rubble Case, Criminal Investigation Case No.: P002201001134; this Case was ready to be sent to the Grand Jury; one of the defendants of this Case was to be an important witness in the Victorville Case, and other Cases; the damages in this Case were known to be at least $500,000;
6.) The AGO dismissed two case against Michael Martin: CR2015-002486-001; CR2014-001649-001; Martin, as the former President of several of my companies, was the "ringleader" of the "crime family" that had formed within my companies, involving several employees, as is now obvious;
7.) The AGO dismissed a case against Michael Groh: CR2014-001649-005; Groh had signed his Plea Agreement several months earlier; Groh was my former Chief Financial Officer, and knew how the "Martin Crime Family" had moved my funds; assets; and businesses from my companies;
8.) The AGO dismissed two case against Daniel Esposito: CR2014-001649-002; CR2015-002486-002 (this is the Case Esposito was charged for the Snell Case crimes); Esposito had agreed to testify in the Snell Case, and others; Esposito was the main point of contact for the Snell Parties in those crimes as he was my in-house general counsel and personal attorney;
9.) The AGO dismissed two case against Deborah Dubree: CR2014-001649-006; P0022015000615 (this is the Case Dubree was investigated for the Snell Case crimes, and then Pled Guilty to); Dubree had signed her Plea Agreement, and was to testify in the Snell Case; Dubree was personal friends with Snell Party suspect Jim Sienicki, and is who Dubree asked for help from, which started the Snell crimes moving; Dubree was a former Senior Vice-President of certain of my companies;
10.) The AGO dismissed a case against Pamela Johnson CR2014-001649-003; she had agreed to "roll-over;" Johnson was my Controller (who worked under Groh);
11.) The AGO dismissed a case against Scott Hesse: CR2015-006239-001; his Plea Agreement had been signed, which included his testifying in all cases; Hesse was a Senior Vice-President of several of my companies;
12.) The AGO dismissed a case against Marc Stricker: Criminal Report P0022015000920; his Plea Agreement was complete and ready for signature (this would have included testifying in the Snell Case, and others); Stricker was a Senior Vice-President of several of my companies;
13.) Over 100 interviews had been conducted in the above investigations; dozens of search warrants had been executed; and over 10 terabytes of evidence collected; over a 4 year period, by several Special Agents;
14.) There were additional investigations underway.

## VI-C. DAMAGES: HOW THE AGO UNDER TOM HORNE PLANNED TO HANDLE THE SNELL CASE

The Defendants have left out the approach that the AGO under AG Tom Horne was going to use to settle

"out of court" with the Snell Parties. Briefly, that plan to bring the Case to an acceptable conclusion was to have

the indictments of the Snell Case suspects sealed, to then call senior partners in from Snell to inform them that

their firm and 3 of their attorneys had been indicted (and the other two suspects [who had agreed to testify]).

Then, the AGO was going to offer a deal to Snell to settle, that was to be based on 2 simple provisions:

1.) Snell & Wilmer, the firm, would fire their 3 attorneys that had been charged
2.) If Snell & Wilmer itself, and their 3 attorneys, reached a financial settlement with me, the charges against Snell itself, and possibly their 3 attorneys, would be dropped

Approximately 16 different Snell & Wilmer attorneys in several of their offices worked on my files.

Each Snell attorney has a substantial amount of malpractice coverage.

Snell & Wilmer as a firm has substantial coverage.

As this Court will know,  90% plus of all criminal cases are settled before trial.

It is very likely that Snell and I would have reached a settlement without their going to trial, or that they

had been charged even becoming publicly known.

Defendants' efforts to make it sound as if there would never have a conclusion that saw me receive Justice

and collect substantial restitution is simply not what have very, very likely happened.

## VI-D. DAMAGES: CONCLUSION

I lost/they stole a lot of Justice...and a lot of restitution, both by Defendants' exonerating the Snell Parties, and

by their "Supporting Acts." For the Defendants to only address damages from their exonerating Snell & Wilmer

is a great example of their limited response to/manipulation of the facts of my Complaint as a whole.

## VII. FAILURE TO STATE A CLAIM

Defendants claim that I have failed to state a claim is based upon their description of my Complaint;

"Simply **alleging a failure to indict** a third party Graven **wanted** indicted doesn't plead any "distinct and palpable injury" to him."

But as my Complaint is not based on their fraud(s), their claim of my failing to state a claim fails.

As well, Defendants claiming "The FAC also fails to state a valid claim for relief." is a legal conclusion they

claim, *without actually responding to the allegations and evidence of that summary*, so it is meaningless.

I believe by my review of Damages, and this Response, I have made it clear, I have stated many valid claims.

## VIII. MY STANDING

Defendants claim that I have no Standing is based upon their description of what my Complaint is allegedly about;

"Simply **alleging a failure to indict** a third party Graven **wanted** indicted doesn't plead any "distinct and palpable injury" to him."

And their claim I have no standing is based upon their limited description of the damages I suffered.

My Section for Damages, and other, well settled the issue of whether or not I was injured, and so have Standing.

Defendants' argument that I have no Standing is based upon their frauds on the Court, so it has no validity.

15

## IX. PROSECUTORIAL DISCRETION

Defendants declaring themselves above the law through prosecutorial discretion is a farce, and affront to Justice. That the State actually put that into writing, literally claiming that they can commit criminal acts is stunning (but then, apparently, they believe it).

I addressed Prosecutorial Immunity in my Complaint as Sec's II-K/L, and incorporate those 2 Sections here.

## X. *RES JUDICATA*

Defendants' claiming Res Judicata is based on the recent dismissal of my Complaint in State Court.

But that dismissal was achieved through many frauds on that Court. A "victory" in a court based upon fraud on the court is considered a nonexistent event/case. Some 90 years ago, our US Supreme Court established the fraud exception to *Res Judicata* in *Riehle v. Margolies*, 279 U.S. 218, 225 (1929).

I have described a number of frauds on the State Court by Defendants

Defendants did not just commit a single "error" in their fraudulent efforts against my State Complaint, they repeatedly used fraud (Cmplnt Sec III-B et al). I have also described Defendants frauds in my first Complaint here.

Shortly after I filed this Complaint, Defendants filed a Notice of Lodging Proposed Form of Judgment, asking the home-Court for a dismissal with prejudice.

That Court, of course, gave them that. They will certainly use it in their Reply to this Response.

But, *Res Judicata* (and other) does not apply to judgments that were won by frauds on the Court, whether without or with prejudice.

Therefore, *Res Judicata* does not apply here.

## XI. STATE SOVEREIGN IMMUNITY AND THE 11TH AMENDMENT

The 11th Amendment was never meant to be a shield for state officials to commit errant acts behind.

Defendants have presented immunity in absolute terms that exists only under very specific circumstances, and those circumstances do not include fraudulent nor criminal behaviors, obviously...in fact, fraud and other criminal acts are always exclusions to immunity (*this is* the United States, where no one is above the law).

All governmental sovereign immunity, be it for an official, a local, state, or national governmental entity, is voided through errant acts by officials, thereby making that official, and possibly, the governmental unit, subject to the same tort law as private citizens.

By their acts, Defendants have voided Arizona State immunity under both the 11th Amendment and State declared immunity, and have created multiple liabilities for the State

I would like to note my earlier Section IV *Respondeat Superior* here, and the effect that has on immunity.

The State of Arizona itself does not even see their immunity an absolute, nor a license/shield to commit

16

errant acts with/behind, and has established when it forgoes its immunity.

Arizona public entities and employee were historically protected against tort liabilities, as they were in other jurisdictions, by common law governmental and state sovereign immunities. However, in 1963, the Arizona Supreme Court rejected the governmental immunity doctrine, in *Stone v. Arizona Highway Commission*, (1963)93 Ariz. 384, 381 P.2d 107. Subsequent decisions by lower courts then restored governmental immunities in limited contexts (e.g., *Massengil v. Yuma City*, (1969) 104 Ariz. 308, 656 P.2d 597). In *Ryan v. State*, (1982) 134 Ariz. 308, 656 P.2d 597, the Arizona Supreme Court reasserted its position that governmental immunities should be limited. In *Ryan*, the Court stated:

"Employing the spirit of the Stone decision, we propose to endorse the use of governmental immunity as a defense only when its application is necessary to avoid a severe hampering of a governmental function or thwarting of established public policy. **Otherwise, the state and its agents will be subject to the same tort law as private citizens**." Id. at 311. (Bold underline by Plaintiff.)

The Court recognized that immunity could be eroded by future decisions on a case-by-case basis and invited legislature intervention on the issue. The Arizona legislature responded to the Supreme Court's invitation for legislative intervention and enacted the "Actions Against Public Entities or Public Employees" statute. A.R.S. §§12-820through 826, also known as Arizona Tort Claims & Immunities.

ARS 12-820.05(B) describes when a public entity can be held liable for tort claims:

"B. A **public entity** is not liable for losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee **unless the public entity knew of the public employee's propensity for that action**." (Bold underline by Plaintiff.)

In this Case, we have substantial proof that the "public entity" (be that the Attorney General's Office; the Arizona Judicial Branch; the Governor's Office; the House of Representatives; and thusly the State itself), "knew of the public employee's propensity for that action."

Arizona Tort statues also void immunity for liabilities arising from acts government employees commit when the employee intended to cause the injury that occurred. (A.R.S. §12-820.02).

Turning to the 11th Amendment to the United States Constitution, which the Defendants have held up as a silver cross (also citing *Rooker-Feldman* as if it has no exceptions, which see below]) to stop this United States Federal Court from exercising its Jurisdiction over even Federal Rights and Statutes, I turn to the 14th Amendment, Section 1 (I hereby incorporate Cmplnt Sec II-N):

"No state shall take or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws."

And the 5th Amendment (I hereby incorporate Cmplnt Sec II-M):

17

"...nor be deprived of life, liberty, or property, without the due process of law;..."

Defendants exonerated multiple parties (not just the 4 Snell Party suspects) who had committed criminal acts against me; Defendants removed my name from multiple cases from which I was receiving restitution; Defendants closed other investigations and even cases ready for the Grand Jury; etc, etc...*they deprived me of life, liberty, and property by crushing the sacred American rights of Due Process, and Equal Protection.*

Defendants violated my Civil Rights under 42 USC Sec 1983, as several of the employees are Officials from the Attorney General's Office. I hereby incorporate Cmplnt Sec II-O into the this Response.

Defendants wish to make an issue of "person" in 1983. I again refer to Sec IV, *Respondeat Superior*.

If my alleging *Respondeat Superior* for several AGO Officials who violated my Civil Rights under 1983 is not sufficient to overcome their argument of "person," then as I did in Sec IV, I ask the Court to allow me to take leave to amend my Complaint to include those almost-impossible to Serve individuals.

I would like to note that another aspect of my claims is that the Governor; *et al*, refused to intervene.

And I would also like to note that the State gives aggrieved parties the right to bring a 1983 claim in State or Federal Court (Arizona Agency Handbook, Chapter 8):

**"8.16.4 Private Citizen Suits.** ...Persons claiming that a public officer, employee, or board member had a pecuniary interest in making a decision against them may also file suit in state or federal court alleging a violation of their civil rights pursuant to 42 U.S.C. § 1983."

Continuing with legal claims that voided the State's immunity is that Defendant Officials operated the State, with all branches of State Government contributing as if the State was a RICO enterprise, under Federal law, with 2 or more of their criminal acts qualifying as Predicate Acts (I hereby incorporate Sec II-B Par 41).

Defendants have cleverly misled the Court in how they cited *Aldabe v Aldabe*, claiming that statutes for criminal acts do not provide a basis for civil liability. It may be the statues do not, but the injuries do.

There was some confusion about the *Bivens* remedy for piercing governmental immunity after *Ziglar v. Abbasi*, but our Ninth Circuit made it clear in *Lanuza v Love* that egregious behavior is yet reason to pierce immunity:

"The panel affirmed the district court's order denying qualified immunity to ICE Assistant Chief Counsel Jonathan Love because qualified immunity was not meant to protect those who are "plainly incompetent **or those who knowingly violate the law**.""

Governmental officials, be they Federal, State, or local, are not shielded from egregious acts.

## XII. JURISDICTION

Defendants claim this Court cannot exercise Jurisdiction by the 11th Amendment, or by the Rooker-Feldman Doctrine. By Defendants description of "my feeling" Snell should have been charged, this Court would have not had jurisdiction...but my Complaint is not about their fraudulent description of my Complaint.

18

By Defendants acts (including the State Court that dismissed my State Complaint), there are many Federal issues present here.

I have already addressed the 11th Amendment above in Sec IX.

As to Defendants raising the Rooker Feldman Doctrine, the Ninth Circuit made it very clear in *Noel v. Hall*, 341 F.3d 1148, 1162 (9th Cir. 2003) that fraud is an exception to Rooker-Feldman:

"If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court. **If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction.**" (Bold underline by Plaintiff.)

Defendants did not just commit a single "error" in their fraudulent efforts against my State Complaint, they repeatedly used fraud.

The fraud exception to Rooker-Feldman is a logical extension of *Riehle v. Margolies*...as winning by fraud is not American Justice.

As well, in that a judgment won by fraud on the Court is treated as if there had been no case, at all, this Court is not even reviewing a former State Case.

But simply, Rooker-Feldman gives us an exception for a state case not being bared by its origin as a former state case.

## XIII. MOTION TO STRIKE

For the reasons outlined throughout this pleading, I Motion the Court to Strike Defendants' Motion to Dismiss.

## XIV. CONCLUSION

Defendants have no defense except fraud on the Court (as their criminal acts are so well documented).

I pray this Court will reverse the injustices I have suffered as a result of Defendants' errant acts.

I thank the Court in advance for its time and efforts in adjudicating the matters herein.

Respectfully submitted this 15th day of August 2019, by: _____, In Pro Se.

Plaintiff Will Graven

Original of this Response and Motion was filed the Clerk of District Court this 15th day of August, 2019.

Defendants to be Served as required by the Federal Rules of Civil Procedure, or as agreed with Counsel.

VERIFICATION of the above Response, Motion and Exhibits is on the following page.

19

## VERIFICATION

STATE OF ARIZONA      )
                           )ss:
County of Coconino      )

William A. Graven, being first duly sworn upon his oath avows that he has written and therefore read this Response and Motion, and that the allegations contained therein are true and correct, based upon his personal knowledge, except as to allegations made upon information and belief, and as to such allegations and information, he believes them to be true.

As well, William A. Graven, being first duly sworn upon his oath avows that he has reviewed all Exhibits, and swears that each is a true and correct copy of the original, based upon my personal knowledge.

Should I be called upon to testify under oath for either this Response and Motion, and its contents, or the Exhibits attached thereto, I would be able to do so.

DATED this 15th of August, 2019.

-----------------------------------
William A. "Will" Graven

Subscribed and sworn to before me, the undersigned Notary Public, this 15th day of August, 2019, by Will Graven.

_____
Notary Public

My Commission Expires: May 18, 2022

CYNTHIA L JONES
Notary Public - Arizona
Coconino County
Commission # 545139
My Comm. Expires May 18, 2022

20

# Plaintiff Will Graven's Response
## to
# Defendants' Motion to Dismiss

## Case No.: CV2019-04586

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

## Judge Stephen P. Logan

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 1



William "Will" A. Graven, In Pro Per
2700 S. Woodlands Village Blvd; Suite 300-251
Flagstaff, Arizona 86001
Email: will@willgraven.com; Telephone: 928-890-8825

## IN SUPERIOR COURT FOR THE STATE OF ARIZONA; COUNTY OF MARICOPA

| | |
|---|---|
| In Re: Will Graven,<br><br>Plaintiff,<br><br>v.<br><br>State of Arizona; Governor Doug Ducey; Department of Attorney General for the State of Arizona; Attorney General Mark Brnovich; Assistant Attorney General Michael Bailey; (Former) Chief of the Criminal Section Donald Conrad; (Current) Chief of the Criminal Section Paul Ahler; Assistant Attorney General Joe Waters,<br>Defendants. | ) CASE NO.: CV 2018-00786<br>)<br>)<br>) Case Filed: May 30, 2018<br>) ASSIGNED FOR ALL PRACTICAL<br>) PURPOSES TO THE HONORABLE JUDGE:<br>)<br>)<br>) _____<br>) **COMPLAINT FOR CIVIL LIABILITIES**<br>) **FROM THE BELOW CAUSES OF ACTION:**<br>) **1.) VIOLATIONS OF THE 5TH AND 14TH**<br>) **AMENDMENTS FOR DUE PROCESS**<br>) **2.) VIOLATIONS OF THE ARIZONA**<br>) **CONSTITUTION, ARTICLE II, SECTION 4,**<br>) **DUE PROCESS OF LAW**<br>) **3.) VIOLATIONS OF THE AGENCY**<br>) **HANDBOOK, CHAPTER 8, CONFLICT OF**<br>) **INTEREST**<br>) **4. VIOLATIONS OF A.R.S. 38-501**<br>) **THROUGH 38-511, CONFLICT OF**<br>) **INTEREST**<br>) **5.) PROSECUTORIAL MISCONDUCT**<br>) |

**TRIAL BY JURY REQUESTED**

## I.  INTRODUCTION

This Complaint is already proven, obviously proven, by internal documents from the Arizona Attorney General's

Office, which are in-hand (certain of which are attached as Exhibits), and other evidence also in-hand.



A year-long AGO criminal investigation of 6 suspects resulted in written Approval to charge those Suspects.

Defendant Ahler had a conflict with 4 of the 6 Suspects, so he was screened as required by law and case law.

But AGO documents show that while Screened, along with other (conflicted) Defendants who knew Ahler was

Screened, they were working together behind the Screen to "exonerate" those 4 (well-connected) Suspects.

When the AGO absolved these 4 Suspects, the Defendants continued with a series of other supporting acts,

therefore, I did not receive the justice or the restitution I was due. The Defendants assumed these liabilities to me.

The Defendants' efforts to exonerate those 4 Suspects, including supporting acts, validate this Complaint.

1

# Plaintiff Will Graven's Response to Defendants' Motion to Dismiss

## Case No.:  CV2019-04586

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

## Judge Stephen P. Logan

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 2

Mark C. Dangerfield (Bar No. 010832)
Kevin E. O'Malley (Bar No. 006420)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:    (602) 530-8000
Facsimile:    (602) 530-8500
mark.dangerfield@gknet.com
kevin.omalley@gknet.com
*Attorneys for Defendant State of Arizona*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Will Graven, | No. 2:19-cv-04586-SPL |
| Plaintiff, | **DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| State of Arizona, | |
| Defendants. | |

The State of Arizona (the "State") asks the Court to dismiss Plaintiff Will Graven's first amended complaint (the "FAC"), which suffers from multiple, patent, defects. Indeed, the FAC is frivolous. First and foremost, the FAC is barred by the Eleventh Amendment, which prohibits a citizen from using federal court to sue a non-consenting state.

This Motion is also supported by the attached Certificate of Conferral, certifying that the parties conferred prior to the filing of this Motion.

## PROCEDURAL BACKGOUND

This is now Mr. Graven's third lawsuit asking that he be awarded money damages because the State did not indict a prominent local law firm – Snell & Wilmer – and some of its partners, whom Mr. Graven felt had committed criminal acts. Mr. Graven filed the first such lawsuit in this Court in 2016, CV-16-01249-PHX-GMS (the "2016 Federal Action"). On September 22, 2016, Judge Murray Snow granted the State's motion to dismiss that suit both because it was barred by the Eleventh Amendment and because it

"fail[ed] to state a claim that [was] plausible on its face." 2016 Federal Action, Dkt. 25 at 3. For convenience, we have attached a copy of Judge Snow's Order at **Exhibit 1.**[1]

Graven filed the second such lawsuit in Maricopa County Superior Court in 2018, CV2018-007856 (the "2018 State Action"), based on the same basic legal theory he asserted in the Federal Action. Indeed, to try and evade the bar of the statute of limitations,. Graven referred to his 2018 State Action as "a continuation of *essentially the same case*" that he filed in "both the [2016 Federal Action] and the Ninth Circuit." *See* **Exhibit 3** at p. 3 (excerpts of 6/25/18 Mot. for Approval of Substitute-Effective Service (emphasis added). Indeed, Graven said, his 2018 State Action was "merely my [2016 Federal Action] being refiled in Arizona State Court." *Id.* at p. 4.

In a minute entry issued on April 19, 2019, Judge Connie Contes dismissed Graven's 2018 State Action, finding that Graven's "complaint fails to plead a legally valid basis for a cognizable cause of action against the State and its official." 4/19/19 minute entry at 2; copy attached as **Exhibit 4**. The court also found that Graven's complaint was untimely and barred by the "180-day Notice of Claim statute as well as the one-year statute of limitations for bringing an action against the State or its official." *Id.*

Graven then filed the current federal court action, which suffers from the same defects as his 2016 Federal Action – but is now also barred by the statute of limitations.

I.    **Because of the Eleventh Amendment, the Court lacks jurisdiction.**

The FAC is plainly barred by the Eleventh Amendment, which acts as a limit on federal subject matter jurisdiction. *Demery v. Kupperman,* 735 F.2d 1199, 1149, n. 8 (9th Cir. 1984). Specifically, the "Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Corp.* 951 F.32d 1050, 1053 (9th Cir. 1991). The State does not consent to this suit.

---

[1] Graven didn't appeal that dismissal, but later filed a Rule 60 motion in 2017 (2016 Federal Action, Dkt. 29), arguing that he then had "new evidence" that called for the court to revisit his claims. Judge Snow denied that motion, *Id.* Dkt 35, and Graven appealed that denial to the Ninth Circuit. Without awaiting full briefing, the Ninth Circuit dismissed that appeal as "frivolous." *See* copy of May 21, 2017 order attached as **Exhibit 2.**

2

Although Graven acts *pro se,* because of what happened to his 2016 Federal Action he well knows that the Eleventh Amendment bars this lawsuit. Perhaps Graven thinks that – by having added in the FAC counts for alleged violations of 42 U.S.C. § 1983 and 18 U.S.C. § 241 and 242 – he now has the right to sue the State in federal court. But those counts don't trump the Eleventh Amendment. Moreover, the law is clear that a State is not a "person" as defined in Section 1983, so a § 1983 claim can't lie against the State, regardless of the forum. *E.g. Arizonans for Official English v. Arizona,* 520 U.S. 43, 69 (1997). Nor did adding alleged violations of 18 U.S.C. §§ 241 and 242 to Plaintiff's FAC help surmount the jurisdictional bar of the Eleventh Amendment. In any event, those are criminal statutes, and as the Ninth Circuit has noted, "[t]hese criminal provisions, however, provide no basis for civil liability." *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980) (affirming dismissal of complaint for failure to state a claim).

The Court need read no further to determine that it lacks jurisdiction here, just as Judge Snow determined three years ago. So the case must be dismissed. But should the Court harbor any doubts, the claims in the FAC are also barred by other patent defects, which we discuss below.

## II. In light of the recent decision in the 2018 State Action, the FAC claims are barred by the doctrine of *res judicata.*

Graven's 2018 State Action asserts most of the same claims set forth in the FAC, and is based on the same facts and legal theory as those alleged in the FAC. *See* copy of state-court complaint attached as **Exhibit 5** (excluding exhibits). Hence, the FAC is barred by the doctrine of *res judicata* or claim preclusion. "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir. 2001) (internal quotations marks and citation omitted). The doctrine applies "whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Id.* (internal quotations marks and citation omitted).

3

The first element, "identity of claims," does not require that each claim asserted in the second action was also asserted in the first action. Rather, the test is whether "the two suits arise out of the same transactional nucleus of facts." *Id.*, 244 F.3d at 714 (internal quotation marks and citation omitted). That test is easily met here. In its 4/19/19 minute entry granting the State's motion to dismiss the 2018 State Action, the court summarized Graven's basic legal theory:

> The gravamen of plaintiff's claim is that the State harmed plaintiff by failing or refusing to indict a law firm and four of its lawyers based on familial and political motivations, violating Plaintiff's constitutional due process rights, Arizona laws regarding conflicts of interest, and prosecutorial discretion.

**Exhibit 4** (4/19/19 minute entry at 1-2).

This is the same basic legal theory asserted in the FAC.

In our "meet and confer" prior to filing this Motion, Graven justified the FAC because, he said, his state court complaint did not contain "Causes of Action regarding public corruption; acts violating Federal or State criminal or civil laws; or violating my civil rights." While that's not entirely accurate, it doesn't matter: "Res judicata, or claim preclusion, prohibits lawsuits on any claims that were raised *or could have been raised* in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (emphasis in original).

In the *Owen* case cited above, the plaintiff argued that *res judicata* should not bar his second suit because the causes of action in that suit were "distinctly different" from those in his prior suit. 244 F.3d at 713. In his prior lawsuit, the plaintiff had alleged "wrongful termination and various state law claims based on breach of contract," whereas his second action "alleged Title VII claims of discriminatory termination, hostile work environment, and wrongful retaliation." *Owen*, 244 F.3d at 713. But the District Court – affirmed by the Ninth Circuit – concluded that "[b]oth causes of action [were] predicated on racial discrimination and allege[d] the same circumstances regarding Appellants' terminations"; both suits thus "clearly ar[o]se from the same transactional nucleus of facts" and *res judicata* applied. *Id.*

4

So too here. Both Graven's 2018 State Action and the FAC arise out of the same "transactional nucleus of facts." This is easily seen by comparing Graven's own summary of his 2018 State Action – which Graven inserts into FAC ¶ 67, at p. 9 – with FAC paragraphs 8-43, summarizing essentially the same allegations in the FAC.

Furthermore, Plaintiff's State Action included causes of action for:

(1) "Violations of the 5th and 14th Amendments for Due Process"; (2) "Violations of the Arizona Constitution, Article II, Section 4, Due Process of Law"; (3) Violations of the Agency Handbook, Chapter 8, Conflict of Interest; (4) "Violations of A.R.S. 38-501 through 38-511, Conflict of Interest"; and (5) "Prosecutorial Misconduct." *See* **Exhibit 5.**

Although somewhat differently worded in parts, the FAC brings each of the above claims, and also adds claims for "public corruption," violations of the "14th Amendment for Equal Protection," violations of 42 U.S.C § 1983 and 18 U.S.C. §§ 241 and 242, and "conspiracy to commit prosecutorial misconduct."

With one possible exception, though, Plaintiff could have brought these additional claims in his State Action, so the doctrine of *res judicata* or claim preclusion bars all the claims in the FAC.

The single possible exception is Graven's claim for "public corruption," which appears to be primarily based on Graven's new allegation that Judge Contes' decision in the 2018 State Action was a "corrupt ruling" that "excus[ed] criminal acts," so this Court should ignore or reverse the decision. FAC ¶ 4. However, the concept of asking a federal district court to reverse the action of a state court is barred by the *Rooker-Feldman* doctrine. *See e.g. Exxon Mobil Corp. v. Saudi Basic Industries Corp*, 544 U.S. 280 (2005) (noting that the *Rooker-Feldman* doctrine bars cases brought by a state-court loser which invites a federal district court to review and reject the state court decision).

III. **The FAC is also barred by Arizona's 180-day Notice of Claims statute and the one-year statute of limitations for suing the State.**

As the state court also determined, Plaintiff's claims are barred by both the 180-day Notice of Claims statute and the one-year statute of limitations for suing the State, and that

5

rationale applies *a fortiori* to the FAC. **Exhibit 4** at 2. Under A.R.S. §§ 12-821 and 12-821.01, a plaintiff must serve a Notice of Claim against a government entity "within one hundred eighty days after the cause of action accrues," and must file suit on the claims alleged "within one year after the cause of action accrues and not afterward." Like the first two versions of this lawsuit, Graven grounds his present complaint, the FAC, on a January 19, 2016 Notice of Claim, a copy of which he attached as Exhibit 6 to the FAC. *See* FAC ¶¶ 136 -141 at p. 15.

Assuming Graven timely filed his January 19, 2016 Notice of Claim, the statute of limitations on actually filing suit expired no more than one year later, on January 18, 2017 – well over two years before Graven filed this action. Graven's suit is thus plainly time-barred.

On the other hand, if, as Graven sometimes claims, the claims he brought in his 2018 State Action (and in this action) differed from those brought in his 2016 Federal Action, then Graven failed to file a new Notice of Claim before suing the State, and his claims are barred by that failure.

## IV.    The FAC fails to state a valid claim for relief.

The FAC also fails to state a valid claim for relief. The FAC asserts that, following an investigation by the Arizona Attorney General's Office (the "AGO"), a local law firm, Snell & Wilmer ("S&W"), and three of its attorneys had been "approved for Charging" with criminal acts. FAC ¶¶ 10-12. However, Graven claims, S&W had political and family connections with the governor and AGO, so AGO employees committed various criminal acts, including "criminal Conflict of Interest," to ensure that the S&W attorneys would *not* be criminally indicted. FAC ¶¶ 12-13; 17-20; 24-31. According to Graven, these and other acts discussed in the FAC "are the origin of [his] losing Justice and restitution from the exonerated Snell parties and other cases Defendants dismissed/closed, while hiding their acts and the Snell parties' crimes." FAC ¶ 48.

As a result of the State supposedly "exonerating" instead of indicting S&W and others, Graven claims he lost $638 million, and that amount should be trebled to equal $1.9 billion. FAC ¶ 144-147.

This is the same basic claim Graven made in his January 19, 2016 Notice of Claim, attached as Exhibit 6 to the FAC. There, Graven asserts that the AGO prosecutors were "on the ½ yard line" of a number of criminal investigations, "the culmination of which would have resulted in the indictment, prosecution, and realization of substantial sums of money to me." FAC Ex. 6 at 1. Then, Graven says, the attorney general – realizing that the AGO had been backed "into a corner" that made it "impossible to avoid indicting certain very powerful attorneys and their law firm – "directed" his Chief of Special Prosecutions to make it "go away." *Id.* Other AGO employees were then recruited, and they allegedly committed a number of bad acts, "individually and in concert," which included prosecutorial misconduct, conflicts of interest, and "public corruption," among others, to ensure that S&W would not be indicted. *Id. at 2.*

Such acts, Graven claims, ended his "four year plus quest for justice," and thus cost him $1.9 billion dollars. *Id.*

As the courts in both Graven's 2016 Federal Action and his 2018 State action determined, however, the above allegations don't state a valid cause of action. Judge Snow aptly noted that Graven hadn't cited "to any legal authority that suggests that he has a federal right to have third parties criminally prosecuted by state officials," or "any authority that would allow him to bring a state law claim against state officials for their failure to criminally prosecute third persons that he believes should be prosecuted." **Exhibit 1** at 3:21-25. In fact, Judge Snow said, "it is axiomatic" that "criminal prosecutors may claim absolute immunity from damages liability for actions 'intimately associated with the judicial phase of the criminal process,' such as the prosecutor's initiation of a prosecution and presentation of the state's case." *Id.* at 3:25-4:3 (*quoting Torres v. Goddard,* 793 F.3d 1046, 1051 (9th Cir. 2015), which was quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976).

7

Judge Contes in the 2018 State Action agreed, stating that "[n]o legal authority has been cited that would allow plaintiff to pursue his complaint against the State and its official for the failure to criminally prosecute third persons whom he believes should have faced prosecution." **Exhibit 4** (4/19/19 minute entry at 2.

The FAC – like the 2016 Federal Action and the 2018 State Action – fails to plead a valid cause of action upon which relief could be granted.

**V.   The FAC is barred by Plaintiff's lack of standing.**

In order for a plaintiff to sue the State, there must be some direct connection between the State's alleged actions, and the effect of those actions on the plaintiff personally. In the law, this is called the doctrine of legal "standing."

In the words of the Arizona Supreme Court, "[t]o gain standing to bring an action, a plaintiff must allege a distinct and palpable injury." *Sears v. Hull,* 192 Ariz. 65, 69, ¶ 16, 961 P.2d 1013, 1017 (1998), *citing Warth v. Seldin,* 422 U.S. 490, 501 (1975). Thus, "[a]n allegation of generalized harm that is shared alike by all or a large class of citizens generally is not sufficient to confer standing. *Id.*

According to the FAC, the alleged connection between the State's acts and the harm to Graven is this: "suspects" who were "approved for Charging" were supposedly "exonerated through a series of criminal and supporting acts" by State employees, which "caused [Graven] to lose Justice and restitution." FAC ¶ 66. But the supposed "exoneration" – or more accurately, deciding not to indict – certain parties, didn't by itself harm Mr. Graven. The State's decision not to indict S&W didn't take any money from Graven's pocket or physically harm him or wrongfully imprison him. Simply alleging a failure to indict a third party Graven wanted indicted doesn't plead any "distinct and palpable injury" to *him.* Mr. Graven has no more standing to complain about the State's alleged failure to indict someone than does the public at large. The FAC is thus subject to dismissal on that ground alone.

The FAC argues that the State's actions violated the due process and equal protection clauses of the state and federal constitution, and therefore harmed Graven. Similarly, in

*Sears* the plaintiffs alleged that two statutes enacted by the State violated their rights under the state and federal equal protection clauses. *Sears,* 192 Ariz. at 70-71, ¶ 23, 961 P.2d at 1018-19. But as our Supreme Court emphasized in denying the claim, "To have standing to bring a constitutional challenge, however, a plaintiff must allege injury resulting from the putatively illegal conduct." *Id.* In short, plaintiffs "must show that they have been injured by the alleged equal protection or special laws violation." *Id.* But the FAC fails to allege how Graven has been injured by the alleged violations.

## CONCLUSION

For all the reasons advanced above, the Court should dismiss the FAC in its entirety.

RESPECTFULLY SUBMITTED this 23rd day of July, 2019.

GALLAGHER & KENNEDY, P.A.

By:     *Mark C. Dangerfield*
        Mark C. Dangerfield
        Kevin E. O'Malley
        2575 East Camelback Road
        Phoenix, Arizona  85016-9225
        *Attorneys for Defendant State of Arizona*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July, 2019, I electronically transmitted a PDF version of this document to the Clerk of the Court, using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the CM/ECF registrants, and mailed and emailed a copy to:

William "Will" A. Graven, Pro Per
2700 South Woodlands Village Blvd.,
Suite 300-251
Flagstaff, AZ 86001
will@willgraven.com

Rona L. Miller
7401178v2/568-0195

9

# Plaintiff Will Graven's Response
## to
# Defendants' Motion to Dismiss

Case No.:  CV2019-04586

Filed June 28, 2019

Assigned for all practical purposes to the Honorable

Judge Stephen P. Logan

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 3

Kevin E. O'Malley (Bar No. 006420)
Mark C. Dangerfield (Bar No. 010832)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:    (602) 530-8000
Facsimile:    (602) 530-8500
kevin.omalley@gknet.com
mark.dangerfield@gknet.com
*Attorneys for Defendant State of Arizona and
Attorney General Mark Brnovich*

## SUPERIOR COURT OF THE STATE OF ARIZONA

## COUNTY OF MARICOPA

| | |
|---|---|
| IN RE WILL GRAVEN, | No. CV2018-007856 |
| Plaintiff, | |
| v. | |
| STATE OF ARIZONA; GOVERNOR DOUG DUCEY; DEPARTMENT OF ATTORNEY GENERAL FOR THE STATE OF ARIZONA; ATTORNEY GENERAL MARK BRNOVICH; ASSISTANT ATTORNEY GENERAL MICHAEL BAILEY; (FORMER) CHIEF OF THE CRIMINAL SECTION DONALD CONRAD; (CURRENT) CHIEF OF THE CRIMINAL SECTION PAUL AHLER; ASSISTANT ATTORNEY GENERAL JOE WATERS, | **STATE OF ARIZONA AND ATTORNEY GENERAL MARK BRNOVICH'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>(Assigned to the Hon. Connie Contes) |
| Defendants. | |

Defendants State of Arizona and Attorney General Mark Brnovich move under Ariz. R. Civ. P. 12(b)(6) to dismiss Plaintiff Will Graven's Complaint, for failure to state a claim.[1] The Complaint pleads no valid claims against any of the named Defendants, but even if it did, all such claims would be time-barred by both the 180-day Notice of Claim statute, and the one-year statute of limitations for suing the State or its employees.

---

[1] No defendants have yet been served in this case. On June 25, 2018, the State and the Attorney General entered a special appearance to contest jurisdiction regarding Graven's motion for terminating sanctions. Despite not having been served, the State and the Attorney General file this motion out of an abundance of caution.

Graven's current Complaint is just the latest in a series of frivolous filings he continues to make, hoping that some Court will buy his rejected theory that his constitutional rights were violated when the State *declined to criminally indict* a law firm and some of its individual members. *Refs*

## I.   PROCEDURAL BACKGROUND.

Before one can sue the State or its employees, A.R.S. § 12-821.01 requires a plaintiff to serve a Notice of Claim on the entities and individuals to be sued, and to do so within 180 days after the alleged claims accrued. If a plaintiff then decides to sue the State or its employees based on the disclosed claims, A.R.S. § 12-821 requires the plaintiff to file that suit within one year after the claims accrued.

On January 19, 2016, Graven served a Notice of Claim on the State, Attorney General Brnovich, and others. *See* Exhibit 21 to Graven Compl. The Notice of Claim demanded payment of $1.9 billion for damages Graven allegedly suffered by virtue of "prosecutorial misconduct" – by which Graven meant refusing to indict "certain very powerful attorneys and their law firm" – as well as alleged violations of his 5th and 14th Amendments rights to due process and equal protection, along with the State's engagement in conflicts of interest, abuse of prosecutorial discretion, abuse of power, intimidation, prosecutorial corruption, and other alleged bad acts. *Id.*

Then on April 27, 2016 – after the State declined to pay the demanded $1.9 billion – Graven sued the State in federal court – *Graven v. State of Arizona et al.,* (D. Ariz. No. CV-16-01249 2016) (the "Federal Court Action") – based on his January 19, 2016 Notice of Claim. Excerpts attached as **Exhibit 1**.[2] Graven's Federal Court Action generally alleged that the State had damaged him by making a discretionary decision *not* to criminally indict a local law firm and three of its partners. *Id.*

On September 22, 2016, the District Court granted the State's motion to dismiss the Federal Court Action, on two independent grounds. *See* Order attached as **Exhibit 2.** First,

[2] On a motion to dismiss, the Court can take judicial notice of publicly-filed documents. *Coto Settlement v. Eisenberg,* 593 F.3d 1031, 1038 (9th Cir. 2010).

the court found that it lacked subject matter jurisdiction, because the 11th Amendment to the U.S. Constitution barred federal court suits against a state or state officials in their official capacities. *Id.* at p.3.  Second, the court found that Graven's complaint "fail[ed] to state a claim that [was] plausible on its face." *Id.* In that regard, the court said, Graven failed "to cite to any legal authority that he has a federal right to have third parties criminally prosecuted by state officials," or "any authority that would allow him to bring a state law claim against state officials for their failure to criminally prosecute third persons that he believes should be prosecuted." *Id.*

Significantly, Graven did not appeal the dismissal of his Federal Court Action. Nevertheless, almost a year later, on August 7, 2017, Graven filed a Rule 60 motion for relief in the Federal Court Action, based on what Graven called "new evidence." The federal court denied Graven's Rule 60 motion on September 13, 2017. *See* attached **Exhibit 3**.

Graven then appealed the denial of his Rule 60 motion to the Ninth Circuit Court of Appeals. On May 21, 2018, the Ninth Circuit – before Graven had even filed his opening brief on the appeal – dismissed the appeal, calling it "frivolous." *See* attached **Exhibit 4**.

Once the federal court system had rejected his claims, Graven filed this action. According to his Complaint, Graven bases this action on the same January 19, 2016 Notice of Claim used for his Federal Court Action. Compl. ¶ 91. Graven says he can use the same Notice of Claim because "[t]his is a continuation of *essentially the same case*" that he filed "in both District Court and the Ninth Circuit." *See* Graven's 6/25/18 Motion for Approval of Substitute-Effective Service, at p. 3 (emphasis added). Indeed, Graven says, "[t]he present Complaint is merely my Federal Complaint being refiled in Arizona State Court." *Id.* at p. 4.

## ANALYSIS

**II.    GRAVEN'S COMPLAINT SHOULD BE DISMISSED AS UNTIMELY.**

As noted, under A.R.S. §§ 12-821 and 12-821.01, a plaintiff must serve a Notice of Claim against a government entity "within one hundred eighty days after the cause of action accrues," and must file suit on the claims alleged "within one year after the cause of action

3

accrues and not afterward." So assuming Graven timely filed his January 19, 2016 Notice of Claim, the statute of limitations on actually filing suit expired no later than January 18, 2017 – well over a year before Graven filed this action. Graven's suit is thus plainly time-barred.

Graven nevertheless argues that, since he timely filed his *Federal Court Action*, there is nothing "that prevents that action from being moved/remanded from one court to another," and so A.R.S. § 12-821.01 "has no application what so ever to this case...." *See* 7/30/18 Plaintiff's Combined Reply to Defendants' Response to My Motion for Terminating Sanctions and Defendants Non-Verbal Response My Motion for Summary Judgment ("7/30/18 Combined Reply") at p. 6. Graven, of course, cites no authority for the novel proposition that, if one court denies his timely-filed claims – and he fails to appeal that denial – he can nevertheless simply wait a year or two and refile the claims in another court. He can't, and the Court should dismiss the Complaint.[3]

## III.   GRAVEN'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLEAD A VALID CAUSE OF ACTION.

Regardless of the statute of limitations, Plaintiff's Complaint fails to plead any valid cause of action. The gist of Plaintiff's claim is that the State harmed him by failing to exercise its discretion to indict a law firm and a few of its members, and Plaintiff suggests that there were political motivations underlying that decision. Graven asserts five causes of action arising from such allegations:

1) violation of his 5th and 14th amendment rights to due process;

2) violation of his right to due process under Art. II, Sec. 4 of the Arizona Constitution;

3) violations of Chapter 8, of the Arizona Agency Handbook, dealing with conflicts of interest;

---

[3] Graven also argues that the Defendants' alleged bad acts in any event toll all his claims, thus making the statute of limitations "mute" (sic). 7/30/18 Combined Reply at 7. Graven cites no authority for this argument. More importantly, none of the alleged bad acts prevented Graven from timely filing his Federal Court Action, and he could have timely filed this one as well, but failed to do so.

4) violations of A.R.S. 38-501 – 511, dealing with conflicts of interest; and

5) prosecutorial misconduct.

But no statute or case law authorizes a civil damage claim against the government based on any such allegations. The claims are frivolous, and the Court should dismiss them.

What the Federal District Court said in dismissing the similar claims in Graven's Federal Court Action applies equally here:



> Plaintiff does not cite to any legal authority that suggests that he has a federal right to have third parties criminally prosecuted by state officials. Nor does Plaintiff cite any authority that would allow him to bring a state law claim against state officials for their failure to criminally prosecute third persons that he believes should be prosecuted.



**Exhibit 2** (9/22/16 Order at 3:21-25).

Indeed, it is hornbook law that "criminal prosecutors may claim absolute immunity from damages liability for actions 'intimately associated with the judicial phase of the criminal process,' such as the prosecutor's initiation of a prosecution and presentation of the state's case." *Torres v. Goddard,* 793 F.3d 1046, 1051 (9th Cir. 2015 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976)); *accord State v. Super. Ct.,* 186 Ariz. 294, 297, 921 P.2d 697, 700 (App. 1996) (holding that a prosecutor has "absolute" immunity when acting "within the scope of his or her authority and in a quasi-judicial capacity.").

As the United States Supreme Court has emphasized, a "prosecutor's act in seeking an indictment is but the first step in the process of seeking a conviction." *Kalina v. Fletcher,* 522 U.S. 118, 128 (1997). And the decision whether to prosecute or not necessarily requires legal knowledge and the exercise of related legal discretion – the precise attributes prosecutorial immunity seeks to protect. As the *Kalina* court elaborated:

> Exposing the prosecutor to liability for the initial phase of his prosecutorial work could interfere with his exercise of independent judgment at every phase of his work, since the prosecutor might come to see later decisions in terms of their effect on his potential liability.

*Kalina, supra.*

In addition, courts have expressly recognized that, "as a general rule," a prosecutor's decision whether or not to "bring suits or institute prosecution" are "matters resting within

his discretion. . . . " *Ackerman v. Houston*, 45 Ariz. 293, 296-97 (1935) (declining to order county attorney to file complaint for perjury); *State v. Tsosie*, 171 Ariz. 683, 702 (App. 1992) ("It is within the sound discretion of the prosecutor to determine whether to file criminal charges and which charges to file."); *see also Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 379 (2d Cir. 1973) ("[F]ederal courts have traditionally and, to our knowledge, uniformly refrained from overturning, at the instance of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons regarding whom a complaint of criminal conduct is made.").

As the United States Supreme Court has explained, "[i]n our criminal justice system, the Government retains broad discretion as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (citation and internal quotation marks omitted). *Wayte* is instructive because it involved a claim that the government violated the plaintiff's Constitutional right to equal protection by selectively prosecuting plaintiff for failing to register with the selective service, but deliberately *not* prosecuting many others whom the government knew had failed to register. The Supreme Court disagreed, finding that the government had "broad discretion" to determine whom it prosecuted.

As the *Wayte* court emphasized, the policy basis for such "broad discretion" rests "largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Wayte*, 470 U.S. at 607. That is because:

> Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.

*Id.* Moreover, the court elaborated, "[j]udicial supervision in this area" entails "systemic costs of particular concern." *Id.* In the Court's further words:

> Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.

*Wayte*, 470 U.S. at 607-608.

But Graven's claim is far weaker than the *Wayte* plaintiff: Graven wants to hold a prosecutor civilly liable merely for the failure to initiate a prosecution of a third party. We know of no precedent supporting such a claim, and Graven cites none. A prosecutor's decision not to prosecute involves the exercise of legal judgment and discretion for which no civil liability could attach.

Nor does Graven's claim that Defendant Paul Ahler was not properly "screened" from the investigation of the Snell & Wilmer defendants make any difference. Even if true, such a fact would not give Graven some heretofore-unrecognized personal right to sue the State for money damages for the State's failure to properly screen. Nor would such a fact somehow give Graven the novel right to sue the State for failure to criminally prosecute third persons whom Graven believes should be prosecuted.

Nor is this the first time Graven has made the "Ahler was not properly screened" argument. As noted above, almost a year after the Federal District Court dismissed his Federal Court Action, Graven filed a Rule 60 motion based on allegedly "new evidence" supposedly showing that Paul Ahler had not been properly "walled off" from his case. But as the Federal District Court found, "[e]ven assuming the evidence now proferred by the Plaintiff were newly discovered," nothing about it would "change this court's conclusion that Plaintiff still fails to state a plausible claim upon which relief could be granted." **Exhibit 3** ((9/13/17 Order at 1:25-2:4).

IV.  **THE ALLEGATIONS IN GRAVEN'S COMPLAINT MISREPRESENT DOCUMENTS ATTACHED TO THE COMPLAINT, AND FAIL TO DISCLOSE MATTERS OF PUBLIC RECORD THAT HE KNOWS CONTRACDICT HIS ALLEGATIONS.**

In addition to the defects already detailed above, Graven's Complaint misleads the Court both by mischaracterizing documents and failing to advise the Court that the indictments and plea agreements his Complaint relies on were all later reversed.

7

## A.      Graven Mischaracterizes Case Opening Documents as Charging Documents.

The "story" Graven's Complaint tries to tell is that Arizona Attorney General Criminal Division Chief Don Conrad first approved charging certain Snell & Wilmer attorneys with crimes, but then allowed Paul Ahler - a Conrad subordinate who allegedly had a conflict of interest – to "overrule" him and not charge the attorneys. For this story, Graven's Complaint relies heavily on his Exhibits 3, 6 and 14. Graven asserts that, pursuant to Complaint Exhibits 3 and 6, "four Snell & Wilmer parties were approved for charging" by Division Chief Conrad, Compl. ¶ 32. But then, Ahler "removed the four Snell parties' names," and charged only Daniel Esposito. *Id.* ¶¶ 60-62

But even a cursory review of Exhibits 3 and 6 to Graven's Complaint show that each was just a "case opening" form – an authorization to investigate – that did not approve charging anyone.  Exhibit 3, for example, is titled "Case Opening Form," and states: "No *investigation* is to proceed until this form is approved by the Criminal Division Chief." (Emphasis added.) Likewise, Exhibit 6 is titled, "Case Opening Form," and states that "if the Office of the Attorney General is to conduct any investigation in this case, the Case Opening Sheet must be approved by the Criminal Division Chief Counsel *before any investigation* is conducted." (Emphasis added.)

The difference between approving *an investigation* and approving *bringing criminal charges* against someone is plainly seen by comparing Exhibit 14 of Graven's Complaint, which is the only "charging" document Graven does attach. Exhibit 14 is expressly titled, "Case Charging Approval," and it was prepared, not by Ahler, but by Assistant Attorney General Joe Waters. Exhibit 14 approves bringing specific felony charges against two defendants, Mike Martin and Daniel Esposito. Both Ahler and Conrad then signed to indicate their approval of those charges. Exhibit 14 did not approve bringing charges against the Snell & Wilmer attorneys.

Thus, the very documents Graven expressly relies on and attaches to his Complaint don't support his claims. What those documents instead suggest is that an investigation was

8

authorized, but it turned up insufficient evidence to satisfy the assigned prosecutor – Assistant Attorney General ("AAG") Joe Waters – to charge the Snell & Wilmer attorneys. Indeed, Exhibit 11 to Graven's Complaint confirms this narrative. Exhibit 11 is a letter from AAG Waters to Graven, stating: "After all of the information was carefully considered, the Assistant Attorney General" [*i.e.* Waters] determined that the filing of a felony charge was not appropriate."

The very documents Graven attaches to his Complaint bely his farfetched conspiracy theory.

**B.    Graven's Complaint Relies on Indictments and Plea Agreements That He Knows Have Been Overturned and Discharged.**

As is evident from Graven's Complaint, he really wants to see the Snell & Wilmer attorneys criminally indicted. And in an apparent attempt to buttress his claims as to the attorneys' liability, his Complaint asserts that the Attorney General's Office "completed a plea agreement" with "one of the Snell Case suspects" in which she "described the Snell Case crimes" and "pled guilty to such…." Compl. ¶ 13. (Graven attached the referenced plea agreement – one for Ms. Deborah Dubree – as Exhibit 1 to his Complaint. In fact, though, Ms. Dubree was not a Snell & Wilmer attorney, as his Complaint Exhibit 1 makes clear.) Graven also asserts that his former general counsel, Daniel Esposito, was also indicted "for conspiring with outside counsel" – Snell & Wilmer – to commit "fraudulent schemes and artifices."

But here's the "rest of the story" that Graven failed to tell the Court, all of which comes from the public records: in January 2017, the Dubree plea agreement – along with other plea agreements in Graven-related cases – were withdrawn, and all charges were dismissed against both Dubree, Daniel Esposito, and the other individuals indicted in Graven-related cases. *See* attached **Exhibit 5**. Graven knows this, because he intervened in a failed attempt to contest the dismissals. *See* attached **Exhibit 6**. But he failed to disclose such facts to this Court.

9

**CONCLUSION**

For all the reasons discussed above, the Court should dismiss Plaintiff's Complaint.

RESPECTFULLY SUBMITTED this 28th day of August, 2018.

GALLAGHER & KENNEDY, P.A.


By: */s/ Mark C. Dangerfield*
    Kevin E. O'Malley
    Mark C. Dangerfield
    2575 East Camelback Road
    Phoenix, Arizona  85016-9225
    *Attorneys for Defendant State of Arizona*


*eFiled* this 28th day of August, 2018 with
the Clerk of the Court, and COPY
delivered via the ECF filing system to
the Honorable Connie Contes

COPY of the foregoing emailed and mailed this
28th day of August, 2018, to

William "Will" A. Graven, Pro Per
2700 South Woodlands Village Blvd.,
Suite 300-251
Flagstaff, AZ 86001
will@willgraven.com

    Gloria Kannberg

10

# Plaintiff Will Graven's Response
# to
# Defendants' Motion to Dismiss

## Case No.:  CV2019-04586

## Filed June 28, 2019

## Assigned for all practical purposes to the Honorable

## Judge Stephen P. Logan

*Will Graven,*

Plaintiff,

*v.*

*State of Arizona,*

Defendants,

in

United Sates District Court,
District of Arizona,
Phoenix Division.

# Exhibit 4

CHRIS DEROSE, CLERK
BY _____ DEP
D. Rodriguez
D. RODRIGUEZ, FILED

2019 JAN -7 PM 2: 04

William "Will" A. Graven, In Pro Per
2700 S. Woodlands Village Blvd; Suite 300-251
Flagstaff, Arizona 86001

## IN SUPERIOR COURT FOR THE STATE OF ARIZONA; COUNTY OF MARICOPA

| | |
|---|---|
| In Re: Will Graven, Plaintiff, | ) Case No.: **CV2018-007856** |
| v. | ) Case Filed: May 30, 2018 |
| State of Arizona; Department of the Attorney | ) Assigned to the Honorable: **Judge Connie Contes** |
| General for the State of Arizona; and AG Mark | ) **PLAINTIFF'S RESPONSE TO DEFENDANTS'** |
| Brnovich, Defendants. Defendants. | ) **MOTION TO DISMISS** |

## IA. INTRODUCTION

Defendants and their counsel seek dismissal through three legal theories (page 1, lines 21 through 25):

1.) "Ariz. R. Civ. P. 12(b)(6) to dismiss Plaintiff Will Graven's Complaint, for failure to state a claim."
2.) "the 180-day Notice of Claim statute"
3.) "the one-year statute of limitations for suing the State or its employees."

Defendants and their counsel seek to support these three theories through two vehicles:

1.) By treating this Complaint *as if it is the same* as my dismissed Federal complaint from 2 1/2 years ago, *even using my Federal case as if it is this Case!* (Dismissed for failure to state a claim **and lack of jurisdiction.**)
2.) By repeated frauds on this Court.

I had been receiving justice and restitution through more than 4 years of investigative and prosecutorial efforts by the Special Investigations and Fraud Special Prosecution Sections under Attorney General Tom Horne, but then Mark Brnovich became Attorney General, and the Defendants acted to exonerate familial and political cronies of theirs: my cases were closed; investigators on my cases were fired; and I lost justice, and restitution.

I believe this Court will be shocked by the depth of the Defendants' corruption here, and the unbridled use of fraud on the Court by their counsel to serve a client they know to be violating Due Process and Arizona statutes.

## IB. "BOTTOM LINE" TO DEFENDANTS' TWO VEHICLES AND THIS LENGTHY RESPONSE

Vehicle One, the Complaints are the same: While there are similar claims, the net differences are substantial (as seen in new claims found in 17 of 21 Exhibits long withheld by the Defendants, but later obtained and used here).



Vehicle Two, The Three Forms Fraud: The Defendants claim 2 "Case Opening Forms" were merely to authorize opening an investigation, and that the result of the investigation was that no crimes were found. The truth is the Forms were authorizing separate/new case numbers for charging and prosecuting an already completed year-long investigation, which was done under a Master Investigation Case (per 30 of these pages, and 82 of 84 Exhibits).

*A quick preview of who is being truthful can be seen by* Exhibits: 4, 5, 10, 11, 13, 14, 15, 16, 18, 19, 21 and 29.

what their clients used to deny me justice and restitution, and fraud is what counsel is now using to defend their clients. Apparently, fraud is business in the ordinary course for both the Defendants and their counsel.

There are almost 30 frauds in Defendants' Motion to Dismiss, but I will only cover a few of them here.

## IIIB. DEFENDANTS' REPEATED FRAUDS ON THE COURT, FRAUD ONE: THE "THREE FORMS FRAUD"

There are Three Approval Forms that are central to this case. The Defendants have attacked and boldface lied about these 3 Forms. Two, they grossly lied about; and one, they admit is as it appears, but treat it as if it means nothing. (So what if there is smoke coming from the gun? So what if the suspect is still holding the gun?)

*I will even admit, if counsel was correct/truthful about these Forms, the basis for my Complaint would be questionable* (which is, of course, why they selected these Three Forms to commit fraud on the Court with).

Lying about these Forms is nothing less than an attempt to deny me justice through fraud.

These Three Forms made for a clever, compact and persuasive trio of records to commit Fraud on the Court with (noting, counsel used almost 1-1/2 pages of just over an 8 page Motion to commit the Three Forms Fraud).

Counsel well understands the importance of these Three Forms, which have in effect "backed them into a corner," and *so actually, they had to lie* about these Forms to defend their clients...and so they did.

I will clearly demonstrate the Forms were for the purposes I swore they were (which see, *82 of 84* Exhibits).

I say "boldface lied," as they have the AGO records and employees who know the truth about these Forms, and as they used this same Fraud in District Court, to be corrected there, but to unabashedly use it again here (see **Exhibits 78 - 82** below in my Conclusion to this Response, Section V).

Counsel reintroduces this fraud here saying (Defendants' Motion to Dismiss [DMtD], Sections IV and IVA, page 8, lines 6 – 10 [Comment: it is this Three Forms Fraud which caused this Response to be so lengthy]):

"The "story" Graven's Complaint tries to tell is that Arizona Attorney General Criminal Division Chief Don Conrad first approved charging certain Snell & Wilmer attorneys with crimes, but then allowed Paul Ahler - a Conrad subordinate who allegedly had a conflict of interest – to "overrule" him and not charge the attorneys. For this story, Graven's Complaint relies heavily on his Exhibits 3, 6 and 14. Graven asserts that, pursuant t Complaint Exhibits 3 and 6, "four Snell & Wilmer parties were approved for charging" by Division Chief Conrad, Compl. ¶ 32"

The Court will see this mocking description of my "story" is very close to what actually happened.

8